**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

*Attorneys for Plaintiffs Retail Wholesale
Department Store Union Local 338
Retirement Fund, Retail Wholesale
Department Store Union Local 338 Health
& Welfare Fund, Retail Wholesale
Department Store Union Local 338 General
Fund, and Retail Wholesale Department
Store Union Local 338 Benefits Trust Fund*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 HEALTH & WELFARE FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 GENERAL FUND, and RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 BENEFITS TRUST FUND, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>STITCH FIX, INC., KATRINA LAKE, ELIZABETH SPAULDING, STEVEN ANDERSON II, BASELINE VENTURES LLC, BASELINE VENTURES 2009 LLC, BASELINE INCREASED EXPOSURE FUND, LLC, BASELINE CABLE CAR, LLC, and BASELINE ENCORE, L.P.,<br><br>                    Defendants. | Case No. 3:22-cv-4893<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Retail Wholesale Department Store Union ("RWDSU") Local 338 Retirement Fund, RWDSU Local 338 Health & Welfare Fund, RWDSU Local 338 General Fund, and RWDSU Local 338 Benefits Trust Fund (collectively, "Plaintiffs"), by and through their counsel, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge.  Plaintiffs' information and belief is based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Stitch Fix, Inc. ("Stitch Fix" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Stitch Fix; and (d) other public information regarding the Company.

## I.   INTRODUCTION

1.     This securities class action is brought on behalf of purchasers of Stitch Fix Class A common stock between December 8, 2020, and March 8, 2022, inclusive (the "Class Period"). The claims asserted herein are alleged against Stitch Fix, certain of the Company's current and former senior executives, and certain of the Company's controlling shareholders (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.     Stitch Fix sells a range of apparel, shoes, and accessories through its website and mobile application.  Traditionally, Stitch Fix sold products as a "Fix" box, through which the customer would receive a monthly box of items chosen by a personal stylist.  The customer would not know specifically which items they were receiving but would have the option to return whichever items it did not want.

3.     On December 8, 2020, Stitch Fix launched the "Freestyle" program—a new, direct buy program where customers could choose from the outset which items to purchase.   In connection with that announcement, Stitch Fix touted the Freestyle program as a way to "expand our addressable market, deepen client engagement and grow wallet share over time."   The Company also stated that Freestyle would "serve as another catalyst as we attract new clients, convert prospective clients and reactivate lapsed clients."  Throughout the Class Period, Stitch Fix

touted that the two programs were synergistic, and repeatedly denied claims that the Freestyle program could cannibalize its legacy Fix business.

4. On December 7, 2021, however, Stitch Fix admitted for the first time that the Company had downplayed the magnitude of its transition from the subscription-based Fix model to the retail-based Freestyle model. Stitch Fix further admitted that the Company saw some "short term cannibalization" from new customers who chose to use the new direct-buy Freestyle option rather than the traditional Fix option. In addition, Stitch Fix announced a loss for its first quarter of 2021 and cut its full-year revenue projections.[1] As a result of these disclosures, the price of Stitch Fix stock declined by $5.97 per share, or 24%, from $24.97 per share to $19.00 per share.

5. However, Stitch Fix continued to assure investors that this was a short-term problem, claiming that the Company had "been testing client onboarding flows" and that "we see significant new client potential ahead as Freestyle enables us to access a greater share of shopping occasions."

6. Then, on March 8, 2022, Stitch Fix offered a weak outlook for its third quarter of 2022 and cut its revenue guidance for the full year. In addition, Stitch Fix announced a self-inflicted friction between the Freestyle program and the Fix program. Specifically, Stitch Fix explained that when customers visited stitchfix.com—the primary landing page for customers interested in the Fix—the Company directed them to the Freestyle experience first, and "therefore, in leading clients to the Freestyle experience first, [it] inadvertently created friction" for potential customers interesting in ordering Fix. As a result of this disclosure, the price of Stitch Fix stock declined by $0.67 per share, or 6%, from $11.01 per share to $10.34 per share.

## II. <u>JURISDICTION AND VENUE</u>

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

---

[1] Stitch Fix's fiscal year ends on the Saturday closest to July 31.

8.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Stitch Fix maintains its corporate headquarters in San Francisco, California, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including the preparation and dissemination to the public of materially false and misleading information, occurred in this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.   **PARTIES**

9.     Plaintiffs RWDSU Local 338 Retirement Fund, RWDSU Local 338 Health & Welfare Fund, RWDSU Local 338 General Fund, and RWDSU Local 338 Benefits Trust Fund are multi-employer pension and benefits funds that provide retirement benefits to retirees in a variety of industries, including retail supermarkets, pharmacies, healthcare facilities, maintenance facilities, and school monitors and bus drivers.  As reflected in the certification submitted herewith, Plaintiffs purchased shares of Stitch Fix Class A common stock during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

10.     Defendant Stitch Fix sells a range of apparel, shoes, and accessories through its website and mobile application.   The Company maintains its corporate headquarters at 1 Montgomery Street, Suite 1500, San Francisco, California.   Stitch Fix stock trades on the NASDAQ, which is an efficient market, under ticker symbol "SFIX."  As of June 9, 2022, there were over 82.7 million shares of Stitch Fix Class A common stock outstanding, owned by at least hundreds or thousands of investors.

11.     Defendant Katrina Lake ("Lake") is the founder of Stitch Fix and has served as the Executive Chairperson of the Company's Board of Directors since August 1, 2021.  Defendant Lake previously served as the Company's Chief Executive Officer ("CEO") from its founding in 2017 until August 1, 2021.

12.     Defendant Elizabeth Spaulding ("Spaulding") is the current President and CEO of Stitch Fix and is a member of the Company's Board of the Directors.  She has served as Stitch Fix's President since January 2020, and CEO since August 1, 2021.

13.     Defendants Lake and Spaulding are collectively referred to hereinafter as the "Officer Defendants."   The Officer Defendants, because of their positions with Stitch Fix, possessed the power and authority to control the contents of Stitch Fix's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Officer Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Officer Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

14.     Defendant Steven Anderson II ("Anderson") is a member of the Board of Directors of Stitch Fix and is a founding investor of Stitch Fix.  Defendant Anderson personally controls over 15% of Stitch Fix's voting interests through his direct ownership of 5,312,455 shares of Stitch Fix Class B common stock.

15.     Defendant Baseline Ventures LLC is a venture capital investment firm founded and controlled by Defendant Anderson.  Baseline Ventures LLC and its affiliated funds—including the following entities: Baseline Ventures 2009 LLC, Baseline Increased Exposure Fund, LLC, Baseline Cable Car, LLC, Baseline Encore, L.P.—(collectively, "Baseline Ventures") control over 19% of Stitch Fix's voting interests through ownership of 6,563,089 shares of Stitch Fix Class B common stock.  As the sole managing member of Baseline Ventures, Defendant Anderson has the sole power to vote these shares.

16.     Defendants Anderson and Baseline Ventures are collectively referred to hereinafter as the "Controlling Shareholders."   Given their substantial holdings of Stitch Fix's Class B common stock, which account for approximately 34.89% of Stitch Fix's voting interests, as well

as Anderson's position on the Company's Board of Directors, the Controlling Shareholders had the power to control, and did control, Stitch Fix throughout the Class Period.

## IV.   BACKGROUND

17.   Based in San Francisco, California, Stitch Fix sells apparel, shoes, and accessories through its website and mobile application.

18.   Traditionally, Stitch Fix customers were sent a monthly "Fix" box.  Inside this box would be five pieces curated by personalized shoppers.  While customers would fill out a "style quiz" and could request styles of outfits, the customer did not know what pieces would be in the box until it arrived. The customer could then choose which, if any, items to buy, and could return the rest.  The customer paid a $20 "styling fee" per Fix, and that fee would be applied to any of the items the customer chose to buy.

19.   Prior to the Class Period, in 2019, Stitch Fix announced a new direct-buy retail component, eventually named "Freestyle."  The Freestyle program allowed customers to shop the site for specific products, giving the customer more control over what items they received, but also removing the curation element that differentiated Stitch Fix from other e-retailers.

20.   The Freestyle program was first made available to a subset of existing Stitch Fix customers in 2020, and incrementally rolled out to all existing customers in early 2021.  In September 2021, the Freestyle program was formally launched to new customers.

## V.   STITCH FIX DEFRAUDS INVESTORS

21.   The Class Period begins on December 8, 2020, the first day of trading after Stitch Fix issued a press release announcing the Company's financial results for its first quarter of 2021 and announced the launch of its Freestyle program.  In the press release, which was published after the market closed on December 7, 2020, and also filed with the SEC on Form 8-K, the Company described the Freestyle program as a way to "expand [its] addressable market, deepen client engagement and grow wallet share over time."  Stitch Fix also claimed that Freestyle would "serve as another catalyst as we attract new clients, convert prospective clients and reactivate lapsed clients."

22.    Later on December 7, Stitch Fix held a conference call with analysts and investors to discuss the Company's earnings and operations for its first quarter of 2021.  During that call, Defendant Lake again stated that the Freestyle program "will serve as another catalyst as we attract new clients, convert prospective clients and reactivate lapsed clients."  In addition, Defendant Lake highlighted the internal testing Stitch Fix was undertaking in order to determine "the best way to introduce [Freestyle]" to customers.  Moreover, Defendant Spaulding reiterated that the Company had "embarked on our next form factor, [Freestyle], which we expect will expand our addressable market, deepen client engagement and grow wallet share over time."

23.    On the same conference call, Defendant Lake also discussed Stitch Fix's internal testing of the Freestyle program.  Specifically, Defendant Lake explained "we've been doing some testing around what is the best way to introduce [Freestyle] and like what is the best way for us to actually figure out like this is somebody who should be on a conversion path to Fixes versus this is somebody that we actually should have into a [Freestyle] first," and that the Company was "testing to make sure" it did so correctly.

24.    In response to an analyst question regarding the combination of Freestyle and Fix, Defendant Lake stated that "the two experiences are really additive" and that "what we're finding is that these are actually, I think there is a broader hypothesis that like [Freestyle] and Fixes will allow us – the kind of combination of those two things will allow us to address many more types of clients."

25.    On February 10, 2021, Defendant Lake represented Stitch Fix at the Goldman Sachs Technology & Internet Virtual Conference.  At the conference, Defendant Lake was asked "what is the vision for [Freestyle] and how has the offering evolved over the last year or so since you started rolling it out?"  In response, Defendant Lake explained that Freestyle was "one of the most exciting things . . . it's one of those initiatives that is both really powerful and we can see in the data that it's working.  And at the same time there's still so much opportunity."  In addition, Defendant Lake again discussed the Company's internal testing, stating "we've experimented with different formats" and "we've started experimenting with kind of different form factors of what that experience could look like."

26.     At the same conference, Defendant Lake was asked "one thing we hear a lot . . . is this perception that [Freestyle] means you end up looking like just a big shopping mall that sells everything within apparel."  In response, Defendant Lake highlighted Freestyle's personalization, stating "when you look at our return rates like we know it works. Like we are showing you things that are only relevant for you.  They're not relevant for others.  They're relevant for you.  And that drives conversion.  It drives product acceptance.  It drives people loving it."

27.     On March 8, 2021, Stitch Fix held a conference call with analysts and investors to discuss the Company's earnings and operations for its second quarter of 2021.  During that call, Defendant Lake stated that Freestyle was "resonating with our existing clients and we're preparing to roll it out to first-time clients at the end of fiscal" fourth quarter.

28.     On the same conference call, an analyst asked Defendant Spaulding "can you just talk about how you expect" the Freestyle roll out to first-time clients "potentially cannibalizing the existing Fix business?"  In response, Defendant Spaulding responded that the Company was "seeing that is actually an additive experience" and agreed that "[Freestyle] is additive to the Fix business for our Fix customers, so we like what we're seeing there from an incrementality standpoint."

29.     On June 7, 2021, Stitch Fix held a conference call with analysts and investors to discuss the Company's earnings and operations for its third quarter of 2021.  During that call, Defendant Lake stated that Stitch Fix was "embarking on our next growth horizon through our introduction of [Freestyle], which expands our ecosystem of experiences and opens up a total addressable market that we estimate to be multiple times larger than Fixes alone."  In addition, Defendant Lake reiterated that "the success in incrementality that [Freestyle] has demonstrated to date gives us high conviction that our personalized shopping experience will significantly broaden the appeal and reach of Stitch Fix."

30.     On September 21, 2021, Stitch Fix held a conference call with analysts and investors to discuss the Company's earnings and operations for its fourth quarter of 2021.  On that conference call, an analyst stated that "in the past you've talked about low cannibalization, but I'm curious to get the updated thoughts."  Defendant Spaulding responded as to the "specific

cannibalization question, maybe two thoughts to offer.  One is just we think that revenue per active client that we shared and the knowledge that we have of like the new cohorts of clients is the real strength and incrementality of these two offerings really being quite complementary."  Defendant Spaulding went on to say, "I think we see solid growth in both sides of the business in the coming year."

31.     The statements and omissions set forth above in ¶¶21-30 were materially false and misleading.  In truth, throughout the Class Period, Stitch Fix concealed the fact that these programs were not complementary or additive. Stitch Fix knew that the Freestyle program would be much preferred to the Company's original Fix model, and that the Freestyle program would inevitably cannibalize the Company's legacy Fix business.

## VI.     DISCLOSURES OF THE COMPANY'S MISCONDUCT CAUSE SIGNIFICANT INVESTOR LOSSES

32.     On December 7, 2021, after the market closed, Stitch Fix announced a loss for its first quarter of 2022 and cut its full-year revenue projections.  That same day, during a conference call with analysts and investors to discuss the Company's earnings and operations for its first quarter, Stitch Fix admitted for the first time that, as a result of the "expansion into Freestyle" the Company "may experience short-term impacts of cannibalization."  Specifically, Defendant Spaulding stated that "the short-term cannibalization that I was referring to is more as we think about onboarding new customers to our experience."

33.     As a result of this disclosure, the price of Stitch Fix stock declined by $5.97 per share, or 24%, from a closing price of $24.97 per share on December 7, 2021, to a closing price of $19.00 per share on December 8, 2021.

34.     However, Stitch Fix continued to assure investors that this was a short-term problem.  For example, on the December 7, 2021, conference call, Defendant Spaulding explained that Stitch Fix had "been testing client onboarding flows" and that "we see significant new client potential ahead as Freestyle enables us to access a greater share of shopping occasions."  In addition, Defendant Spaulding stated, "one key area of investment is reducing friction for new clients to access freestyle through testing new onboarding approaches."

35.     The statements and omissions set forth above in ¶34 were materially false and misleading.   In truth, Stitch Fix continued to conceal the fact that these programs were not complementary or additive.   Stitch Fix knew that the Freestyle program would be much preferred to the Company's original Fix model, and that the Freestyle program would inevitably cannibalize the Company's legacy Fix business.

36.     On March 8, 2022, after the market closed, Stitch Fix reported earnings for its second quarter of 2022, and offered a weak outlook for its third quarter of 2022 and cut its guidance for the full year.   Later that day, during a conference call with analysts and investors to discuss the Company's earnings and operations for its second quarter, Defendant Spaulding attributed the guidance cut to problems with Freestyle.   Specifically, Defendant Spaulding admitted that "in our efforts to launch and promote Freestyle, we chose to direct visitors coming to stitchfix.com towards the Freestyle experience.   It is important to note that stitchfix.com is the primary landing page for customers interested in ordering a Fix.   Therefore, in leading clients to the Freestyle experience first, we inadvertently created friction for those seeking a Fix."   Stitch Fix also admitted that the Company "created friction when [it] introduced Freestyle to the landing page, given the intent of the majority of those clients coming to our site was for a Fix."

37.     As a result of this disclosure, the price of Stitch Fix stock declined by $0.67 per share, or 6%, from a closing price of $11.01 per share on March 8, 2022, to a closing price of $10.34 per share on March 9, 2022.

## VII.    LOSS CAUSATION

38.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.   This artificially inflated the price of Stitch Fix stock and operated as a fraud or deceit on the Class (as defined below).   Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market on December 7, 2021, and March 8, 2022, the price of Stitch Fix stock fell. As a result of their purchases of Stitch Fix Class A common stock during the Class Period, Plaintiffs and other members of the Class suffered losses, *i.e.*, damages, under the federal securities laws.

## VIII. <u>CLASS ACTION ALLEGATIONS</u>

39.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Stitch Fix Class A common stock during the Class Period (the "Class").   Excluded from the Class are Defendants and their families, directors, and officers of Stitch Fix and their families and affiliates.

40.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Stitch Fix has approximately 82.7 million shares of Class A common stock outstanding, owned by at least hundreds or thousands of investors.

41.     Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(e)     Whether Defendants' misconduct impacted the price of Stitch Fix Class A common stock;

(f)     Whether Defendants' conduct caused the members of the Class to sustain harm; and

(g)     The extent of harm sustained by Class members and the appropriate measure of harm.

42.     Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained harm from Defendants' wrongful conduct.

43.     Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action securities litigation.  Plaintiffs have no interests which conflict with those of the Class.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IX.     INAPPLICABILITY OF STATUTORY SAFE HARBOR

45.     Stitch Fix's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

46.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Stitch Fix who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## X.     PRESUMPTION OF RELIANCE

47.     At all relevant times, the market for Stitch Fix stock was an efficient market for the following reasons, among others:

(a)     Stitch Fix stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Stitch Fix filed periodic public reports with the SEC and NASDAQ;

(c)     Stitch Fix regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

and

(d)     Stitch Fix was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for Stitch Fix Class A common stock promptly digested current information regarding Stitch Fix from all publicly available sources and reflected such information in the price of Stitch Fix Class A common stock.   Under these circumstances, all purchasers of Stitch Fix Class A common stock during the Class Period suffered similar injury through their purchase of Stitch Fix Class A common stock at artificially inflated prices and the presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose the disruption the Freestyle program would have on the Company's existing business—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Fix business to Stitch Fix, as set forth above, that requirement is satisfied here.

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against Stitch Fix and the Officer Defendants

50.     Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above as if fully set forth herein.

51.     During the Class Period, Stitch Fix and the Officer Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (a)

deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (b) cause economic harm to Plaintiffs and other members of the Class.

52.     Stitch Fix and the Officer Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's Class A common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     Stitch Fix and the Officer Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

54.     During the Class Period, Stitch Fix and the Officer Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.     Stitch Fix and the Officer Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the true facts that were available to them.  Stitch Fix and the Officer Defendants engaged in this misconduct to conceal Stitch Fix's true condition from the investing public and to support the artificially inflated prices of the Company's Class A common stock.

56.     Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they purchased Stitch Fix Class A common stock and were harmed when the truth about Stitch Fix negatively impacted the price of those securities.  Plaintiffs and the Class would not have purchased Stitch Fix Class A common stock at the prices they paid, or at all, had they been aware of the truth about Stitch Fix.

57.     As a direct and proximate result of Stitch Fix's and the Officer Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered harm in connection with their respective purchases of the Company's Class A common stock during the Class Period.

58.     By virtue of the foregoing, Stitch Fix and the Officer Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act**
**Against the Officer Defendants and the Controlling Shareholders**

59.     Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above as if fully set forth herein.

60.     The Officer Defendants acted as controlling persons of Stitch Fix within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Stitch Fix, the Officer Defendants had the power and ability to control the actions of Stitch Fix and its employees.  By reason of such conduct, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act.

61.     The Controlling Shareholders acted as controlling persons of Stitch Fix within the meaning of Section 20(a) of the Exchange Act.  By reason of their voting power, ownership, rights as against Stitch Fix, and/or specific acts, the Controlling Shareholders had the power to control Stitch Fix's operations and its decision-making processes.  By reason of such control, the Controlling Shareholders are liable under Section 20(a) of the Exchange Act.

## XI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensation to Plaintiffs and other Class members against all Defendants, jointly and severally, for all harm sustained as a result of Defendants'

wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.     Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XII.    JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:  August 26, 2022                         Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Las Angeles, CA 90067
Tel:     (310) 819-3470

-and-

AVI JOSEFSON
(avi@blbglaw.com)
SCOTT R. FOGLIETTA
(scott.foglietta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:     (212) 554-1400
Fax:     (212) 554-1444

*Counsel for Plaintiffs Retail Wholesale Department*
*Store Union Local 338 Retirement Fund, Retail*
*Wholesale Department Store Union Local 338*
*Health & Welfare Fund, Retail Wholesale*
*Department Store Union Local 338 General Fund,*
*and Retail Wholesale Department Store Union*
*Local 338 Benefits Trust Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, John R. Durso, on behalf of Retail Wholesale Department Store Union ("RWDSU") Local 338 Retirement Fund, RWDSU Local 338 Health & Welfare Fund, RWDSU Local 338 General Fund, and RWDSU Local 338 Benefits Trust Fund (collectively, the "Local 338 Funds"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of the Local 338 Funds and I am authorized to sign this certification on their behalf. I have reviewed the complaint and authorize its filing by counsel.

2. The Local 338 Funds did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. The Local 338 Funds are willing to serve as representative parties on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. The Local 338 Funds' transactions in the Stitch Fix, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. RWDSU Local 338 Health & Welfare Fund, RWDSU Local 338 General Fund, and RWDSU Local 338 Benefits Trust Fund have not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

6. RWDSU Local 338 Retirement Fund has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff or was not appointed lead plaintiff:

   *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corporation*,
   No. 20-cv-576 (S.D. Tex.)

7. The Local 338 Funds will not accept any payment for serving as representative parties on behalf of the Class beyond the Local 338 Funds' respective pro rata shares of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this ___ day of August, 2022.

_____

John R. Durso
Chairman
*Local 338 Funds*

**Local 338 Funds**
**Transactions in Stitch Fix, Inc.**

| Fund | Transaction | Date | Share | Price |
|------|-------------|------|-------|-------|
| RWDSU Local 338 Retirement Fund | Purchase | 12/9/2020 | 1,655 | 56.0350 |
| | Purchase | 12/14/2020 | 1,165 | 64.2931 |
| | Purchase | 1/25/2021 | 1,545 | 95.6991 |
| | Purchase | 3/5/2021 | 213 | 71.3018 |
| | Purchase | 3/5/2021 | 12,853 | 71.3018 |
| | Purchase | 3/8/2021 | 181 | 71.5787 |
| | Purchase | 3/8/2021 | 10,910 | 71.5787 |
| | Purchase | 3/9/2021 | 387 | 49.2735 |
| | Purchase | 3/9/2021 | 23,362 | 49.2735 |
| | Purchase | 3/12/2021 | 32 | 53.8000 |
| | Purchase | 4/14/2021 | 172 | 47.0050 |
| | Purchase | 4/14/2021 | 10,027 | 47.0050 |
| | Purchase | 4/15/2021 | 46 | 45.3200 |
| | Purchase | 5/5/2021 | 105 | 40.0033 |
| | Purchase | 5/5/2021 | 5,714 | 40.0033 |
| | Purchase | 5/10/2021 | 118 | 39.5970 |
| | Purchase | 5/10/2021 | 6,811 | 39.5970 |
| | Purchase | 5/11/2021 | 180 | 42.1352 |
| | Purchase | 5/11/2021 | 10,493 | 42.1352 |
| | Purchase | 5/25/2021 | 34 | 48.5300 |
| | Purchase | 8/30/2021 | 1,619 | 41.7784 |
| | Purchase | 8/31/2021 | 2,105 | 41.5525 |
| | Sale | 2/1/2021 | (4,365) | 86.1908 |
| | Sale | 4/5/2021 | (8) | 47.3950 |
| | Sale | 4/20/2021 | (63) | 43.5427 |
| | Sale | 5/3/2021 | (892) | 43.0714 |
| | Free Delivery | 5/28/2021 | (1,397) | |
| | Sale | 6/22/2021 | (4,063) | 61.8192 |
| | Sale | 7/22/2021 | (2,746) | 56.2626 |
| | Sale | 7/27/2021 | (20,752) | 54.5693 |
| | Sale | 12/8/2021 | (29,064) | 19.3658 |
| | Sale | 12/8/2021 | (19,471) | 19.1567 |
| | Sale | 12/9/2021 | (6,906) | 20.0896 |

**Local 338 Funds**
**Transactions in Stitch Fix, Inc.**

| Fund | Transaction | Date | Share | Price |
|---|---|---|---|---|
| RWDSU Local 338 Health & Welfare Fund | Purchase | 3/5/2021 | 1,044 | 71.3018 |
| | Purchase | 3/8/2021 | 886 | 71.5787 |
| | Purchase | 3/9/2021 | 1,898 | 49.2735 |
| | Purchase | 4/14/2021 | 453 | 47.0050 |
| | Purchase | 5/5/2021 | 268 | 40.0033 |
| | Purchase | 5/10/2021 | 314 | 39.5970 |
| | Purchase | 5/11/2021 | 483 | 42.1352 |
| | Purchase | 8/30/2021 | 121 | 41.7784 |
| | Purchase | 8/31/2021 | 149 | 41.5525 |
| | Sale | 3/22/2021 | (1,693) | 51.9266 |
| | Sale | 9/24/2021 | (903) | 42.0114 |
| | Sale | 11/24/2021 | (3,020) | 27.5400 |
| RWDSU Local 338 General Fund | Purchase | 3/5/2021 | 893 | 71.3018 |
| | Purchase | 3/8/2021 | 758 | 71.5787 |
| | Purchase | 3/9/2021 | 1,623 | 49.2735 |
| | Purchase | 4/14/2021 | 696 | 47.0050 |
| | Purchase | 4/27/2021 | 178 | 46.1463 |
| | Purchase | 5/5/2021 | 429 | 40.0033 |
| | Purchase | 5/10/2021 | 503 | 39.5970 |
| | Purchase | 5/11/2021 | 775 | 42.1352 |
| | Purchase | 6/30/2021 | 79 | 61.8871 |
| | Purchase | 8/30/2021 | 114 | 41.7784 |
| | Purchase | 8/31/2021 | 151 | 41.5525 |
| | Sale | 7/27/2021 | (2,231) | 54.5693 |
| | Sale | 9/24/2021 | (405) | 42.0114 |
| | Sale | 11/24/2021 | (3,563) | 27.5400 |
| RWDSU Local 338 Benefits Trust Fund | Purchase | 3/5/2021 | 577 | 71.3018 |
| | Purchase | 3/8/2021 | 489 | 71.5787 |
| | Purchase | 3/9/2021 | 1,048 | 49.2735 |
| | Purchase | 4/14/2021 | 450 | 47.0050 |
| | Purchase | 5/5/2021 | 265 | 40.0033 |
| | Purchase | 5/10/2021 | 311 | 39.5970 |
| | Purchase | 5/11/2021 | 480 | 42.1352 |
| | Purchase | 8/30/2021 | 50 | 41.7784 |

**Local 338 Funds**
**Transactions in Stitch Fix, Inc.**

| Fund | Transaction | Date | Share | Price |
|------|-------------|------|-------|-------|
| | Purchase | 8/31/2021 | 63 | 41.5525 |
| | Sale | 7/6/2021 | (117) | 63.1596 |
| | Sale | 7/27/2021 | (1,820) | 54.5693 |
| | Sale | 7/29/2021 | (133) | 56.3138 |
| | Sale | 9/3/2021 | (132) | 39.8686 |
| | Sale | 9/24/2021 | (288) | 42.0114 |
| | Sale | 10/4/2021 | (142) | 38.4670 |
| | Sale | 11/24/2021 | (1,101) | 27.5400 |