STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
*sbasser@barrack.com*
*sward@barrack.com*

JEFFREY A. BARRACK*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
*jbarrack@barrack.com*
**Pro Hac Vice* application to be filed*

*Counsel for the New Mexico State Investment Council and Proposed Lead Council for the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 HEALTH & WELFARE FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 GENERAL FUND, and RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 BENEFITS TRUST FUND, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>v.<br><br>STITCH FIX, INC., KATRINA LAKE, ELIZABETH SPAULDING, STEVEN ANDERSON II, BASELINE VENTURES LLC, BASELINE VENTURES 2009 LLC, BASELINE INCREASED EXPOSURE FUND, LLC, | CASE NO. 4:22-CV-04893<br><br>NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE NEW MEXICO STATE INVESMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL<br><br>Date:     January 5, 2023<br>Time:    2:00 P.M.<br>Judge:   Haywood S. Gilliam, Jr.<br>Courtroom: 2 |

| | |
|---|---|
| BASELINE CABLE CAR, LLC, and BASELINE ENCORE, L.P.,<br><br>Defendants. | |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................1

II.  PROCEDURAL HISTORY..................................................................................................3

III.  FACTUAL BACKGROUND ...............................................................................................4

IV.  ARGUMENT.........................................................................................................................6

    A.  NMSIC Should Be Appointed Lead Plaintiff ............................................................6

        1.  Applicable Legal Standard...............................................................................6

        2.  NMSIC has the Largest Financial Interest in the Relief Sought by the Class .....................7

        3.  NMSIC is Qualified Under Rule 23.................................................................7

        4.  NMSIC is an Experienced Institutional Investor .............................................9

    B.  The Court Should Approve NMSIC's Choice of Counsel ......................................10

IV.  CONCLUSION ...................................................................................................................12

i

NOT OF MOT & MOT AND MEMO OF POINTS & AUTHORITIES ISO THE MOTION OF THE NEW MEXICO STATE INVESTMENT COUNCIL FOR APPT AS LD PLTF & APPROVAL OF SELECTION OF LD COUNSEL

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) .................................................................................................. 7

*Bogosian v. Gulf Oil Corp.*,
  561 F.2d 434 (3d Cir. 1977) .................................................................................................... 7

*Gluck v. CellStar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) ..................................................................................... 2, 8

*Greebel v. FTP Software*,
  939 F. Supp. 57 (D. Mass. 1996) ........................................................................................ 2, 8

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) ............................................................................................ 6

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .................................................................................................. 6

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000) ......................................................................................... 9

*In re Diamond Foods, Inc.*,
  281 F.R.D. 405 (N.D. Cal. Mar. 12, 2012) .......................................................................... 2, 8

*In re Mellon Bank S'holder Litig.*,
  120 F.R.D. 35 (W.D. Pa. 1988) ............................................................................................... 7

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
  122 F.R.D. 251 (C.D. Cal. 1988) ............................................................................................ 7

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................................ 8

*In re WorldCom, Inc. Sec. Litig.*,
  No. MASTER FILE 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004)
  ............................................................................................................................................... 10

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) .................................................................................................. 7

*Lewis v. Curtis*,
  671 F.2d 779 (3d Cir. 1982) .................................................................................................... 7

*Lubin v. Sybedon Corp.*,
  688 F. Supp. 1425 (S.D. Cal. 1988) ........................................................................................ 7

*Schaefer v. Overland Express Family of Funds*,
  169 F.R.D. 124 (S.D. Cal. 1996) ............................................................................................. 7

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985) ............................................................................................ 6

*Welling v. Alexy* (*In re Cirrus Logic Sec.*),
  155 F.R.D. 654 (N.D. Cal. 1994) ............................................................................................ 6

**Statutes**

15 U.S.C. § 10(b) (2018) ............................................................................................................ 3, 6

15 U.S.C. § 20(a) (2018) ................................................................................................................ 3

15 U.S.C. § 21D(a)(3)(B) ............................................................................................................. 11

15 U.S.C. § 21D(a)(3)(B)(i) (2018) ................................................................................................ 5

15 U.S.C. § 21D(a)(3)(B)(iii)(I)(cc) ............................................................................................... 6

15 U.S.C. § 78u-4(a)(3) (2018) .................................................................................................. 1, 4

15 U.S.C. § 78u-4(a)(3)(A) (2018) ................................................................................................. 2

15 U.S.C. § 78u-4(a)(3)(A)(i) (2018) ......................................................................................... 3, 5

15 U.S.C. § 78u-4(a)(3)(B) (2018) .............................................................................................. 2, 8

15 U.S.C. § 78u-4(a)(3)(B)(i) (2018) .............................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb) (2018) ..................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (2018) ........................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) (2018) ................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) (2018) ................................................................................ 9

15 U.S.C. § 78u-4(a)(3)(B)(v) (2018) ............................................................................................. 9

15 U.S.C. § 78u-4(e) (2018) ........................................................................................................... 6

15 U.S.C. § 78u-4(e)(3) (2018) ...................................................................................................... 6

15 U.S.C. § 21D(a)(3)(B) ............................................................................................................... 1

**Other**

Rule 10 of the Federal Rules of Civil Procedure .......................................................................... 3

Rule 23 of the Federal Rules of Civil Procedure ................................................................ *passim*

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 5, 2023, at 2:00 P.M., or as soon thereafter as the matter may be heard in Courtroom 2 of the Honorable Haywood S. Gilliam, Jr., located at 1301 Clay Street, Oakland, California, the New Mexico State Investment Council ("NMSIC") will move, pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by § 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order (1) appointing NMSIC as Lead Plaintiff in this action; and (2) approving NMSIC's selection of the law firm of Barrack, Rodos & Bacine as Lead Counsel.

This motion is based on the memorandum of law in support thereof, the pleadings and other files herein, including but not limited to the certification of Brian McMath Civil Senior Counsel, New Mexico Office of the Attorney, on behalf of NMSIC (the "McMath Certification") and the accompanying Declaration of Samuel M. Ward in support of this motion (the "Ward Declaration"), any responsive memorandum filed in further support of this motion, and oral argument made by counsel in connection herewith.

**I.      INTRODUCTION**

NMSIC files this motion seeking to represent a class of investors who purchased the securities of Stitch Fix, Inc. ("Stitch Fix" or the "Company") during the period from December 8, 2020 through March 8, 2022, inclusive (the "Class Period"), and who were damaged thereby as a result of the alleged material misrepresentations and omissions by defendants, Stitch Fix, Inc. and certain of its officers and directors and entities controlled by one of its directors.

In enacting the PSLRA, 15 U.S.C. § 78u-4(a)(3), Congress expressed its intent to encourage institutional investors like the New Mexico State Investment Council serve as lead plaintiffs in securities class actions. H.R. Conf. Rep. No. 104-369 (1995), [S. Rep. No. 104-98 (1995)]. As the Statement of Managers noted, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with

small amounts at stake." H.R. Conf. Rep. No. 104-369, at 33, 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733. Similarly, the Senate Report on the PSLRA states:

> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts.
>
> Institutions with large stakes in class actions have much the same interests as the plaintiff class generally.

S. Rep. No. 104-98 at 12, 13 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (citations omitted). *See also Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996) (holding that provisions of the Act "suggest a presumption that institutional investors be appointed lead plaintiff"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *In re Diamond Foods, Inc.*, 281 F.R.D. 405, 409 (N.D. Cal. March 12, 2012) (recognizing that "[t]he main purpose of the [PSLRA] is to favor institutional investors over individuals").

The New Mexico State Investment Council administers the state of New Mexico's $34 billion permanent endowment. NMSIC oversees and manages investments for the state of New Mexico's permanent funds and manages public monies received in the form of royalties and taxes from natural resources and income from sales and leases of public lands and minerals, which funds are invested on behalf of the people of the state of New Mexico.  NMSIC was established in 1958 for the purpose of managing surplus revenues created by the state's oil and gas revenues.  The Attorney General for the State of New Mexico is statutorily authorized to provide counsel to NMSIC. Pursuant to state law, the Attorney General has the discretion to initiate or participate in litigation on behalf of the state of New Mexico and its agencies, including NMSIC, and will actively monitor and remain informed about the status of this case.

As set forth in detail below, NMSIC satisfies all of the requirements for appointment as lead plaintiff under the PSLRA.[1] As required by the statute, this motion is filed within sixty days of publication of the notice of the action. 15 U.S.C. §78u-4(a)(3)(A). NMSIC asserts that it has the largest financial interest in the outcome of the litigation. *See* Exhibit A to the McMath Certification, attached as Exhibit 1

---

[1] The PSLRA specifically authorizes class members such as NMSIC to move for appointment as lead plaintiff, regardless of whether they have filed a complaint. *See* 15 U.S.C. §78u-4(a)(3)(B).

2

to the Ward Decl. In addition, NMSIC qualifies as the "most adequate" plaintiff to serve as lead plaintiff in this action because it satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, as required by the statute. 15 U.S.C. §78u-4(a)(3)(B). Given the PSLRA's preference for institutional investors to direct securities class actions, as demonstrated below, NMSIC believes it should be appointed Lead Plaintiff in this matter and that the Court should approve its selection of the law firm of Barrack, Rodos & Bacine, which is highly experienced and qualified in prosecuting class actions arising under the PSLRA, to serve as Lead Counsel to represent the class.

## II. PROCEDURAL HISTORY

Presently pending before this Court is a securities fraud class action complaint, *Retail Wholesale Department Store Union Local 338 Retirement Fund, et al., v. Stitch Fix, Inc., et al.,* Case No. 4-22-CV-04893 (the "Action"), filed on August 26, 2022, alleging violations of federal securities laws between December 8, 2020 and March 8, 2022, inclusive.

As alleged in the Action, Stitch Fix and the named defendants violated Section 10(b) of the Exchange Act of 1933 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act by misleading investors regarding the cannibalizing of sales by Stitch Fix's newly introduced "Freestyle" program from Stitch Fix's legacy business, by which consumers received a monthly delivery of clothing curated by the Company. The Defendants' alleged fraud was revealed in corrective disclosures made on December 7, 2021 and on March 8, 2022.

The PSLRA requires prompt publication of notice advising class members of their right to move within sixty days of publication to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). On August 26, 2022, plaintiffs in the Action published notice on Business Wire, Inc. *See* Exhibit 2 to the Ward Decl. This notice advised class members of the existence of the actions and described the claims asserted. The notices also advised class members of their right to file a motion for appointment as lead plaintiff no later than October 25, 2022. Accordingly, this motion is timely filed.

3

### III.    FACTUAL BACKGROUND[2]

Stitch Fix is an online clothing retailer. Its main product is "Fix," a program by which the Company provides customers with regularly sent, curated packages of clothing. The customer does not know in advance the items they are receiving, but can return clothing that they don't like for a full refund. Stitch Fix uses the data it collects regarding returns to better target future deliveries to the customer.

On December 8, 2020, Stitch Fix launched its new "Freestyle" program, a direct buy program where customers could choose from the outset the items they wanted to buy, similar to more traditional online shopping platforms. The Freestyle program was rolled out to all existing Stitch Fix customers by early 2021.   In announcing Freestyle, the Company asserted that it would "expand" the Company's "addressable market, deepen client engagement and grow wallet share over time." In response to an analyst question, Stitch Fix CEO Lake asserted that "the two experiences are really additive" allowing the Company "to address many more types of clients."

Following its rollout, Stitch Fix touted Freestyle as a way to "expand our addressable market, deepen client engagement and grow wallet share over time."  The company also stated that Freestyle would "serve as another catalyst as we attract new clients, convert prospective clients and reactivate lapsed clients."  As alleged in the complaint, throughout the Class Period, Stitch Fix touted Fix and Freestyle as synergistic, and repeatedly denied claims that Freestyle would cannibalize its legacy Fix business.  For example, in February 2021, Defendant Lake asserted that "we can see in the data that [Freestyle is] working." And on March 8, 2021, Defendant and then-President Elizabeth Spaulding stated that the Company was "seeing that [Freestyle] is actually an additive experience."

Despite this positive spin, on April 13, 2021, the Company announced that CEO Lake would be stepping down, effective August 1, 2021, to be replaced by Stitch Fix President Spaulding. News articles disclosing the resignation noted recent declines in average customer spends, but did not attribute the declines to cannibalization caused by Freestyle, which had not yet been revealed by the Company.

---

[2]  These facts are taken from various sources, including the allegations of the complaint filed in the Action.

On a June 7, 2021 conference call, Defendant Lake reiterated that the "success in incrementality" of Freestyle "gives us high conviction that our personalized shopping experience will significantly broaden the appeal and reach of Stitch Fix." And during a September 21, 2021 conference call, Defendant Spaulding responded to concerns that Freestyle might cannibalize sales from traditional Stitch Fix by asserting that "these two offerings [are] really being quite complementary" and asserting that "I think we see solid growth in both sides of the business in the coming year."

However, on December 7, 2021, after the market closed, Stitch Fix announced a loss for its first quarter of fiscal 2022 and cut its full-year revenue projections. Stitch Fix began to reveal, for the first time, that as a result of the "expansion into Freestyle" the company "may experience short-term impacts of cannibalization." This disclosure caused Stitch Fix stock to decline $5.97 per share, or 24%, to close at $19.00 per share on December 8, 2021. The Company's assertion that these were "short-term" impacts gave false comfort to shareholders, and the failure to disclose the whole adverse truth continued to buoy the trading price of Stitch Fix common stock over the coming months.

Then, on March 8, 2022, Stitch Fix reported its second quarter fiscal 2022 results and again cut its full year guidance. On the company's earnings call, the CEO Spaulding admitted that:

> [I]n our efforts to launch and promote Freestyle, we chose to direct visitors coming to stitchfix.com towards the Freestyle experience. It is important to note that stitchfix.com is the primary landing page for customers interested in ordering a Fix. Therefore, in leading clients to the Freestyle experience first, we inadvertently created friction for those seeking a Fix.

The Company further acknowledged that, it was attempting to address this going forward by "beginning to direct stitchfix.com traffic to a clear and easy fix onboarding process." As the Company sought to manage this "onboarding process," it noted that it would be "evaluating our marketing spend" and that it was withdrawing its full year EBITDA guidance. The acknowledgement that Freestyle had caused more than just "short term" cannibalization surprised investors and resulted in a further decline in the price of Stitch Fix stock of 6%, to close at $10.34 per share on March 9, 2022.

## IV.  ARGUMENT

### A.  NMSIC Should Be Appointed Lead Plaintiff

#### 1.  Applicable Legal Standard

The PSLRA sets forth the procedure for the selection of lead plaintiff to oversee class actions brought under the federal securities laws. 15 U.S.C. §78u-4(a)(3). Section 21D(a)(3)(A)(i) of the PSLRA provides that within twenty days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

> (i)  of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (ii) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, Section 21D(a)(3)(B)(i) of the PSLRA directs the Court to consider any motions brought by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice by not later than ninety-days after the date of publication, or as soon as practicable after this Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. Under this provision, the Court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff and shall presume that the "most adequate plaintiff" is the person, or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice…;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As noted *supra* at page 3, this motion satisfies the requirements of subsection (aa). As demonstrated below, NMSIC Mexico also satisfies the requirements of subsections (bb) and (cc).

### 2. NMSIC has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA provides that this Court:

> [S]hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff").

15 U.S.C. § 78u-4(a)(3)(B)(i). Moreover, the statute requires this Court to adopt a rebuttable presumption that:

> [T]he most adequate plaintiff in any private action arising under this chapter is the person or group of persons that…. in the determination of the court, has the largest financial interest in the relief sought by the class…

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

During the relevant period, NMSIC purchased Stitch Fix securities at artificially inflated prices and suffered losses on said purchases.[3] *See* Ex. A to the McMath Certification, Ex. 1 to the Ward Decl. NMSIC believes that it has the largest financial interest in the outcome of this litigation and, therefore, is presumptively entitled to appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb).

### 3. NMSIC is Qualified Under Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id*. With respect to the qualifications of a class representative, Rule 23(a) requires generally that its claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. As demonstrated herein, NMSIC satisfies the typicality and adequacy requirements of Rule 23(a), and is qualified to be appointed lead plaintiff.

---

[3] 15 U.S.C. §78u-4(e) provides a formula for computing a class member's damages for violations of Section 10(b), which includes separate calculations as to securities that have been sold during the class period and securities that are held at the end of the class period. For purchasers who hold their securities, damages are measured by comparing the purchase price of the security with its mean trading price during the ninety-day period following the corrective disclosure by the Company, or, if the securities are sold during the ninety days, the purchase price is compared to the mean trading price during the period beginning with the corrective disclosure and ending on the date of sale. The mean trading price is defined as "an average of the daily trading price of that security, determined as of the close of the market each day" during the period in question. 15 U.S.C. § 78u-4(e)(3).

### a.   NMSIC's Claims Are Typical of the Claims of the Class

A plaintiff satisfies the typicality requirement of Rule 23(a)(3) when the plaintiff (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) its claims are based on the same legal issues. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Haley v. Medtronic*, *Inc*., 169 F.R.D. 643, 649 (C.D. Cal. 1996); *Welling v. Alexy*, 155 F.R.D. 654, 657 (N.D. Cal. 1994); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). The legal and factual bases for NMSIC's claims are typical of the following issues applicable to all members of the class:

(a)   Whether defendants' actions violated the federal securities laws;

(b)   Whether defendants caused Stitch Fix to issue false and misleading statements during the Class Period;

(c)   Whether defendants' conduct caused the market price of Stitch Fix stock to be artificially inflated during the Class Period; and

(d)   Whether the members of the class have sustained damages and, if so, the proper measure of those damages.

Thus, there is a well-defined community of interest in the questions of law and fact involved in this case, and the claims asserted by NMSIC are typical of the claims of the members of the proposed class. NMSIC, like all of the members of the proposed class, acquired Stitch Fix stock at prices artificially inflated by defendants' false and misleading misrepresentations and omissions and were damaged thereby. NMSIC's claims are typical because their claims and those asserted by other Stitch Fix investors are based on the same legal theories and arise "from the same event or course of conduct giving rise to the claims of other class members." *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988); *accord Blackie v. Barrack*, 524 F.2d 891, 902-03 & n. 19 (9th Cir. 1975).

### b.   NMSIC Will Fairly and Adequately Represent the Interests of the Class

The requirements of Rule 23(a)(4) are met if it appears that (1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Durham v. Sachs Elec. Co.*, Case No. 18-cv-04506-BLF, 2021 U.S. Dist. LEXIS

158021, *15 (N.D. Cal. Aug. 20, 2021); *Nguyen v. Wells Fargo Bank, N.A.,* Case No. 15-cv-05239-JCS, 2017 U.S. Dist. LEXIS 155632, *25 (N.D. Cal. Sept. 22, 2017).

NMSIC's interests are aligned with the members of the proposed class and there is no evidence of any antagonism between their interests and those of the proposed class members. As detailed above, NMSIC's claims share substantially similar questions of law and fact with the claims of members of the proposed class and its claims are typical of the claims of other members of the class. In addition, NMSIC has selected a law firm that is highly experienced in prosecuting securities class actions such as this to represent it and to serve as lead counsel. *See* Firm Biography of Barrack, Rodos & Bacine ("Firm Biography") filed herewith as Exhibit 3 to the Ward Decl.

Therefore, NMSIC satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 4. NMSIC is an Experienced Institutional Investor

NMSIC is a sophisticated institutional investor, the type of plaintiff explicitly encouraged by Congress to seek appointment as lead plaintiff. H.R. Conf. Rep. No. 104-369, at 33, 34 (1995) reprinted in 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98 as 12, 13, reprinted in 1995 U.S.C.C.A.N. 679, 690. The PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, as investors with large amounts at stake, institutional investors "will represent the interest of the plaintiff class more than class members with small amounts at stake." H.R. Conf. Rep. No. 104-369 at 33, 34 (1995) reprinted in 1995 U.S.C.C.A.N. 730, 733; *see also In re Worldcom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (the PSLRA was designed "to increase the likelihood that institutional investors will serve as lead plaintiffs"). *See also Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 at 63; *Gluck v. CellStar Corp.*, 976 F. Supp. 542 at 548; *In re Diamond Foods, Inc.*, 281 F.R.D. 405 at 409.

NMSIC has an interest in protecting the integrity of our capital markets. The fund has assets of approximately $34 billion, which it manages and invests on behalf of the permanent fund of the state of New Mexico.[4]

After substantial due diligence, consideration, and deliberation regarding the strength of the claims against the defendants and the losses that NMSIC suffered arising from defendants' misconduct, the Attorney General of the State of New Mexico determined that it was in the best interests of the people of New Mexico to seek NMSIC's appointment as Lead Plaintiff in order to maximize the potential recovery for the class. NMSIC has prior service as a lead plaintiff under the PSLRA, currently serving as a lead plaintiff in three class actions brought pursuant to federal securities laws. McMath Certification ¶ 5.

### B. The Court Should Approve NMSIC's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to Court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). In this case, NMSIC has selected and retained the law firm of Barrack, Rodos & Bacine to serve as lead counsel for the class.

Barrack, Rodos & Bacine has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See generally* Ward Decl. Ex. 3. Barrack, Rodos & Bacine has been appointed as lead counsel in dozens of securities class actions, including more than fifty filed since passage of the PSLRA, and including many litigated in district courts within the Ninth Circuit.[5] Barrack, Rodos & Bacine served as a lead counsel in

---

[4]   *See https://www.sic.state.nm.us/about-the-sic/*, last visited on October 21, 2022.

[5]   Several examples include: *In re DaimlerChrysler AG Sec. Litig.*, No. 00-993 (JJF, Jr.) (D. Del.); *In re McKesson HBOC, Inc. Sec. Litig.*, Case No. C-99-20743(RMW) (N.D. Cal.); *In re PeopleSoft, Inc. Sec. Litig.*, No. C99-00472 WHA (N.D. Cal.); *In re Harmonic, Inc.*, No. C-00-2287 PJH (N.D. Cal.); *In re HI/FN, Inc. Sec. Litig.*, Master File No. C-99-4531-SI (N.D. Cal.); *In re WageWorks, Inc., Sec. Litig.*, 4:18-cv-01523-JSW; *Shafizadeh v. Amplidyne, Inc.*, Civil Action No. 99-4468 (MLC) (D.N.J.); *In re Parametric Tech. Corp. Sec. Litig.*, Civil Action No. 98-11328 GAO (D. Mass.); *In re Sunbeam Sec. Litig.*, Nos. 98-8258-CIV-Middlebrooks, 99-8275-CIV-Middlebrooks, (S.D. Fla.); *In re Citrix Sys. Inc. Sec. Litig.*, No. 00-6796-WPD (S.D. Fla.); *In re Theragenics Corp. Sec. Litig.*, No. 1:99CV141-TWT, (N.D. Ga.); *Schlagal v. Learning Tree Int'l*, No. CV98-6384 GAF (Ex), (C.D. Cal.); *In re Samsonite Corp. Sec. Litig.*, Master File No. 98-CV-1878-JLK (D. Colo.); *In re 3Com Sec. Litig.*, Case No. C-97-21083 (EAI) (N.D. Cal); *In re: Informix Corp., Sec. Litig.*, Case No. C-97-1289-CRB (N.D. Cal.); *In re: Omnivision Technologies, Inc. Sec. Litig.*, Case No. 5:11-cv-05235-RMW (N.D. Cal.); *Waldrep v. ValueClick, Inc., et al.*, Case No.

*In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000), which settled for more than $3.32 billion, including the largest recovery ever achieved from an outside accounting firm in a securities class action.

Barrack, Rodos & Bacine also served as a lead counsel for the New York State Common Retirement Fund in *In re WorldCom, Inc. Sec. Litig.*, Master File No. 02-Civ-3288 (DLC) (S.D.N.Y.), which settled for more than $6.1 billion. In Judge Cote's opinion approving part of the settlement in *WorldCom*, she stated that:

> The quality of the representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative. Its skill has matched that of able and well-funded defense counsel. It has behaved professionally and has taken care not to burden the Court or other parties with needless disputes. . .. The submissions of Lead Counsel to the Court have been written with care and have repeatedly been of great assistance. In sum, the quality of representation that Lead Counsel has provided to the class has been superb.… Lead Counsel has performed a valuable public service in prosecuting this action with vigor and skill.

*In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2004 U.S. Dist. LEXIS 22992, at *67-*68, *72-*73 (S.D.N.Y. Nov. 12, 2004).

In 2015, in *In re American International Group, Inc. 2008 Sec. Litig.*, No. 08-cv-4772-LTS (S.D.N.Y.), in which the firm was a lead counsel representing the State of Michigan Retirement Systems, the firm recovered $970.5 million on behalf of class members, which was found by the court to be an "outstanding result obtained on behalf of the settlement class."

The firm was also a lead counsel in *In re McKesson HBOC, Inc. Securities Litigation*, Master File No. CV-99-20743 RMW (N.D. Cal.), which settled for more than $1 billion, the largest recovery in a securities class action in the Northern District of California since passage of the PSLRA. *See also In re Cendant Corporation Sec. Litig.,* Case No. 98-1664-WHW (D.N.J.), ("we have all been favored with counsel of the highest competence and integrity and fortunately savvy in the ways of the law and the market"). Ward Decl. Ex. 3 at 21.

In *In re Apollo Group, Inc. Sec. Litig.*, Case No. CV 04-2147-PHX-JAT (D. Az.), the firm tried the action to a favorable jury verdict and ultimately recovered $145 million for the class. Attorneys Stephen

---

07-05411 DDP (AJWx) (C.D. Cal.);  *Stanley v. Safeskin Corp.*, Lead Case No.: 99cv0454-BTM (LSP) (S.D. Cal.); *In re Applied Micro Circuits Corp. Sec. Litig.*, Lead Case No. 01-cv-0649-K (S.D. Cal.) (AJB).

R. Basser, Jeffrey A. Barrack, and Samuel M. Ward composed the firm's trial team for the duration of the jury trial coursing from November 7, 2007 through January 16, 2008. Immediately after the jury rendered its unanimous verdict in favor of the plaintiff class in *In re Apollo Group, Inc. Sec. Litig.,* CV 04-2147-PHX-JAT (D. Ariz.), the court commented that trial counsel:

> brought to this courtroom just extraordinary talent and preparation. . .. The technical preparation, the preparation for your examination and cross-examination of witnesses has been evident in every single instance. The preparation for evidentiary objections and responses to those objections have been thorough and foresighted. The arguments that have been made in every instance have been well-prepared and well-presented throughout the case. *** Likewise, for the professionalism and the civility that you -- and the integrity that you have all demonstrated and exuded throughout the handling of this case, it has just, I think, been very, very refreshing and rewarding to see that. *** [W]hat I have seen has just been truly exemplary." [W]hat I have seen has just been truly exemplary.

Ward Decl. Ex. 3 at 20.

Thus, there can be no question that Barrack, Rodos & Bacine is a highly experienced, successful securities fraud class action firm with the resources, ability, and experience to serve as lead counsel in this litigation.

## IV.  CONCLUSION

For the foregoing reasons, NMSIC respectfully requests that this Court: (1) appoint the New Mexico State Investment Council Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the PSLRA and (2) approve its selection of Barrack, Rodos & Bacine as Lead Counsel for the class.

DATED: October 25, 2022         Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD


                                /s/ STEPHEN R. BASSER

12

|   |   |
|---|---|
| 1 | STEPHEN R. BASSER |
| 2 | 600 West Broadway, Suite 900 |
|   | San Diego, CA  92101 |
| 3 | Telephone:  (619) 230-0800 |
|   | Facsimile:   (619) 230-1874 |

JEFFREY A. BARRACK*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
E-mail:  jbarrack@barrack.com
Telephone:  (215) 963-0600
Facsimile:   (215) 963-0838

*Counsel for the New Mexico State Investment Council and Proposed Lead Counsel for the Class*

*Pro Hac Vice* application to be filed