STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
*sbasser@barrack.com*
*sward@barrack.com*

JEFFREY A. BARRACK*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile:  (215) 963-0838
*jbarrack@barrack.com*
*Pro Hac Vice* application to be filed

*Counsel for the New Mexico State Investment
Council and Proposed Lead Council for the
Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 HEALTH & WELFARE FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 GENERAL FUND, and RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 BENEFITS TRUST FUND, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>STITCH FIX, INC., KATRINA LAKE, ELIZABETH SPAULDING, STEVEN ANDERSON II, BASELINE VENTURES LLC, BASELINE VENTURES 2009 LLC, BASELINE INCREASED EXPOSURE FUND, LLC, | CASE NO. 4:22-CV-04893<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE NEW MEXICO STATE INVESMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL |

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE NEW MEXICO STATE INVESMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFFAND APPROVAL OF SELECTION OF LEAD COUNSEL

BASELINE CABLE CAR, LLC, and BASELINE ENCORE, L.P.,

Defendants.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE NEW MEXICO STATE INVESMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFFAND APPROVAL OF SELECTION OF LEAD COUNSEL

## I.    Introduction

In both its motion seeking appointment as lead plaintiff (Dkt. No. 26) and its response in support of said motion (Dkt. No. 34), Local 338 wholly ignores several critically important points that weigh against its appointment and, by doing so, Local 338 underscores its Achilles heel with regard to its adequacy to serve the best interests of the entire putative class. Specifically, Local 338 (1) ignores the fact that three of the four funds that comprise Local 338 have no compensable losses; (2) overlooks the fact that the remaining Local 338 fund does not actually represent all potential class members by reason of its complete divestiture well before the corrective disclosure ending the Class Period; (3) ignores the application of the Olsten Lax factors, which are favored by courts within the Ninth Circuit; and (4) ignores the well-accepted retained shares methodology, used by Courts within the Ninth Circuit to identify the lead plaintiff movant with the largest recoverable loss and, consequently, the largest stake in the outcome of the litigation.[1]

## II.    Argument

### a.    *Dura* and Recoverable Loss

Courts within the Ninth Circuit have increasingly recognized that losses such as those asserted by the Health & Welfare Fund, General Fund, and Trust Fund are not compensable. "[U]nder *Dura* there can be no loss causation for plaintiffs who purchased and sold stock at the inflated share price prior to that [corrective] disclosure, and thus these plaintiffs may not recover at all." *In re CornerStone Propane Ptnrs*, No. C 03-2522 MHP, 2006 U.S. Dist. LEXIS 25819, at *27-28 (N.D. Cal. May 3, 2006) (using retained shares methodology at the class certification stage to determine whether plaintiff had established loss causation); *see also Markette v. Xoma Corp.*, No. 15-cv-03425-HSG, 2016 U.S. Dist. LEXIS 633701, *16) (N.D. Cal. May 13, 2016) (noting that the retained shares methodology calculates the "shares retained at the end of the class period that were purchased during the class period and calculates the total net loss on those securities alone"). This is consistent with the Ninth Circuit's holding in *Metzler Inv. GMBH v.*

---

[1] Local 338 is a group of four related funds, Retail Wholesale Department Store Union("RWDSU") Local 338 Retirement Fund (the "Retirement Fund"), RWDSU Local 338 Health & Welfare Fund (the "Health & Welfare Fund"), RWDSU Local 338 General Fund (the "General Fund"), and RWDSU Local 338 Benefits Trust Fund (the "Trust Fund"), (collectively, "Local 338").

1

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE NEW MEXICO STATE INVESMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

*Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008), where the Court of Appeals held that in order to plead loss causation, a complaint "must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses."

### b. Three of the Four Funds Included in Local 338 Suffered No Compensable Loss

Local 338 asserts that in their December 7, 2021 disclosure, Defendants "admitted for the *first time* that the Company had downplayed the magnitude of its transition from the subscription-based Fix model to the retail-based Freestyle model." Dkt. No. 1 at ¶4 (emphasis added). Local 338 further pleads the *December 7, 2021 and March 8, 2022 disclosures as the only statements that disclosed Defendants' allegedly fraudulent conduct*. Dkt. No. 1 at ¶38. On the basis of Local 338's own pleading, three of Local 338's members are not adequate class representatives as they *did not incur losses following the alleged corrective disclosures*. *See* Dkt. No. 26-2 at 3-4 (disclosing that the Health & Welfare Fund, General Fund, and Trust Fund sold all of their class period holdings by no later than November 24, 2021); *see also Lako v. Loandepot, Inc.*, No. 8:21-cv-01449-JLS-JDE, 2022 U.S. Dist. LEXIS 79063, at *14, *19 (C.D. Cal. May 2, 2022) (finding that lead plaintiff group failed to satisfy the requirements of Rule 23 where member of the group suffered no damages and was thus subject to unique standing defenses). Because Local 338's Health & Welfare Fund, General Fund, and Trust Fund have suffered no compensable loss, NMSIC's motion should be granted.

### c. Local 338's Complete Divestment Renders NMSIC the Most Adequate Lead Plaintiff for All Class Members

The sole member of the Local 338 group to suffer compensable losses, the Retirement Fund, completely sold out of Stitch Fix common stock into a market that was still inflated following the partial, and still misleading, disclosure of December 7, 2021. *See* Dkt. No. 26-2. As a result of these early sales, the Retirement Fund was able to avoid the further harm suffered by members of the class who, like NMSIC, retained shares through both corrective disclosures. The amount of harm avoided by Local 338 is measureable by the inflation removed from the stock following the second corrective disclosure of March 8, 2022. Significantly, appointment of Local 338 as lead plaintiff would lead to a result in which three quarters of the lead plaintiffs had *no compensable losses* while shareholders who purchased and/or held stock through the four-month period between the first and second corrective disclosures would *have no*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE NEW MEXICO STATE INVESMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

*representation*, since Local 338 completely divested itself of Stitch Fix shares immediately following the December 7, 2021 partial corrective disclosure, even as artificial inflation remained embedded in the stock price during the ongoing fraud and through March 8, 2022. This potential conflict could bear out at every subsequent stage of this litigation, including on the class motion as to adequacy and typicality, and during expert discovery as to the development of evidence on the corrective revelations, causation and damages. *See, e.g., In re Fremont General Corp. Litig.*, Case No. 2:07–cv–02693, 2010 WL 11515293 at *1-*2 (C.D. Cal. Feb. 19, 2010) ("[p]ossible intra-class conflicts bear directly upon typicality, commonality, and adequacy of representation...."). For this reason too, NMSIC's motion should be granted.

### d.    The Retained Shares Methodology is Appropriate Under These Circumstances

As set forth in NMSIC's Response, Dkt. No. 35, courts within the Ninth Circuit typically rely on the *Olsten Lax* factors in measuring the financial interest of competing lead plaintiff movants. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 3d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715, *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). Local 338 ignores all but one of the *Olsten Lax* factors. *See, generally*, Dkt. No. 34. The second of the *Olsten-Lax* factors is the number of net shares purchased during the class period. *Id.* Because Local 338 sold out immediately after the first, partially corrective disclosure on December 7, 2021, its net shares purchased during the Class Period is zero.

Recognizing the significance of appointing a lead plaintiff who can represent all shareholders, courts have relied on a net shares purchased calculation to identify the plaintiff with the largest financial stake in the litigation. *See In re Network Assoc., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (beginning analysis with a calculation of net shares purchased during the class period). In the alternative, courts have looked to a calculation of the number of shares retained at the end of the class period. *See Rihn v. Acadia Pharms., Inc.*, No. 15cv575 BTM(DHB), 2015 U.S. Dist. LEXIS 119363, *9-*10 (S.D. Cal. Sept. 8, 2015) (discussing application of retained shares and net shares purchased analyses and appointing movant with the largest number of net shares purchased despite the fact that a competing plaintiff's calculated losses were more than twice as high). *See also Schueneman v. Arena Pharmaceuticals, Inc.*, 10CV2335 BTM BLM, 2011 U.S. Dist. LEXIS 87373, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) (adopting retained shares method of calculating financial interest); *Applestein v.*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE NEW MEXICO STATE INVESMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

*Medivation Inc*, C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) (same).

While NMSIC recognizes that courts have been hesitant to adopt the retained shares methodology in cases with multiple corrective disclosures, such cases are distinguishable from the facts at issue here. For example, in *In re: Lyft Sec. Litig.*, No. 19-cv-02690-HSG, 2020 U.S. Dist. LEXIS 37606, *12 (N. D. Cal. Mar. 4, 2020), this Court determined that the retained shares methodology could not be appropriately employed where the complaint alleged multiple partial corrective issues that touched on several disparate issues. In contrast, this case involves one partial, and still deceptive, disclosure and one final disclosure fully revealing the alleged fraud. Dkt. No. 1 at ¶ 38. While both disclosures are connected and related to the same underlying issue, it was not until new facts were disclosed on March 8, 2022 that the market was apprised and fully corrected about the alleged fraud. Thus, application of the retained shares approach is appropriate and consistent with the Ninth Circuit's guidance that the Court must "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Because NMSIC retained shares through both of the corrective disclosures in the case and has suffered a compensable loss on those net shares it retained, it's motion should be granted.

### III.   Conclusion

NMSIC is the most adequate plaintiff to represent all class members' interests in the face of the potential myriad defense contentions that will likely be deployed against Local 388 if it is selected as the Lead Plaintiff for this action.  Moreover, under both the net shares purchased and retained shares analysis, NMSIC has the largest financial interest in the claims asserted in the complaint.  Local 338 underscores its Achilles heel with respect to its loss position and the issue of its adequacy by virtue of the troubling fact that it ignores potential issues of concern to many class members arising from its complete divestiture on December 8-9, 2021, months prior to the corrective disclosure unveiling the whole adverse truth to the market, ending the class period on March 8, 2022.

As a result, the appointment of NMSIC as a lead plaintiff, which has a loss of $1,294,198 calculated on a retained shares basis, compared to a loss of $0 for Local 338, and the appointment of Barrack, Rodos & Bacine as lead counsel, is appropriate and the best means of protecting the interests of ***all*** class

members.[2]


DATED:  November 15, 2022

Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD


/s/ SAMUEL M. WARD
_____
SAMUEL M. WARD

600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874


JEFFREY A. BARRACK*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
E-mail:  jbarrack@barrack.com
Telephone:  (215) 963-0600
Facsimile:  (215) 963-0838

*Counsel for the New Mexico State
Investment Council and Proposed
Lead Counsel for the Class*

*Pro Hac Vice* application to be filed

---

[2] A chart calculating NMSIC's losses on both a LIFO basis and on a retained shares basis is attached as Exhibit A to the Supplemental Declaration of Samuel M. Ward filed herewith.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE NEW MEXICO STATE INVESMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL