**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

*Counsel for Proposed Lead Plaintiff Retail
Wholesale Department Store Union Local 338
Retirement Fund, Retail Wholesale Department
Store Union Local 338 Health & Welfare Fund,
Retail Wholesale Department Store Union Local
338 General Fund, and Retail Wholesale
Department Store Union Local 338 Benefits
Trust Fund*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 HEALTH & WELFARE FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 GENERAL FUND, and RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 BENEFITS TRUST FUND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STITCH FIX INC., KATRINA LAKE, ELIZABETH SPAULDING, STEVEN ANDERSON II, BASELINE VENTURES LLC, BASELINE VENTURES 2009 LLC, BASELINE INCREASED EXPOSURE FUND, LLC, BASELINE CABLE CAR, LLC, and BASELINE ENCORE, L.P.,<br><br>Defendants. | Case No. 4:22-cv-4893-HSG<br><br><u>CLASS ACTION</u><br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 HEALTH & WELFARE FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 GENERAL FUND, AND RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 BENEFITS TRUST FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTION**<br><br>Date: January 5, 2023<br>Time: 2:00 p.m.<br>Dept.: Courtroom 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr. |

REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
CASE NO. 4:22-cv-4893-HSG

# TABLE OF CONTENTS

PAGE

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     ARGUMENT.............................................................................................................3

        A.      The Local 338 Funds Are The Presumptive Lead Plaintiff ....................................3

        B.      The Presumption Has Not Been Rebutted ...............................................................5

                1.      The Local 338 Funds' Sale of Stitch Fix Stock Does Not Render
                        Them Atypical Or Inadequate............................................................................6

        C.      Competing Movant Should Not Be Appointed As Co-Lead Plaintiff .....................8

III.    CONCLUSION..........................................................................................................9

# TABLE OF AUTHORITIES

CASES                                                                                                      PAGE(S)

*Basile v. Valeant Pharm. Int'l, Inc.*,
    2015 WL 13652714 (C.D. Cal. May 5, 2015) ...........................................................................9

*Bodri v. GoPro, Inc.*,
    2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...........................................................................3

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .............................................................................................1, 3, 5

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
    586 F.3d 703 (9th Cir. 2009) ...................................................................................................9

*Dang v. Amarin Corp.*,
    2022 WL 15524944 (D.N.J. Oct. 27, 2022)..............................................................................7

*In re Diamond Foods, Inc. Sec. Litig.*,
    295 F.R.D. 240 (N.D. Cal. 2013)..........................................................................................2, 7

*Eichenholtz v. Verifone Holdings, Inc.*,
    2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .........................................................................2

*Freeland v. Iridium World Commc'ns, Ltd.*,
    233 F.R.D. 40 (D.D.C. 2006)...................................................................................................8

*In re Gaming Lottery Sec. Litig.*,
    58 F. Supp. 2d 62 (S.D.N.Y. 1999) .........................................................................................8

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) .........................................................................................6, 8

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) .............................................................................................9

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004).......................................................................................................7

*Juliar v. Sunopta Inc.*,
    2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ..........................................................................7

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015).....................................................................................9

*In re Leapfrog Enters., Inc. Sec. Litig.*,
    2005 WL 3801587 (N.D. Cal. Nov. 23, 2005) ........................................................................8

*In re Lyft Sec. Litig.*,
    2020 WL 1043628 (N.D. Cal. Mar. 4, 2020)......................................................................1, 3, 4

*Markette v. XOMA Corp.*,
    2016 WL 2902286 (C.D. Cal. May 13, 2016) ..............................................................................4

*Mehedi v. View, Inc.*,
    2022 WL 377406 (N.D. Cal. Feb. 8, 2022) ..................................................................................5

*Montoya v. Mamma.com Inc.*,
    2005 WL 1278097 (S.D.N.Y. May 31, 2005) ..............................................................................7

*Mortimer v. Diplomat Pharmacy Inc.*,
    2019 WL 3252221 (N.D. Ill. July 19, 2019)................................................................................7

*In re Nat'l Golf Properties Inc. Sec. Litig.*,
    2003 WL 23018761 (C.D. Cal. Mar. 19, 2003).........................................................................8

*Nicolow v. Hewlett Packard Co.*,
    2013 WL 792642 (N.D. Cal. Mar. 4, 2013)............................................................................3, 4

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
    2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) ............................................................................6

*Rihn v. Acadia Pharms., Inc.*,
    2015 WL 5227923 (S.D. Cal. Sept. 8, 2015)..............................................................................4

*Scheuneman v. Arena Pharms., Inc.*,
    2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ..............................................................................4

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005)..............................................................................................8, 9

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
    2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ..............................................................................7

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).................................................................................................2, 5

Presumptive Lead Plaintiff the Local 338 Funds respectfully submit this reply brief in further support of their motion for appointment as Lead Plaintiff and approval of their selection of Lead Counsel (*see* ECF No. 26), and in opposition to the competing motion (*see* ECF No. 19).[1]

## I.    PRELIMINARY STATEMENT

There can be no credible dispute that the Local 338 Funds have the largest financial interest in this case.  The Local 338 Funds' loss of more than $1.9 million is more than ***45% larger*** than the loss incurred by New Mexico, the sole competing movant (the "Competing Movant"). Competing Movant concedes as much, stating that the Local 338 Funds "can demonstrate the largest stake in the outcome of the litigation" under the LIFO loss calculation that most courts use to assess financial interest and select lead plaintiffs under the PSLRA.  ECF No. 35 at 7.  Moreover, the Local 338 Funds have demonstrated that they satisfy the typicality and adequacy requirements of Rule 23 and are perfectly situated to represent all Class members—a point that Competing Movant does not contest.  Accordingly, under well-established Ninth Circuit law, the Local 338 Funds are the presumptive Lead Plaintiff.  *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

Competing Movant has had the Local 338 Funds' transactions in Stitch Fix Class A common stock since August 26, 2022, when the Local 338 Funds filed the complaint in this action. In its initial brief, Competing Movant argued that the method for calculating financial interest was by using the "formula for computing a class member's damages" set forth in 15 U.S.C. § 78u-4(e). ECF No. 19 at 7.  Now, for the first time in its opposition brief, Competing Movant changes track and presents an alternative methodology for calculating financial interest: the retained shares method.  *See* ECF No. 35 at 6.  As Competing Movant itself acknowledged, however, this Court has been reluctant to apply the retained shares method in cases such as this one, where the fraud is alleged to have been revealed through multiple partial corrective disclosures.  *See In re Lyft Sec. Litig.*, 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020) (Gilliam, J.).  Even if the retained shares method is applied in this case, which Competing Movant concedes involves multiple corrective

---

[1] All capitalized terms are defined in the Local 338 Funds' prior briefs, unless otherwise indicated. *See* ECF Nos. 26, 34.  All internal quotations and citations are omitted and all emphasis is added, unless noted.

disclosures of the fraud, the Local 338 Funds still have the greatest financial interest. Specifically, under the retained shares method advanced by Competing Movant, the Local 338 Funds suffered a total loss on retained shares of $330,983, which far surpasses Competing Movant's total loss on retained shares of only $204,147. The only way for Competing Movant to claim a larger financial interest is by twisting the retained share methodology and ignoring the partial disclosure of the truth about Stitch Fix on December 7, 2021, which caused Stitch Fix stock to decline by 24%. That disclosure is included in the Local 338 Funds' complaint and acknowledged in Competing Movant's briefs, and cannot be ignored simply to position Competing Movant to lead this case. As a result, regardless of the methodology, the Local 338 Funds have the greatest financial interest in this case.

In order to rebut the strong presumption favoring the Local 338 Funds' appointment as Lead Plaintiff, Competing Movant must present "***proof***" that the Local 338 Funds are inadequate or atypical. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists. Instead, Competing Movant observes that the Local 338 Funds sold all of their Stitch Fix shares after the first disclosure of Stitch Fix's fraud on December 7, 2021, and wrongly contends that this "presents a potential conflict of interest." ECF No. 35 at 6. Courts in this District have consistently rejected this same argument. *See, e.g.*, *In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 254-55 (N.D. Cal. 2013) (finding no conflict of interest where a lead plaintiff sold all shares following a partial corrective disclosure but before the end of the class period). In any event, speculation about "potential" conflicts is insufficient to rebut the strong presumption favoring the Local 338 Funds. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (finding that a "potential conflict, standing alone, is insufficient to defeat . . . appointment as lead plaintiff"). Further, Competing Movant's conjecture that the Local 338 Funds lack the incentive to prove that the final partial corrective disclosure caused the Class to incur damages is belied by the fact that the Local 338 Funds filed this action and asserted those very allegations in their complaint. *See* ECF No. 1 at 8-9.

Because Competing Movant does not offer any "proof" to rebut the strong statutory presumption that the Local 338 Funds should be appointed Lead Plaintiff, its argument fails.

Accordingly, the Local 338 Funds should be appointed Lead Plaintiff and their motion should otherwise be granted.

## II.    ARGUMENT

### A.    The Local 338 Funds Are The Presumptive Lead Plaintiff

The Local 338 Funds have the largest financial interest in the relief sought by the Class. Courts in this District and Circuit most often equate a movant's financial interest in the litigation with its financial loss. *See, e.g.*, *Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status."); *Lyft*, 2020 WL 1043628, at *3 ("[m]any courts consider . . . approximate loss[] the most important" factor).[2] Even Competing Movant recognized the "weight of authority placing greater significance on . . . the approximate losses suffered." ECF No. 35 at 4. Further, "[w]hile '[t]he Ninth Circuit has declined to endorse a particular method' to determine which party has the greatest financial stake, '[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a last in, first out (LIFO) methodology.'" *Bodri v. GoPro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (quoting *Nicolow*, 2013 WL 792642, at *4). Here, the Local 338 Funds incurred a loss of more than $1.9 million on their investments of Stitch Fix Class A common stock during the Class Period, far more than the $1.3 million loss asserted by Competing Movant. *See* ECF Nos. 26-2; 34-2.

---

[2] Although approximate loss is the most important factor, some courts use three additional factors to assess financial interest at this stage. As Competing Movant concedes, the Local 338 Funds have a larger financial interest under three of the four factors. *See* ECF No. 35 at 4. The only factor that seemingly favors Competing Movant, net shares purchased, ignores the partial disclosure of the fraud on December 7, 2021 by focusing solely on shares retained at the end of the Class Period. Net shares purchased is therefore of limited utility here, given that this case alleges that the truth was disclosed through multiple corrective disclosures. *See Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (declining "to give significant weight to net shares purchased" in a case involving "multiple partial corrective disclosures"). Indeed, at the time of the first corrective disclosure, which caused a much larger stock price decline than the second corrective disclosure, the Local 338 Funds retained 55,441 net shares, which is nearly double the shares retained by Competing Movant at the time of that disclosure.

Although Competing Movant acknowledged in its initial brief that losses are the proper metric for assessing financial interest, Competing Movant now suggests that the Court should consider a different method for calculating losses—the "retained shares method."[3]  However, this Court, consistent with other courts in this District, has held that the "retained shares approach would not result in the most accurate loss calculation" in cases like this one, which alleges that the fraud was revealed gradually through two or more partial corrective disclosures.  *Lyft*, 2020 WL 1043628, at *4.[4]

Nevertheless, even if the Court were to apply the retained shares method in this case, the Local 338 Funds still have the largest financial interest:[5]

---

[3] It is notable that Competing Movant failed to provide the Court with any quantification of its financial interest or losses in its motion (*see* ECF No. 19), and now suggests using an alternative methodology, while still failing to provide the Court with any calculation of its financial interest under that methodology (*see* ECF No. 35).  *See Nicolow*, 2013 WL 792642, at *4 ("Tellingly, [lead plaintiff movant] made no reference to net shares purchased or a retained shares calculation in its opening motion seeking appointment as lead plaintiff, shifting its argument only after [opposing lead plaintiff movant] came forward with larger LIFO losses.").

[4] Nearly all of Competing Movant's authority supporting the use of the retained shares method consists of situations where the fraud was revealed through a single corrective disclosure.  *See Rihn v. Acadia Pharms., Inc.*, 2015 WL 5227923, at *4 (S.D. Cal. Sept. 8, 2015) ("Here, there are no allegations of partial disclosures throughout the Class Period."); *Markette v. XOMA Corp.*, 2016 WL 2902286, at *5 (C.D. Cal. May 13, 2016) (the retained shares method "will most accurately calculate net loss where there are not multiple partial disclosures that reveal the purported fraud during the class period").  In addition, *Scheuneman v. Arena Pharmaceuticals, Inc.*, 2011 WL 3475380, at *1 (S.D. Cal. Aug. 8, 2011), involved two partial disclosures that occurred just two days apart, on September 14 and September 16.  Notably, in *Scheuneman*, there is no indication that the movants' number of retained shares changed in the short period between those disclosures.

[5] Although Competing Movant implores the Court to rely on the retained shares method for assessing financial interest, it fails to provide any calculation of either movants' financial interest under that method, let alone a calculation that supports Competing Movant's contention that it has a larger financial interest than the Local 338 Funds.

---

| Movant | December 7, 2021 Disclosure | | | March 8, 2022 Disclosure | | | Total Loss[6] on Retained Shares |
|---|---|---|---|---|---|---|---|
| | Retained Shares | Stock Price Decline | Loss on Retained Shares | Retained Shares | Stock Price Decline | Loss on Retained Shares | |
| The Local 338 Funds | 55,441 | $5.97 | $330,983 | 0 | $0.67 | $0 | $330,983 |
| Competing Movant | 30,745 | $5.97 | $183,548 | 30,745 | $0.67 | $20,599 | $204,147 |

This chart makes clear that the retained shares method only benefits Competing Movant if it argues that the Court should ignore the December 7, 2021 disclosure. That disclosure (and its impact on Stitch Fix Class A common stock) is properly alleged in the Local 338 Funds' complaint and acknowledged in Competing Movant's briefs; accordingly, it cannot be ignored when assessing the movants' financial interest. As a result, regardless of which method the Court applies, the Local 338 Funds have a larger financial interest than Competing Movant.[7]

**B.    The Presumption Has Not Been Rebutted**

As the movant with the largest financial interest that has also demonstrated that it satisfies Rule 23's typicality and adequacy requirements, the Local 338 Funds are the presumptive Lead Plaintiff. That presumption can only be rebutted by "proof" that the Local 338 Funds are an atypical or inadequate class representative. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 739 (once the presumption attaches, "[t]he next step in the process is for the district court to give the other plaintiffs an opportunity to present evidence rebutting the presumption"). Competing Movant has not presented any evidence, let alone "proof," sufficient to rebut the presumption.

---

[6] Retained share losses are calculated by taking the decline in value of Stitch Fix shares caused by the disclosure and multiplying it by the number of shares each movant retained at that disclosure. *See generally Mehedi v. View, Inc.*, 2022 WL 377406 (N.D. Cal. Feb. 8, 2022). Given that this action alleges that the fraud was revealed through two corrective disclosures, that calculation is repeated for each disclosure, and the retained share losses for the two disclosures are added together to arrive at the movant's total retained share loss.

[7] Confusingly, Competing Movant belatedly provides the Court with a calculation of its financial interest and claims to have suffered "losses on retained shares of approximately $1,294,198." ECF No. 35 at 6. Inexplicably, despite arguing for application of the retained shares method in its opposition brief, this loss was not calculated by using the retained shares method, but rather by calculating Competing Movant's LIFO loss on the 30,745 shares it held at the end of the Class Period.

---

REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
CASE NO. 4:22-cv-4893-HSG                                                                5

## 1. The Local 338 Funds' Sale of Stitch Fix Stock Does Not Render Them Atypical Or Inadequate

With no "proof" of atypicality or inadequacy to offer this Court, Competing Movant instead contends that the Local 338 Funds are atypical and inadequate because they sold all of their Stitch Fix Class A common stock after the first partial corrective disclosure on December 7, 2021, but before the second partial corrective disclosure on March 8, 2022. Not so.

The claims against Stitch Fix arise from misrepresentations made regarding the impact the Company's new Freestyle program would have on its existing Fix business. The truth emerged through two partial disclosures. *See, e.g.*, *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2017 WL 3187688, at \*20 (C.D. Cal. Jan. 17, 2017) (holding loss causation adequately pleaded through a series of partial corrective disclosures). The first occurred on December 7, 2021, when Stitch Fix admitted that the Company saw some "short term cannibalization" from new customers who chose to use the new Freestyle option rather than the traditional Fix option. As a result of this disclosure, Stitch Fix's stock plummeted 24%. ECF No. 1 ¶4. Then, on March 8, 2022, Stitch Fix announced that the friction between the Freestyle program and the Fix program was self-inflicted. As a result of this disclosure, Stitch Fix's stock fell an additional 6%. *Id.* ¶6. Given that the first corrective disclosure caused a much more significant decline in the price of Stitch Fix shares than the second partial disclosure, the vast majority of Competing Movant's retained share loss (as well as the Local 338 Funds' loss) is driven by this first disclosure. *See supra* Section II.A.

Yet Competing Movant seems to suggest that losses resulting from the first corrective disclosure are somehow less important than losses caused by the second. *See* ECF No. 35 at 5-6 (attempting to draw a distinction by characterizing the first disclosure as "one partial disclosure" and the second as "one complete disclosure"). Critically, Competing Movant does not contend that the December 7, 2021 disclosure, which caused a 24% decline in the price of Stitch Fix shares, is implausible or illegitimate. *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115 (E.D.N.Y. 2012) (appointing as lead plaintiff an investor that sold its shares prior to the end of the class period, but after "plausible and legitimate partial disclosures"). As such, there is no basis to suggest that losses resulting from that December 2021 disclosure should be discounted relative to losses on the second disclosure, or that investors that incurred losses on shares held through the first partial disclosure

are atypical of other class members. Indeed, courts routinely appoint as lead plaintiff investors who sold shares after a partial corrective disclosure but before the final partial corrective disclosure. *See, e.g.*, *Dang v. Amarin Corp.*, 2022 WL 15524944, at *11 (D.N.J. Oct. 27, 2022) (finding sale of shares after two of the four alleged partial disclosures "does not render [the movant] incapable of adequately protecting the interests of the Class or subject it to unique defenses"); *Mortimer v. Diplomat Pharmacy Inc.*, 2019 WL 3252221, at *4 (N.D. Ill. July 19, 2019) ("The Fund is not inadequate or atypical solely because it can only show losses related to one of the three disclosures at issue here."); *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (holding that "where a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent that it cannot serve as lead plaintiff."); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *5 (S.D.N.Y. Jan. 25, 2006) (holding presumptive lead plaintiff was "not unable to prove loss causation simply because all of its shares were sold before the end of the Class Period" since the "case involve[d] partial disclosures"); *Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (appointing movant who sold all shares before the end of the class period because it sold a substantial portion of its shares after a partial corrective disclosure and "therefore, can allege that the 'subject of the fraudulent statement or omissions was the cause of the actual loss suffered'").

Further, Competing Movant's contention that the Local 338 Funds' trading pattern subjects them to a 'unique defense" because they lack standing to challenge false statements made after their final sales is likewise wrong, as courts have repeatedly rejected this precise standing challenge. *See Diamond Foods*, 295 F.R.D. at 255 (finding sale of all shares prior to the end of the class period did not create a conflict of interest, and noting such an argument has been rejected by the majority of judges). In any event, "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d

Cir. 2004). Courts in this District and Circuit are in accord. *See, e.g.*, *In re Leapfrog Enters., Inc. Sec. Litig.*, 2005 WL 3801587, at *4 (N.D. Cal. Nov. 23, 2005) (noting "the lead plaintiffs needed only to prove that they suffered a concrete injury because of defendants' wrongdoing, not *every* injury alleged by the class") (emphasis in original); *In re Nat'l Golf Properties Inc. Sec. Litig.*, 2003 WL 23018761, at *1 (C.D. Cal. Mar. 19, 2003) (finding that the PSLRA "does not require lead plaintiffs to have standing to assert all claims, only that they have the greatest financial stake in the action").[8]

Competing Movant's contention that the Local 338 Funds lack the "incentive to fairly and adequately protect the interests of the class as to later disclosures" ignores the record. ECF No. 35 at 8. The Local 338 Funds filed the only complaint in this action and asserted both the December 7, 2021 and March 8, 2022 corrective disclosures. Any speculation that the Local 338 Funds "ha[ve] no interest in advocating on behalf of those class members" who held shares until the end of the Class Period is belied by the fact that the Local 338 Funds have already taken steps to ensure that the claims against Stitch Fix are vigorously and zealously prosecuted on behalf of all members of the Class. *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 n.40 (C.D. Cal. 2005) (noting lead plaintiff and lead counsel "will have a fiduciary duty to represent all class members"); *Leapfrog*, 2005 WL 3801587, at *4 (noting lead plaintiffs had "a vested interest in proving that defendants' allegedly false statements artificially increased the price of [the company's] securities . . . even if the misrepresentations occurred before it bought stock").

C. **Competing Movant Should Not Be Appointed As Co-Lead Plaintiff**

Finally, Competing Movant requests that if the Court appoints the Local 338 Funds, Competing Movant should be paired with them as "co-lead plaintiff" and Competing Movant's selected counsel should be approved as co-lead counsel. ECF No. 35 at 7. However, these types

[8] *See also Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 48-49 (D.D.C. 2006) (fact that class representative sold shares before the end of the class period did not render him inadequate); *In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 69-71 (S.D.N.Y. 1999) (rejecting argument that sales before the end of the class period rendered class representative inadequate); *Gentiva*, 281 F.R.D. at 115 (finding the fact that some lead plaintiff movants sold their shares prior to the end of the class period did not disqualify them from appointment as lead plaintiff).

of forced marriages are "fundamentally at odds" with the PSLRA and Ninth Circuit precedent. *Tanne*, 226 F.R.D. at 673 (finding the forced pairing of lead plaintiffs conflicts with "*Cavanaugh*'s interpretation of the PSLRA and its outlining of the process to be used in identifying a lead plaintiff"); *see also Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 711 n.4 (9th Cir. 2009) (forced marriage of two competing lead plaintiffs "would also tend to run counter to the sequential inquiry we outlined for selection of lead plaintiff").

It is for these reasons that courts in this Circuit and throughout the country have repeatedly rejected efforts by a lead plaintiff movant seeking to attach itself to the presumptive lead plaintiff. *See, e.g.*, *Basile v. Valeant Pharm. Int'l, Inc.*, 2015 WL 13652714, at *2 (C.D. Cal. May 5, 2015) (rejecting request to force a co-lead plaintiff relationship, noting courts "have expressed doubt that it is appropriate under the PSLRA to appoint co-lead plaintiffs where the plaintiffs have not filed a joint motion to be appointed together"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015) (declining to impose forced marriage between different law firms, particularly, "[w]here, as here, there is no demonstrable need for more than one law firm to represent the class"); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y. 2006) (movant's proposal for appointment as co-lead plaintiff "contravenes the very purpose of the PSLRA—to place securities class actions in the hands of the investor . . . with the largest amount at stake in the outcome of the case" and "would only serve to fracture the leadership" of the litigation and increase inefficiencies).  Even if Competing Movant were appointed co-Lead Plaintiff, there is no basis for appointing a second law firm as co-Lead Counsel and Competing Movant provides no explanation for that aspect of its request.  Accordingly, Competing Movant's request should be rejected.

### III.    CONCLUSION

For the reasons discussed above, and in their opening and opposition briefs, the Local 338 Funds respectfully request that the Court appoint them as Lead Plaintiff, approve their selection of Bernstein Litowitz as Lead Counsel for the Class, and grant any such further relief as the Court may deem just and proper.

Dated:  November 15, 2022

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:     (310) 819-3470

       -and-

AVI JOSEFSON
(avi@blbglaw.com)
SCOTT R. FOGLIETTA
(scott.foglietta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:     (212) 554-1400
Fax:     (212) 554-1444

*Counsel for Proposed Lead Plaintiff Retail
Wholesale Department Store Union Local 338
Retirement Fund, Retail Wholesale Department
Store Union Local 338 Health & Welfare Fund,
Retail Wholesale Department Store Union Local
338 General Fund, and Retail Wholesale
Department Store Union Local 338 Benefits Trust
Fund*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*

JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
CASE NO. 4:22-cv-4893-HSG