UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STITCH FIX, INC., et al.,<br><br>Defendants. | Case No. 22-cv-04893-HSG<br><br>**ORDER GRANTING THE LOCAL 338 FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION AS COUNSEL AND DENYING NEW MEXICO'S MOTION**<br><br>Re: Dkt. Nos. 19, 26 |

Pending before the Court are two competing motions for appointment of lead plaintiff and lead counsel: 1) the New Mexico State Investment Council's ("New Mexico") Motion, and 2) the Local 338 Funds'[1] Motion.[2]  *See* Dkt. Nos. 19 ("New Mexico Mot."), 26 ("Local 338 Mot."). Both parties filed briefs in opposition to the competing motions and replies in support of their own motions.  *See* Dkt. Nos. 34–37.  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons discussed below, the Court **GRANTS** the Local 338 Funds' motion and **DENIES** New Mexico's motion.

**I.    BACKGROUND**

Defendant Stitch Fix "sells a range of apparel, shoes, and accessories through its website and mobile application."  Dkt. No. 1 ("Compl.") ¶ 2.  Plaintiffs allege that Stitch Fix originally

---

[1] "Local 338 Funds" refers to the following group of funds: Retail Wholesale Department Store Union ("RWDSU") Local 338 Retirement Fund, RWDSU Local 338 Health & Welfare Fund, RWDSU Local 338 General Fund, and RWDSU Local 338 Benefits Trust Fund. *See* Dkt. No. 26 ("Local 338 Mot.") at 1.
[2] Mr. Dax Billcheck also filed a motion for appointment of lead plaintiff and lead counsel, Dkt. No. 16, but later withdrew his motion because he did not appear to have the largest financial interest. *See* Dkt. No. 32.

"sold products as a 'Fix' box, through which the customer would receive a monthly box of items chosen by a personal stylist." *Id.*  The complaint further alleges that in late 2020, "Stitch Fix launched the 'Freestyle' program—a new, direct buy program where customers could choose from the outset which items to purchase." *Id.* ¶ 3.  According to Plaintiffs, "[t]hroughout the Class Period, Stitch Fix touted that the two programs were synergistic, and repeatedly denied claims that the Freestyle program could cannibalize its legacy Fix business." *Id.*

According to the complaint, Stitch Fix subsequently made two disclosures that negated these assurances.  The first disclosure allegedly occurred on December 7, 2021.  *Id.* at ¶ 4.  Plaintiffs allege that, among other things, Stitch Fix "admitted that the Company saw some 'short term cannibalization' from new customers who chose to use the new direct-buy Freestyle option rather than the traditional Fix option" and "announced a loss for its first quarter of 2021 and cut its full-year revenue projections."  *Id.*  According to the complaint, "[a]s a result of these disclosures, the price of Stitch Fix stock declined by $5.97 per share, or 24%, from $24.97 per share to $19.00 per share."  *Id.*

Plaintiffs allege that a second disclosure occurred on March 8, 2022 when, among other things, "Stitch Fix offered a weak outlook for its third quarter of 2022 and cut its revenue guidance for the full year" and also "announced a self-inflicted friction between the Freestyle program and the Fix program."  *Id.* ¶ 6.  According to the complaint, "[a]s a result of this disclosure, the price of Stitch Fix stock declined by $0.67 per share, or 6%, from $11.01 per share to $10.34 per share."  *Id.*

## II.     APPOINTMENT OF LEAD PLAINTIFF

The Private Securities Litigation Reform Act ("PSLRA") "instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  "The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23."  *Id.*  The Ninth Circuit interprets the PSLRA as establishing "a simple three-step process for identifying the lead plaintiff pursuant to these criteria."  *Id.*  The Court must: (1) determine

2

1  whether appropriate notice was published; (2) determine which plaintiff has the largest financial
2  stake and whether this plaintiff satisfies the typicality and adequacy requirements; and (3) provide
3  the other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing of typicality
4  and adequacy. *Id.* at 729–32.

### A. Notice Requirement

Step One consists of meeting the PSLRA's notice requirement. *Id.* at 729. "The first plaintiff to file an action covered by the [PSLRA] must post this notice 'in a widely circulated national business-oriented publication or wire service.'" *Id*. (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)). The notice must be published within 20 days of the complaint's filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also alert putative class members "(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id*.

Here, notice was published in *Business Wire* on the same date that the complaint was filed. *Compare* Dkt. No. 8-1 ("Notice") *with* Compl. This complied with the PSLRA's 20-day filing deadline, and *Business Wire* is a "widely circulated [inter]national business-oriented news reporting service," as required. *Cavanaugh*, 306 F.3d at 729 (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)). The notice specifically announced the filing of the action against Stitch Fix, described the asserted claims under the Securities Act, described the class as encompassing "purchasers of Stitch Fix Class A common stock between December 8, 2020, and March 8, 2022, inclusive," and notified putative class members that any motion to be appointed lead plaintiff must be filed no later than October 25, 2022. *See generally* Notice. Accordingly, Step One's requirements are met.

### B. Largest Financial Stake in the Litigation

Step Two consists of identifying the presumptive lead plaintiff. *See Cavanaugh*, 306 F.3d at 729–30. There is a rebuttable presumption that the "most adequate plaintiff" is the one who "(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought

3

1  by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil
2  Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Thus, once the filing requirement of subsection
3  (a)(3)(B)(iii)(I)(aa) is met, "the district court must compare the financial stakes of the various
4  plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d
5  at 730.  Both the Local 338 Funds and New Mexico filed their motions on October 25, 2022, *see*
6  New Mexico Mot. and Local 338 Mot., satisfying subsection (aa), so the Court must then
7  determine who has the largest financial interest in the litigation.

8        The Local 338 Funds argue that they have the largest financial interest in the litigation
9  because they incurred the greatest financial loss at $1.9 million, calculated using the last-in-first-
10 out ("LIFO") method. *See* Dkt. No. 37 ("Local 338 Reply") at 1; *see also* Dkt. No. 37-2, Uslaner
11 Decl., Ex. A ("Local 338 Loss Chart").  New Mexico calculates that it incurred an approximately
12 $1.3 million dollar loss under the LIFO method, *see* Dkt. No. 36-2, Ward Supp. Decl., Ex. A
13 (New Mexico Loss Chart), but argues that the court should apply the retained shares method
14 instead. *See* Dkt. No. 36 ("New Mexico Reply") at 3.  New Mexico reasons that because "Local
15 338 sold out immediately after the first, partially corrective disclosure on December 7, 2021, its
16 net shares purchased during the Class Period is zero." *Id.*  New Mexico contends that, using the
17 retained shares method of calculation, it experienced a "loss of $1,294,198 . . . compared to a loss
18 of $0 for Local 338." *Id.* at 4.

19       "The Ninth Circuit has declined to endorse a particular method" to calculate which movant
20 has the largest financial stake in a securities class action. *Nicolow v. Hewlett Packard Co.*, No.
21 12-cv-05980-CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (citation omitted).  Instead,
22 district courts "may select accounting methods that are both rational and consistently applied."
23 *Cavanaugh*, 306 F.3d at 730 n.4.  As this Court recently summarized, courts often rely on one of
24 two methods for estimating actual economic losses: 1) a "last in, first out" (LIFO) calculation, or
25 2) a "retained shares" calculation. *See In re Lyft Sec. Litig.* ("*Lyft*"), No. 19-CV-02690-HSG,
26 2020 WL 1043628, at *3–4 (N.D. Cal. Mar. 4, 2020).[3]  The retained shares method "will most

---

[3] Courts consider the four *Lax-Olsten* factors to determine economic loss but "[m]any courts

accurately calculate net loss where there are not multiple partial disclosures that reveal the purported fraud during the class period." *Id.* at 4.  This method is best suited to cases with a "relatively constant fraud premium through the class period." *Id.* (quotation omitted).

New Mexico includes the calculations below in its opposition and acknowledges that "the weight of the authority plac[es] greater significance on the fourth of the *Olsten-Lax* factors, the approximate losses suffered." Dkt. No. 35 ("New Mexico Opp.") at 4.

|  | **New Mexico** | **Local 338 Funds** |
|---|---|---|
| Shares Purchased | 46,253 | 89,727 |
| Net Shares Purchased | 25,967 | 0 |
| Net Funds Expended | $1,301,589 | $1,702,897 |
| LIFO Losses | $1,318,489 | $1,702,897 |

*Id.*[4]  Despite this, New Mexico argues that this Court should apply the retained shares method to determine which party has the largest financial interest in the action. *Id.* at 5.

The Local 338 Funds argue that the "'retained shares approach would not result in the most accurate loss calculation' in cases like this one, which alleges that the fraud was revealed gradually through two or more partial corrective disclosures." Local 338 Reply at 4 (quoting *Lyft*, 2020 WL 1043628, at *4).  New Mexico argues that this case is distinguishable from *Lyft* because while the *Lyft* "complaint alleged multiple partial corrective [disclosures] that touched on several

---

consider the fourth factor, approximate loss, the most important." *See Markette v. XOMA Corp.*, No. 15-CV-03425-HSG, 2016 WL 2902286, at *5 n.4 (N.D. Cal. May 13, 2016); *see also In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012).  The other three *Lax-Olsten* factors are "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; [and] (3) the total net funds expended during the class period." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (quotation omitted).

[4] In footnotes to its chart, New Mexico points out that its loss calculation for the Local 338 Funds was based only on the one member fund (the "Retirement Fund") that had not sold its holdings prior to the first disclosure. *See* New Mexico Opp. at 4 n.4 (citation omitted).  It also points out that "[w]hen factoring in sales by the Retirement Fund prior to the first corrective disclosure, the Retirement Fund held 55,441 shares at the time of the initial corrective disclosure, all of which were sold shortly following the disclosure." *See id.* n.5 (citation omitted).

1  disparate issues . . . . this case involves one partial, and still deceptive, disclosure and one final
2  disclosure fully revealing the alleged fraud." New Mexico Reply at 4. New Mexico contends that
3  "[w]hile both disclosures are connected and related to the same underlying issue, it was not until
4  new facts were disclosed on March 8, 2022 that the market was apprised and fully corrected about
5  the alleged fraud." *Id.* Thus, it argues, "application of the retained shares approach is
6  appropriate." *Id.*

7  The Court disagrees. Here, the complaint alleges that the first disclosure caused Stitch Fix
8  stock to decline by 24% and the second disclosure caused Stitch Fix stock to decline by only 6%.
9  *See* Compl. ¶¶ 4, 6. The large disparity alleged in the price effect of the two disclosures
10 "suggest[s] that there likely was not a constant fraud premium, such that a retained shares
11 approach would not result in the most accurate loss calculation in this case." *See Lyft*, 2020 WL
12 1043628, at *4. Consequently, "[i]t would be very difficult for the Court to assess the effect of a
13 non-constant fraud premium in determining loss." *See id.* And the applicability of the reasoning
14 of *Lyft* does not hinge on whether a case involves disclosures about "disparate" or "related" issues:
15 the point is that viewing the class period as a whole, the Local 338 Funds allege that they suffered
16 substantially the largest loss based on the first very-impactful disclosure, and the fact that they did
17 not also suffer losses based on the second much-less-impactful disclosure does not undermine
18 their position for PSLRA purposes. Put another way, New Mexico's assertion that the Local 338
19 Funds' claimed loss should be valued at zero dollars is not reasonable as a matter of basic
20 economics based on the allegations here.

21 Using a LIFO calculation, the Local 338 Funds has the largest financial loss. Although the
22 Local 338 Funds estimate their LIFO loss at approximately $1.9 million, *see* Local 338 Reply at 3,
23 and New Mexico estimates the Local 338 Funds' LIFO loss at approximately $1.7 million, *see*
24 New Mexico Opp. at 4, the Local 338 Funds' LIFO loss is greater than New Mexico's estimated
25 LIFO loss. *See* New Mexico Opp. at 4 (listing its estimated LIFO losses as approximately $1.3
26 million); *see also* Local 338 Loss Chart; New Mexico Loss Chart.

27 Based on New Mexico's own calculations, the Local 338 Funds also have the most shares
28 purchased, and the largest net funds expended. Although New Mexico has a greater number of net

6

1    shares purchased, the Court declines to give significant weight to this factor for the same reason it
2    declined to apply the retained shares calculation method: "net shares purchased and a retained
3    shares calculation are less useful analytical tools where gradual disclosures are involved, because
4    those methods assume a constant fraud premium throughout the class period." *See Nicolow*, 2013
5    WL 792642, at *4 & n.5 (cleaned up) (collecting cases).

6    Accordingly, the Court finds that the Local 338 Funds have the largest financial interest in
7    the action.

### C.   Movant's Typicality and Adequacy

Next, a presumptive lead plaintiff has the burden of setting forth a prima facie case that he can satisfy the class representative requirements of Rule 23(a), typicality and adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 730.   Competing movants can rebut this showing by setting forth evidence that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Local 338 Funds argue that they "and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical." Local 338 Mot. at 6.  Specifically, they argue that "[l]ike all other Class members, the Local 338 Funds (1) purchased Stitch Fix Class A common stock during the Class Period, (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were harmed when the truth was revealed." *Id.*  The Local 338 Funds further argue that "[t]here are no facts to suggest any actual or potential conflict of interest or other antagonism between the Local 338 Funds and the other members of the Class" and point out that they have "filed the only complaint asserting these claims against Defendants, and initiated the process for investors to seek appointment as Lead Plaintiff." *Id.* at 7–8.  The Court finds that the Local 338 Funds have made a *prima facie* showing of typicality and adequacy.

New Mexico endeavors to rebut this showing in several ways.  New Mexico first argues that the Local 338 Funds would not be a typical representative because "[i]mmediately following

1    the partial disclosure of December 7, 2021, Local 338 sold into a still inflated market while
2    shareholders, such as NMSIC, who retained stock throughout the class period, suffered the full
3    impact of the alleged fraud." New Mexico Opp. at 6.  New Mexico contends that "[t]his presents
4    a conflict of interest for Local 338 in representing class members who purchased shares after
5    December 7, 2021 at artificially inflated prices or who retained shares through the end of the class
6    period." *Id.*  The Court disagrees.  As the Local 338 Funds argue, "there is no basis to suggest that
7    losses resulting from the December 2021 disclosure should be discounted relative to losses on the
8    second disclosure, or that investors that incurred losses on shares held through the first partial
9    disclosure are atypical of other class members." Local 338 Reply at 6–7.  New Mexico cites no
10   controlling cases that support their argument that the Local 338 Funds necessarily have a conflict
11   of interest because they sold their shares after the first disclosure.  In light of this, the Court agrees
12   with cases holding that plaintiffs who sell their stock at a net loss after the first of multiple
13   disclosures are not precluded from serving as lead plaintiffs. *See, e.g.*, *Dang v. Amarin Corp.*,
14   2022 WL 15524944, at *11 (D.N.J. Oct. 27, 2022) (explaining that movant's "sale of its shares
15   before the Class Period ended does not render it incapable of adequately protecting the interests of
16   the Class or subject it to unique defenses because it sold its shares after two of the four alleged
17   disclosures during the Class Period" (footnote omitted)); *Juliar v. Sunopta Inc.*, 2009 WL
18   1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (explaining that "where a putative lead plaintiff sold all
19   its shares after a partial disclosure of misconduct by the defendant but before the final disclosure
20   that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to
21   show loss causation to the extent that it cannot serve as lead plaintiff").

22          New Mexico also argues that the Local 338 Funds may be atypical representatives because
23   they may be subject to the unique defense that they cannot prove loss causation because they lack
24   standing to assert losses caused by the second disclosure. *See* New Mexico Opp. at 7.  The Court
25   disagrees.  As the Local 338 Funds point out, courts have routinely rejected this standing
26   argument. *See* Local 338 Reply at 7–8.  This Court agrees with the reasoning that "the lead
27   plaintiffs need[] only to prove that they suffered *a* concrete injury because of defendants'
28   wrongdoing, not *every* injury alleged by the class." *In re Leapfrog Enterprises, Inc. Sec. Litig.*,

No. C-03-05421 RMW, 2005 WL 3801587, at *3 (N.D. Cal. Nov. 23, 2005) (emphasis in original).  Further, even if the Local 338 Funds might be subject to "the potential application of this defense down the road," the Court does not find that this makes the Local 338 Funds "atypical or inadequate for purposes of choosing a lead plaintiff."  *Lyft.*, 2020 WL 1043628, at *6.

New Mexico also argues in the alternative that the Court should consider appointing New Mexico and the Local 338 Funds as co-lead plaintiffs.  *See* New Mexico Opp. at 7.  New Mexico contends that "[c]ourts have recognized the value of appointing co-lead plaintiffs where the failure of one movant to retain stock throughout the class period gives rise to concerns regarding adequacy and typicality."  New Mexico Opp. at 8.  The Local 338 Funds oppose the appointment of co-lead plaintiffs.  *See* Local 338 Reply at 8–9.  The Court agrees with the Local 338 Funds that appointing co-lead plaintiffs in this case is unnecessary and potentially might be at odds with the PSLRA.  *See Cohen v. U.S. Dist. Ct. for N. Dist. of California*, 586 F.3d 703, 711 n.4 (9th Cir. 2009) (explaining that "[w]hile the PSLRA allows a group to serve as lead plaintiff, it also consistently refers to the lead plaintiff and most adequate plaintiff in the singular, suggesting that the district court should appoint only one lead plaintiff, whether an individual or a group").

The Court accordingly finds that the Local 338 Funds have met the typicality and adequacy requirements.

### III. APPOINTMENT OF LEAD COUNSEL

The Local 338 Funds have moved for approval of its selection of Bernstein Litowitz as lead counsel. Local 338 Mot. at 8; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). The Court defers to the Local 338 Funds' choice of lead counsel because the lead plaintiff "has the statutory prerogative to select counsel for the class, subject to approval by the Court." *Nicolow*, 2013 WL 792642, at * 6 (citing 15 U.S.C. § 78u–4(a)(3)(B)(v)); *Cavanaugh*, 306 F.3d at 739 n.11 (noting that "Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class"); *Cohen*, 586 F.3d 703 at 709 (clarifying that "[t]he clause subjecting the lead plaintiff's selection of counsel 'to the approval of the district court' in no way suggests that a district court shares in the lead plaintiff's authority to select lead counsel or that disapproval of a

1  lead plaintiff's choice divests the lead plaintiff of this authority. The ordinary reading of this clause
2  merely gives the district court the limited power to accept or reject the lead plaintiff's selection").
3  Bernstein Litowitz has extensive experience as counsel in securities class actions.  *See* Local
4  Funds Mot. at 8–10; Dkt. No. 26-3, Uslaner Decl., Ex. B (firm resume). The Court thus approves
5  the Local 338 Funds' selection of counsel.

## IV.  CONCLUSION

For the foregoing reasons, the Court, **GRANTS** the Local 338 Funds' motion and **DENIES** New Mexico's motion.  The Local 338 Funds are appointed as lead plaintiffs for the putative class.  Bernstein Litowitz is further approved as lead counsel for the putative class.

The Court further **SETS** a telephonic case management conference on June 6, 2023, at 2:00 p.m.  The Court **DIRECTS** the parties to meet and confer and submit a joint case management statement by May 30, 2023.  All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;
Passcode: 6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated: 5/22/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge