COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
BRETT H. DE JARNETTE (292919) (bdejarnette@cooley.com)
JANELLE M. FERNANDES (322217) (jfernandes@cooley.com)
AMIE L. SIMMONS (336356) (asimmons@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

Attorneys for Defendants
STITCH FIX, INC., KATRINA LAKE, and ELIZABETH
SPAULDING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 HEALTH & WELFARE FUND, RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 GENERAL FUND, and RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 BENEFITS TRUST FUND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STITCH FIX, INC., KATRINA LAKE, and ELIZABETH SPAULDING,<br><br>Defendants. | Case No. 5:22-cv-04893-PCP<br><br>**DEFENDANTS STITCH FIX, INC., KATRINA LAKE, AND ELIZABETH SPAULDING'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:      April 18, 2024<br>Time:      10:00 a.m.<br>Dept:      Courtroom 8, 4th Floor<br>Judge:     Hon. P. Casey Pitts |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  PLAINTIFFS FAIL TO ADEQUATELY ALLEGE FALSITY ....................................... 2

    A.  No Particularized Facts That Internal Testing Showed "Cannibalization"............. 2

    B.  The Alleged Omission of Internal Testing Did Not Render Any Challenged Statement False or Misleading ................................................................................ 6

III.  PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER .............. 11

IV.  PLAINTIFFS' 20(A) CLAIM FAILS ................................................................... 15

V.  CONCLUSION ................................................................................................. 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Accuray, Inc. Sec. Litig.*,
    757 F.Supp.2d 936 (N.D. Cal. 2010) ................................................................. 13

*In re Apple Inc. Sec. Litig.*,
    2020 WL 2857397 (N.D. Cal. June 2, 2020) ....................................................... 13

*Bajjuri v. Raytheon Techs. Corp.*,
    2023 WL 3650554 (D. Ariz. May 25, 2023) ....................................................... 15

*Bao v. Solarcity Corp.*,
    2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ........................................................... 15

*Berson v. Applied Signal Tech. Inc.*,
    527 F.3d 982 (9th Cir. 2008)............................................................................... 15

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2022)................................................................................. 9

*Browning v. Amyris, Inc.*,
    2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ..................................................... 3

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
    302 F.Supp.3d 1028 (N.D. Cal. 2018) .................................................................. 7

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*,
    649 F.Supp.3d 1256 (S.D. Fla. 2023) ................................................................. 11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F.Supp.2d 1045 (N.D. Cal. 2012) ........................................................... 13, 14

*Costabile v. Natus Med. Inc.*,
    2018 WL 7134363 (N.D. Cal. Dec. 18, 2018) ................................................... 12

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F.Supp.2d 1132 (C.D. Cal. 2008) ............................................................... 15

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005)............................................................................. 14

*In re Enovix Corp. Sec. Litig.*,
    2024 WL 349269 (N.D. Cal. Jan. 30, 2024) ....................................................... 12

*In re Extreme Networks, Inc. Sec. Litig.*,
    2018 WL 1411129 (N.D. Cal. Mar. 21, 2018)...................................................... 6

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

*Fadia v. FireEye, Inc.*,
    2016 WL 6679806 (N.D. Cal. Nov. 14, 2016)......................................................................... 2

*In re Fastly, Inc. Sec. Litig.*,
    2021 WL 5494249 (N.D. Cal. Nov. 28, 2021)......................................................................... 6

*In re Foundry Networks, Inc.*,
    2003 WL 23211577 (N.D. Cal. Feb. 14, 2003) ...................................................................... 5

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) ................................................................................................ 10

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002)......................................................................................... 4, 13

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
    39 F.4th 1092 (9th Cir. 2022) .............................................................................................. 10

*In re Maxwell Techs., Inc. Sec. Litig.*,
    18 F. Supp.3d 1023 (S.D. Cal. 2014) ................................................................................ 3, 6

*McGovney v. Aerohive Networks, Inc.*,
    2019 WL 8137143 (N.D. Cal. Aug. 7, 2019)........................................................................ 3

*Mulderrig v. Amyris, Inc.*,
    492 F.Supp.3d 999 (N.D. Cal. 2020) .............................................................................. 13, 14

*Mulligan v. Impax Laboratories, Inc.*,
    36 F.Supp.3d 942 (N.D. Cal. 2014) ...................................................................................... 4

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020)................................................................................................. 5

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014)............................................................................................. 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)............................................................................................................... 8

*In re Peregrine Sys., Inc. Sec. Litig.*,
    2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ................................................................... 11

*Petrie v. Elec. Game Card, Inc.*,
    2011 WL 13130015 (C.D. Cal. Oct. 19, 2011)................................................................... 11

*In Re Philip Morris Int'l Inc. Sec. Litig.*,
    2023 WL 8883457 (2d Cir. Dec. 26, 2023) ..................................................................... 9, 10

*In re Plantronics, Inc. Sec. Litig.*,
    2022 WL 3653333 (N.D. Cal. Aug. 17, 2022).................................................................... 14

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

*In re Plantronics, Inc. Securities Litigation*,
  2022 WL 17974627 (N.D. Cal. Nov. 7, 2022)..........................................................................4

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996)..................................................................................................14

*In re Qualcomm Inc. Sec. Litig.*,
  2019 WL 1239301 (S.D. Cal. Mar. 18, 2019) ........................................................................12

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)..................................................................................................13

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001)....................................................................................................15

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016)......................................................................................................7

*Shenwick v. Twitter*,
  282 F.Supp.3d 1115 (N.D. Cal. 2017) ....................................................................................11

*In re Siebel Systems, Inc. Sec. Litig.*,
  2005 WL 3555718 (N.D. Cal. Dec. 28, 2005) ..........................................................................8

*In re Silicon Graphics Inc. Sec. Lit.*,
  183 F.3d 970 (9th Cir. 1999)...............................................................................................5, 10

*Sylebra Cap. Partners Master Fund Ltd v. Everbridge, Inc.*,
  2023 WL 3549506 (C.D. Cal. May 9, 2023) ...........................................................................11

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F.Supp.3d 1029 (N.D. Cal 2016) ......................................................................................15

*In re Travelzoo Inc. Sec. Litig.*,
  2013 WL 1287342 (S.D.N.Y. Mar. 29, 2013) ...........................................................................7

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F.Supp.2d 964 (N.D. Cal. 2009) .................................................................................13, 14

*Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*,
  2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) ..........................................................................13

*Weiss v. Amkor Tech., Inc.*,
  527 F.Supp.2d 938 (D. Ariz. 2007)..........................................................................................14

*West v. Ehealth, Inc.*,
  2016 WL 948116 (N.D. Cal. Mar. 14, 2016)..............................................................................8

*Weston Fam. P'Ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) .................................................................................................8, 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F.Supp.2d 1148 (C.D. Cal. 2007) ................................................................................ 14

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) .............................................................................................. 7

*Wozniak v. Align Tech., Inc.*,
   850 F.Supp.2d 1029 (N.D. Cal. 2012) .................................................................................. 4

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ..................................................................................... 3, 4, 11

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

v

**REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP**

## I.   INTRODUCTION

The Opposition confirms Plaintiffs' failure to plead falsity and scienter – each an independent basis for dismissal of the entire Complaint. Plaintiffs' core theory is that Stitch Fix misled investors in 2020 and 2021 by expressing its belief that Direct Buy was additive, incremental, and complimentary to Fix while failing to disclose "negative" tests showing Direct Buy "was cannibalizing Fix." But this theory contains a number of fatal deficiencies.

First, Plaintiffs fail to plead particularized facts that internal testing showed Direct Buy "was cannibalizing Fix" during the putative class period. Instead, Plaintiffs rely entirely on allegations attributed to three former employees who lack personal knowledge and reliability. While the former employees refer generally to data and testing, there are no facts alleging any of them personally conducted the tests, interpreted the data, reviewed any test report, saw presentations received by senior management, or ever interacted with any defendant. Nor do Plaintiffs dispute their failure to explain the population tested, under what parameters, what product features and versions were tested, how "cannibalization" was measured, or any specifics about how quantitative or qualitative data substantiated the former employees' conclusory opinions. To mask these flaws, Plaintiffs stubbornly insist that testing occurred "all the time" and assume that each test "failed." But heavy rhetoric and ultimate conclusions are no substitute for particularized facts.

Second, even if Plaintiffs adequately alleged that internal testing showed cannibalization (they have not), they still fail to plead falsity. Plaintiffs claim Stitch Fix failed to disclose test results about Direct Buy as a "customer acquisition" tool. But they fail to allege particularized facts showing that any challenged statement addressed Direct Buy's performance as a customer acquisition tool. This is no surprise given that ***Direct Buy was not even available as a customer acquisition tool*** during the class period, as it was only available to existing Fix customers. Stitch Fix's statements could not have been rendered misleading by omitting such alleged testing.

Finally, Plaintiffs also fail to plead a strong inference of scienter. They allege no facts showing any Defendant believed Direct Buy was not additive to Fix or that Direct Buy would "cannibalize" Fix. Nor do they allege specific facts showing what each Defendant knew and when they knew it. Again, Plaintiffs rely on former employees who never interacted with the Defendants,

Cooley LLP
Attorneys at Law
Palo Alto

1

Reply ISO Defendants'
Motion to Dismiss
5:22-cv-04893-PCP

let alone discussed testing data with them.  Instead, Plaintiffs recycle arguments regarding access to general testing, the core operations doctrine, non-discretionary stock sales, one resignation, and executive compensation.  This is insufficient to plead a strong and compelling inference of scienter.

Plaintiffs have failed to plead a claim and this case should be dismissed with prejudice.

## II.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE FALSITY

Plaintiffs incorrectly claim that Stitch Fix misled investors by failing to disclose that "extensive internal test results revealed that Direct Buy was cannibalizing Fix." (Opp. 1.)[1]  The Opposition defines "cannibalization" as "negatively impact[ing] customer acquisition because the Company's onboarding process would sacrifice customers who came in for a Fix, were funneled to Direct Buy, and then ultimately did not make a purchase or they bought less." (*Id.* at 13.) Accordingly, to survive dismissal, Plaintiffs must allege particularized facts that (1) internal test results showed that Direct Buy negatively impacted customer acquisition, and (2) omitting the alleged test results rendered Stitch Fix's statements false or misleading.  Plaintiffs do neither.

### A.    No Particularized Facts That Internal Testing Showed "Cannibalization"

Plaintiffs' entire theory of fraud hinges on allegations attributed to three former employees who allegedly believed internal testing showed Direct Buy "was cannibalizing Fix." (Opp. 1.)  In doing so, the Opposition grossly overstates the Complaint, arguing that "[t]hese FEs each held senior roles at Stitch Fix and were personally immersed in the relevant testing and data" and that the FEs "described how these negative test results were shared with the Executive Defendants in weekly meetings and detailed reports." (*Id.*)  Plaintiffs are wrong.

First, the Complaint includes nearly no quotes from the former employees, and the scarce phrases they do quote are unrelated to test results.  (¶¶41-42, 64, 66.)  Instead, the Complaint sets forth Plaintiffs' lawyers' characterization of what the former employees allegedly said.  (*See, e.g.*, ¶¶39-48.)  *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *5 (N.D. Cal. Nov. 14, 2016)(allegations rejected where unclear what statements the witness made).  Indeed, "Plaintiff should avoid characterizing [CW] testimony in a manner that makes it difficult for this Court to differentiate

---

[1] Unless otherwise stated, terms remain as defined in the Motion ("Mot."), ECF 69; and the Opposition ("Opp."), ECF 72.  All emphasis is added unless otherwise indicated.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

between witness statements and Plaintiff's own conclusions." *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp.3d 1023, 1039 (S.D. Cal. 2014). Plaintiffs' subjective summaries are insufficient.

Second, Plaintiffs fail to establish each former employee's personal knowledge and reliability, as required by the Ninth Circuit. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). Plaintiffs claim the former employees held "senior roles," but allege no facts showing how customer acquisition testing fell within their responsibilities. FE 1 was a "Senior Manager, **Product Marketing**" who allegedly "worked on the Direct Buy launch." (¶¶39-41.) But Plaintiffs do not specify what part of the launch he worked on, or how FE 1's marketing duties related to alleged testing.[2] Nor do Plaintiffs describe the job responsibilities of FE 2, a "Director, **Men's Apparel Design**," or how they related to customer acquisition testing. (¶43) (only noting he "approach[ed] design from a data standpoint.") *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *18 (N.D. Cal. Mar. 24, 2014) (no personal knowledge absent details about job responsibilities). Finally, FE 3, a "Data Scientist," worked on "algorithms used to recommend clothes," not customer acquisition testing. (¶47.) These roles in marketing, men's design, and recommendation algorithms fail to establish that the former employees "were in a position to be personally knowledgeable of the information alleged"– testing data for an unlaunched product. *Zucco*, 552 F.3d at 996.

Further, Plaintiffs' argument that the former employees were "personally immersed in the relevant testing and data" is not supported by the Complaint. (Opp. 1.) There are no allegations that any former employee conducted a single test, analyzed any data to generate results, wrote reports, saw or had access to any final report or analysis, or personally reviewed any presentation about test results provided to management. *See Browning*, 2014 WL 1285175, at *18 (no personal knowledge of "estimates by [] scientists" where basis for knowledge was unclear). Nor do Plaintiffs contend any former employee ever interacted with Spaulding or Lake, let alone discussed testing, data, or results with them. *See McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *19 (N.D. Cal. Aug. 7, 2019) (allegations lacked reliability where CWs did not allegedly "report[] to or ha[ve] direct personal contact with Defendants"). Instead, the individuals were purportedly

---

[2] Plaintiffs do not dispute that FE 1 and FE 3 left the Company in April 2021 and June 2021, respectively, so they lack any knowledge of testing after those dates. (¶¶40, 47; Opp. at 17.)

Cooley LLP
Attorneys at Law
Palo Alto

3

Reply ISO Defendants'
Motion to Dismiss
5:22-cv-04893-PCP

"familiar[]" with unspecified "data set[s]," and "learned" and "heard" about alleged results and presentations to management. (¶¶40, 44-45, 47.) But vague "familiarity," "learn[ing]," and "hear[ing,]" is no substitute for ***personal knowledge***. *Zucco*, 552 F.3d at 997 (when "confidential witnesses base[ ] their knowledge on vague hearsay," it is "not enough to satisfy [the Ninth Circuit]'s reliability standard.")[3] Accordingly, Plaintiffs fail to establish the former employees' personal knowledge and reliability, which compels dismissal.[4]

Third, even if Plaintiffs established the former employees' personal knowledge and reliability (they have not), the allegations attributed to them still lack the requisite detail under the PSLRA to show that internal testing demonstrated that Direct Buy "cannibalized" Fix. In the Ninth Circuit, "negative characterizations of reports relied on by insiders, without specific reference to the contents of those reports are insufficient to meet the heightened pleading requirements of the PSLRA." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002). But this is precisely what Plaintiffs do. They allege no facts about who was tested, how many people were tested, from what geographies and demographics, how many types of tests were conducted, testing parameters like control groups or duration, how Stitch Fix measured the impact on customer acquisition and what those data inputs and outputs were, and whether results changed over time. Nor do they identify what types of quantitative and qualitative data were generated by each test, how raw data was analyzed or interpreted and by who, or how the final results from each test were determined. Without at least some of these foundational details, Plaintiffs cannot credibly argue, let alone plead with particularity, that internal testing showed that Direct Buy "was cannibalizing Fix."

Plaintiffs disagree, arguing that they "easily satisfy this Circuit's standards for particularity." (Opp. at 12.) They are wrong. Plaintiffs make sweeping conclusions that the tests "did not look good," were "negative," "failed," or "bad" (¶¶40, 43-44, 64, 67), without substantiating those conclusions with facts. *See Wozniak v. Align Tech., Inc.*, 850 F.Supp.2d 1029,

---

[3] Plaintiffs' reference to *In re Plantronics, Inc. Securities Litigation* supports Defendants' position. 2022 WL 17974627, at *5-7 (N.D. Cal. Nov. 7, 2022). Unlike here, the former employee obtained first-hand knowledge by attending, and personally synthesizing, 100 interviews about the matter.

[4] Plaintiffs' citation to *Mulligan v. Impax Laboratories, Inc.*, 36 F.Supp.3d 942, 963 (N.D. Cal. 2014) is inapposite. Unlike here, the former employees knew about manufacturing problems where they directly oversaw manufacturing compliance, observed issues, and attended FDA meetings.

Cooley LLP
Attorneys at Law
Palo Alto

4

Reply ISO Defendants'
Motion to Dismiss
5:22-cv-04893-PCP

1042 (N.D. Cal. 2012) (dismissing complaint, finding that "[a]lthough plaintiff refer[red] to the existence of sales and shipment data and ma[de] a general assertion about what the data showed, plaintiff allege[d] no hard numbers or other specific information.") Rather than credibly addressing Defendants' cases, Plaintiffs brush them off as involving "vague allegations, or inferential leaps." (Opp. 13.) But the Complaint contains those same deficiencies. For example, in *In re Foundry Networks, Inc.*, this District rejected allegations that early shipments cannibalized later ones where plaintiffs failed to allege "the number of such early deliveries, the number of customers affected, or the identity of any such customers affected." 2003 WL 23211577, at *5 (N.D. Cal. Feb. 14, 2003). Similarly, in *Nguyen v. Endologix, Inc.*, the Ninth Circuit found confidential witness allegations about device migration problems insufficient absent details about the number of patients, how much it migrated, and whether the problem was worse for certain patients. 962 F.3d 405, 416 (9th Cir. 2020). And in *In re Silicon Graphics Inc. Sec. Lit.*, the Ninth Circuit rejected allegations that "negative internal reports" showed decreasing sales and production trends. 183 F.3d 970, 984-85 (9th Cir. 1999). The Court explained that any description of data or internal reports would presumably include "countless specifics regarding ASIC chip shortages, volume shortages, negative financial projections, and so on." *Id.* at 985. As in *Foundry*, *Nguyen*, and *Silicon Graphics*, Plaintiffs fail to substantiate their conclusory opinions that "Direct Buy was cannibalizing Fix" with particularized facts.

Fourth, the Complaint only refers to two tests: a "New Fix Customer Test" and a "beta test." (¶¶41, 44, 46.) With respect to the New Fix Customer Test, Plaintiffs do not dispute their failure to allege "who was tested, what percentage of customers were 'sacrificed,' or any other quantitative data to substantiate [FE-1's] conclusory opinions." (Mot. 11.) *See Foundry,* 2003 WL 23211577, at *5*. Nor do Plaintiffs explain when the "beta test" occurred, which phase of Direct Buy or Freestyle it related to, which customers, the extent of the testing, or what it means for the test to "fail." *Nguyen*, 962 F.3d at 416. Tellingly, Plaintiffs do not provide a general number of tests Stitch Fix conducted, which is necessary to determine how these two tests fit into the universe of testing. Because Stitch Fix conducted tests "all the time," these two tests could have comprised well below 1 percent of tests conducted. (*See* Mot. 12.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

Finally, Plaintiffs' argument that the three former employees corroborate each other does not help them. (*See* Opp. 13.) As discussed above, the allegations attributed to these former employees are unreliable. Whether Plaintiffs subjectively summarized each account to "corroborate" each other is therefore irrelevant. *See Maxwell*, 18 F.Supp.3d at 1034 (allegations summarizing CW accounts "rais[ed] serious problems"). Crediting this "corroboration" would amount to assuming a story was true because three people circulated rumors. Plaintiffs' cases prove Defendants' point, because unlike here, they involved multiple direct interactions with the individual defendants and first-hand accounts of meetings they attended.[5]

Because Plaintiffs fail to plead particularized facts that internal testing showed that Direct Buy "was cannibalizing Fix" throughout the class period, they fail to state a securities fraud claim.

**B.     The Alleged Omission of Internal Testing Did Not Render Any Challenged Statement False or Misleading**

The Opposition confirms Plaintiffs' theory of falsity: Defendants allegedly misled investors by stating that Direct Buy was "incremental," "complementary," and "additive" to Fix from December 2020 through September 2021, while failing to disclose internal tests showing Direct Buy "cannibaliz[ed]" Fix, *i.e.,* "negatively impact[ed] customer acquisition." (Opp. 13; *see* ¶¶ 97-138.) But Plaintiffs fail adequately allege a false or misleading statement.

First, Plaintiffs ignore that Stitch Fix warned investors before the class period that there would be some cannibalization between Direct Buy and Fix. For example, in October 2019, Lake cautioned that "a small portion of [Direct Buy] will be cannibalistic," meaning some clients may buy items through Direct Buy that they otherwise would have through Fix. (Ex. 2 at 13-14.) She explained that despite some inevitable overlap, Direct Buy could increase overall client spending: "[i]t is broadly really incremental to our company and our service because it's really allowing people another touch point to engage with Stitch Fix." (*Id.*) Because Defendants warned investors of the very risk allegedly concealed – that Direct Buy may cannibalize Fix – Plaintiffs cannot plead a securities fraud claim. *In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *11 (N.D. Cal. Nov. 28, 2021) (dismissal where "[d]efendants disclosed the very risk plaintiff alleges they concealed").

---

[5] *See, e.g., In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *26-27 (N.D. Cal. Mar. 21, 2018) (two CWs provided direct quotes from meetings with defendant about the company's integration efforts).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

Second, Plaintiffs do not dispute that Direct Buy was additive, complimentary, and incremental to existing Fix customers, as revenue per customer rose to an all-time high.  Nor do they credibly argue how statements about existing Fix customers could be rendered misleading by alleged testing related to customer acquisition. *In re Travelzoo Inc. Sec. Litig.*, 2013 WL 1287342, at *6 (S.D.N.Y. Mar. 29, 2013) (no duty to disclose "a potentially adverse effect that the launch of one of its products could have on the overall growth and revenue of its other core business.")[6] Instead, Plaintiffs argue that "Defendants did not limit their statements to current clients alone." (Opp. at 14.)  But this defies logic, as ***Direct Buy was not available as a customer acquisition tool*** when the challenged statements were made, so the statements necessarily could not have been about Direct Buy's performance with customer acquisition.  (¶62; Ex. 21 at 8.)  Moreover, the Motion explains how each challenged statement explicitly discussed "active Fix clients," addressed features only available to existing Fix customers (*i.e.*, "trending for you" and "complete your look"), and what Stitch Fix was "seeing" customers buy at the time.  (Mot. 12-17.)  And "[w]here, as here, a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support this crucial premise." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021).  Plaintiffs fail to allege particularized facts – no document, email, witness, expert, report, or other source – showing that Defendants' statements referred to Direct Buy as a customer acquisition tool or promised that there would be no cannibalization when launched to prospective clients.

In response, Plaintiffs mischaracterize the challenged statements to remove references to "active clients" and other important context.  (*See, e.g.*, Opp. 14; Mot. 13; ¶113; *cf.* Ex. 13 at 2 (omitting "serve nearly one quarter of our Women's **active clients**"); ¶116; *cf.* Ex. 14 at 10 (omitting "we continue to be really excited about what we're seeing in terms of our **active client demand**").)  But "[t]he Court will not accept interpretations of the statements that are taken out of

---

[6] Unlike Plaintiffs' cases, this is not a case where Defendants claimed "***all*** the data was favorable" where there was "no question" they were aware of data cutting the other way. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 707-09 (9th Cir. 2016).  Nor is this a case where the plaintiff alleged that the defendants admitted to knowledge of concrete, pervasive data that a product line was not performing. (Opp. at 9.)  *See, e.g., City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 302 F.Supp.3d 1028, 1041 (N.D. Cal. 2018) ("rosy representations" about furniture line made while internally admitting to many customer complaints, cancelled orders, and low inventory).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

context and are not plausible on its face." *West v. Ehealth, Inc.*, 2016 WL 948116, at \*5 (N.D. Cal. Mar. 14, 2016); *see also Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) ("an investor reads each statement within such a document . . . in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information").

<u>Third</u>, Plaintiffs do not dispute that the omission of technological difficulties or kinks do not render the public statements false or misleading. *See In re Siebel Systems, Inc. Sec. Litig.*, 2005 WL 3555718, at \*4 (N.D. Cal. Dec. 28, 2005). Instead, they only argue that "extensive internal testing . . . is not a mere kink." (Opp. 16.) But again, they fail to allege particularized facts showing *any* data from each test, let alone how any alleged test result was anything more than a routine part of the product development process, where iteration and improvement is expected.

Plaintiffs fail to adequately allege a false or misleading statement for these reasons. However, there are additional reasons in each time period for why Plaintiffs fail to allege falsity.

***December 2020 Statements.*** Plaintiffs do not dispute that to plead a false or misleading statement, they must, as a threshold matter, plead with particularity that Stitch Fix had purportedly "negative" tests at the time the challenged statements were made. (*See* Opp. 10.) They do not come close with respect to the December 2020 statements. Instead, Plaintiffs argue that Stitch Fix said it conducted tests before December 2020, without providing specifics about what those tests showed – i.e., product features tested or any information to draw the conclusion that they were "negative." (Opp. 10; *see* ¶27; Ex. 2 at 6.) Nor do Plaintiffs dispute that the first test they attempt to identify by name – the purported "New Fix Customer Test" – was conducted in "February or March 2021" – *after* these challenged statements. *Weston Fam. P'Ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621-22 (9th Cir. 2022) (rejecting "implausible inference" that defendants knew of software bugs based on disclosure six days later).

***February-March 2021 Statements.*** Again, Plaintiffs fail to plead particularized facts showing that Stitch Fix had alleged "negative" test results at the time the February and March 2021 challenged statements were made. *Weston*, 29 F.4th at 621-22. Further, Plaintiffs are wrong that Defendants' February and March 2021 statements "denied cannibalization" or addressed Direct Buy as a customer acquisition tool – which had not been launched. (Opp. 14-15.) Rather,

Cooley LLP
Attorneys at Law
Palo Alto

8

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

Defendants told investors in March 2021 that they were delaying the launch of Direct Buy as a customer acquisition tool to "get the product right" and improve the user interface for onboarding prospective clients who had never received a Fix. (¶49; Ex. 14 at 7, 12.) To assert otherwise, Plaintiffs mischaracterize Defendants' exchanges with analysts. For example, Plaintiffs claim that Spaulding answered an analyst question about the future cannibalization of prospective customers. (Opp. 14-15.) But Plaintiffs selectively omit context showing Spaulding answered a ***different*** question about existing clients without discussing customer acquisition – a yet to be launched tool:

> Analyst: "I guess, first, if you kind of open up the platform to direct buy to new customers in the fourth quarter, can you just talk about how you expect that potentially cannibalizing the existing Fix business ***or at least what you're seeing today with the added offering to those that already use the Fix business***?"

> Spaulding: "Yes. Erinn, this is Elizabeth. I can touch on that. I mean, I think overall, we think there's just a bigger addressable market out there by having a wider platform for our customers, whether they want to shop, whether they want to be styled or participate in both of those models. ***And so both similars to incrementality that we've observed with active Fix clients as they participate in both and seeing that as actually a additive experience. I think we're thinking about it similarly as we bring new consumers onto the platform.***"

(Ex. 14 at 13-14; ¶¶51, 119). *See In Re Philip Morris Int'l Inc. Sec. Litig.*, 2023 WL 8883457, at *11 (2d Cir. Dec. 26, 2023)(statement not false in "fuller context" of exchange with analyst).

Absent particularized facts showing Stitch Fix spoke about Direct Buy's performance as a customer acquisition tool, Plaintiffs fail to adequately allege that Stitch Fix misled investors by failing to disclose customer acquisition-related test results. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2022) (no duty to disclose pending merger negotiations where press release did not "affirmatively intimate[d]" that "no merger was imminent").

***June 2021 Statements.*** Plaintiffs again mischaracterize the June 2021 statements as speaking about customer acquisition, ignoring that Direct Buy was only available to ***existing*** Fix clients. In doing so, Plaintiffs conflate Defendants' statements describing Direct Buy's performance with "newer cohorts of Fix clients" with its potential performance with prospective customers. (Opp. 16; *see, e.g.*, Mot. 16 (referencing "new Fix clients who have been with us for 30 days or less"). Nor do Plaintiffs plead particularized facts showing that general references to "testing" inherently address Direct Buy's functionality as a customer acquisition tool. (¶¶60, 131.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

As understood in their proper context, these statements are not misleading.

***September 2021 Statements.***  Plaintiffs improperly rely on a quote found in Defendants' exhibit to claim negative test results existed in September 2021.  (Opp. 17.)  Plaintiffs quote Spaulding's December 2021 statement referencing "testing in Q1," and then make the inferential leap that because Q1 was August-November 2021, some negative test results must have existed in September 2021.  (*Id.*; *see* Ex. 25 at 5) ("We are at the early stages of this learning journey, and as a result of our testing in Q1, we experienced lower fixed conversion rates than we expected.")  But nowhere do Plaintiffs allege when the Company had the test results.  This attempt to plead fraud by hindsight is precisely the type of unreasonable inference the PSLRA prohibits.  *Silicon Graphics*, 183 F.3d at 988.  Plaintiffs may not "assume," "implausibly infer," or "leap" to conclusions to plead falsity; rather, they must allege particularized facts establishing that the allegedly undisclosed facts existed when the challenged statements were made.  *Weston*, 29 F.4th at 621–22.  That the Company experienced "lower [] conversion rates than [] expected" in December 2021 is not sufficient to allege the Company had those results three months earlier.  (Opp. 17.)[7]

### 1.     Other Statements are Not Actionable

***Corporate Optimism.***  Plaintiffs fail to plead that optimistic statements about Direct Buy being "additive," "incremental," and "complementary" are actionable.  Plaintiffs point to no "objective standard to verify" whether Direct Buy was "incremental," "complementary," or "additive" to Fix.  *Philip Morris*, 89 F.4th at 418; *see Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1097 (9th Cir. 2022) (statement that China was a "great growth market" not misleading where "sales were still growing [], albeit at a diminished rate").  Nor could they, because these statements made no concrete representations about testing, and Plaintiffs have not alleged that the statements did not "fairly align[ ] with the information in [the Company's] possession at the time." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.,* 63 F.4th 747, 770-71 (9th Cir. 2023).

***Accurate Historical Information.***  Plaintiffs also fail to plead that Stitch Fix's active client metrics were actionable.  Critically, Plaintiffs do not dispute that these statements were accurate.

---

[7] Plaintiffs also cite Lake's February 2021 statement that the Company was "constantly running A/B test[s]," which does not establish what any test showed then or over 6 months later.  (Opp. 17.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

(Opp. 19.)  Instead, Plaintiffs claim they were misleading because Defendants supposedly cited the number of active clients to show Direct Buy was "additive," "complementary," and "incremental." (*Id.*; ¶35.)  But none of the statements express or imply this.  Nor do Plaintiffs explain how reporting active clients – a regularly reported metric – improperly touted Direct Buy.

Plaintiffs also fail to plead that the active client metrics were misleading because they did not distinguish which clients were Fix as opposed to Direct Buy.  (Opp. 9, 19; ¶35.)  This is unlike the cases Plaintiffs rely on, such as *Shenwick v. Twitter*, where the plaintiff alleged Twitter omitted that the company's primary user engagement metric had declined 44-48%, while allegedly touting another user engagement metric.  282 F.Supp.3d 1115, 1136 (N.D. Cal. 2017).  No such hard numbers are alleged here.  This case much more closely resembles *Everbridge*, where the court dismissed allegations that the company misled investors by not disclosing the "split between organic and inorganic or acquired revenue."  *See Sylebra Cap. Partners Master Fund Ltd v. Everbridge, Inc.*, 2023 WL 3549506, at *9 (C.D. Cal. May 9, 2023) (cleaned up).

## III.   PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

The Complaint fails to plead that Defendants acted either intentionally or with deliberate recklessness, constituting "an extreme departure from the standards of ordinary care" that "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *Zucco*, 552 F.3d at 991.  Plaintiffs offer four insufficient theories: (1) access to alleged "negative" tests, (2) former employees, (3) stock sales, (4) Spaulding's resignation, and (5) core operations.  Plaintiffs do not plead any with particularity.

First, Plaintiffs cannot plead scienter by simply alleging Defendants had access to or knowledge of purportedly adverse information.  Instead, they must plead with particularity that Defendants believed or were deliberately reckless about misleading investors. *Petrie v. Elec. Game Card, Inc.*, 2011 WL 13130015, at *7 (C.D. Cal. Oct. 19, 2011); *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *41 (S.D. Cal. Mar. 30, 2005) ("[A]llegations that a Defendant was generally aware of facts . . . by itself, is not sufficient to show scienter"); *City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*, 649 F.Supp.3d 1256, 1272 (S.D. Fla. 2023) ("[m]ere allegations that Defendants held senior management positions, had access to inside information,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

and therefore must have known of the falsity of certain statements is insufficient to plead scienter."). Plaintiffs do not contest their failure to allege that any Defendant believed (1) internal testing showed cannibalization, (2) Direct Buy was not additive to Fix, (3) Direct Buy would not increase customer acquisition, or (4) they were misleading investors. This is fatal.

Instead, Plaintiffs argue that "Defendants saw, reviewed, and discussed internal testing results" and received "daily, weekly, or constant key performance indicators and test results" that were "discussed in business review meetings." (Opp. 20.) But Plaintiffs' only support is former employees who never interacted with the individual defendants in any capacity. (*See* Mot. 21.) They do not dispute this. And they fail to allege that any former employee reviewed presentations or internal testing results purportedly sent to the Defendants. Nor did any former employee attend any meetings with the Defendants where the data was discussed. Much less do Plaintiffs allege facts showing Defendants' interpretations, conclusions, or beliefs as to alleged testing results. *Costabile v. Natus Med. Inc.*, 2018 WL 7134363, at *5 n.5 (N.D. Cal. Dec. 18, 2018) (finding problematic that there were "no allegations that three of the four confidential witnesses had any direct contact with Defendants"). This District recently rejected former employee allegations for similar reasons in *In re Enovix Corp. Sec. Litig.*, 2024 WL 349269, at *15 (N.D. Cal. Jan. 30, 2024). There, plaintiffs identified seven confidential witnesses – one of whom allegedly attended meetings with the individual defendants. *Id*. The court found the allegations insufficient, noting that "none of the Former Employees claim to have interacted with the individual defendants." *Id*. The Court elaborated that, "the complaint is so devoid of allegations regarding what defendants knew and when that there can be little inference, let alone a strong one, that defendants acted with the required state of mind." *Id*. The same is true here.

Next Plaintiffs claim Defendants "admitted to knowledge of the test results," but they miss the point. (Opp. 20.) None of Stitch Fix's statements "admit" that testing results showed Direct Buy negatively impacting customer acquisition. Plaintiffs fail to allege particularized facts showing that the tests Defendants generally referenced are the same as those alleged in the Complaint. Plaintiffs' cases are inapposite. In *In re Qualcomm Inc. Sec. Litig.*, 2019 WL 1239301 (S.D. Cal. Mar. 18, 2019), the defendants had "intense" involvement with violative practices,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

whereas here, Plaintiffs merely point to Defendants' generalized statements about the existence of testing. (*See e.g.*, ¶164 ("we're running A/B tests all the time").) And in *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012), the defendant admitted that the company lost the "single largest source of cash income" who "stopped sending payments altogether." Plaintiffs' allegations about access to data fail.

*Former Employees.* The three former employees lack personal knowledge and reliability, as discussed above. But the allegations attributed to them are even more deficient with respect to scienter, which requires a strong inference of an intent to defraud. Here, the former employee allegations amount to their opinions about an unspecified universe of testing which they are not alleged to have reviewed. Nor did they interact with Defendants regarding those results. Indeed, "it is difficult to surmise how the opinions and observations of the CWs could support a reasonable inference about what these individual Defendants knew or did not know at the time each of the challenged statements was made."[8] *In re Accuray, Inc. Sec. Litig.*, 757 F.Supp.2d 936, 949 (N.D. Cal. 2010). Nor do Plaintiffs address *Lipton*, where the Ninth Circuit rejected confidential witness allegations that did not detail the "content of [ ] data." 284 F.3d at 1036. As in *Lipton*, the former employees opine that tests showed cannibalization without specifics about the contents of reports.

*Stock Sales.* Plaintiffs do not dispute that all of Lake's stock sales were made pursuant to a non-discretionary 10b5-1 plan.[9] (Mot. at 24.) Nor do they dispute that Lake sold more stock before the class period, further rebutting any inference of scienter. (*Id.*) Indeed, Lake's sales during the alleged class period were consistent with those prior to the alleged class period. (*See* Ex. 31.) And while Plaintiffs cite *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F.Supp.2d 1045, 1069 (N.D. Cal. 2012) to claim that only minuscule trades during the class period are exempt from a finding of motive, *Juniper* actually states that "an allegation that only one Defendant displayed

---

[8] Plaintiffs' conclusory attempt to distinguish *Accurary* and *Intuitive Surgical* does not change the fact that the FEs never interacted with the Defendants or saw the data. (Opp. at 24.) In contrast, in Plaintiffs' cases, the former employees had personal knowledge of the defendants' data access. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (FEs personally managed the delivery of reports to executive positions); *Mulderrig v. Amyris, Inc.*, 492 F.Supp.3d 999, 1026-27 (N.D. Cal. 2020) (defendants were "actively engaged in the process of" analyzing the data).
[9] Plaintiffs' cases are inapposite. *See In re UTStarcom, Inc. Sec. Litig.*, 617 F.Supp.3d 964, 976 n.16 (N.D. Cal. 2009) (defendants sold over 98% of stock); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *22 n.13 (N.D. Cal. June 2, 2020) (no scienter).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

unusual stock trades during the Class Period is insufficient to support a strong inference of scienter absent some corroborating evidence."[10]  *Id.*

***Spaulding's Compensation.***   Plaintiffs ignore that Spaulding's alleged motive, *i.e.*, a performance-based bonus based partially on Freestyle's performance, ***was not in effect until after all of the challenged statements were made***.  (Ex. 23 at 31.)  In other words, Spaulding could not have been motivated by her compensation package because it did not exist at the time.  *Weiss v. Amkor Tech., Inc.*, 527 F.Supp.2d 938, 951 (D. Ariz. 2007) (no scienter where "missing . . . are any allegations that any [] defendant realized any direct economic gain").  Plaintiffs cannot explain away this temporal disconnect.  *In re Wet Seal, Inc. Sec. Litig.,* 518 F.Supp.2d 1148, 1165 (C.D. Cal. 2007) (no scienter because plaintiffs "have not alleged facts that would square their motive theory with economic reality").  Regardless, courts in the Ninth Circuit have repeatedly rejected motives based on a desire to increase executive compensation.  (Mot. at 24.)  Plaintiffs' theory that Spaulding was motivated to launch a product she knew was not ready also defies logic, as doing so would hurt the very metrics that her compensation, and success, depended on.  (*Id.*)

***Spaulding's Departure.***   Plaintiffs' argument that Spaulding's departure six months after the class period creates an inference of scienter is wrong.[11]  (Opp. at 23.)  They ignore Stitch Fix's disclosure that Spaulding's resignation was "not the result of any disagreement with the Company on any matter relating to the Company's operations, policies or practices."  (Ex. 29.)  In fact, Spaulding remained an advisor at the Company and received a significant severance package that included twelve months of salary and fifteen months of healthcare benefits.  (*Id.*)

***Core Operations.***   Plaintiffs claim it would be "absurd to suggest that Defendants were unaware of the performance of the Company's own two business verticals" (Opp. at 24), but general awareness of a Company's business or flagship product is insufficient to allege scienter under the

---

[10] The cases on which Plaintiffs rely alleged suspicious trading.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1022, 1024 (9th Cir. 2005) (all but one executive sold 100% of their stock during class period); *Mulderrig*, 492 F.Supp.3d at 1029-30 (defendant made two trades during the class period, but only one other sale in the previous five years); *Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996) (defendant's sale made immediately after allegedly fraudulent conference call).

[11] Unlike here, Plaintiffs' cases involved simultaneous announcements of the alleged fraud and resignations. *See, e.g., UTStarcom*, 617 F.Supp.2d at 975-76; *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *19 (N.D. Cal. Aug. 17, 2022).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP

core operations doctrine. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (scienter not imputed just because the alleged misrepresentation concerns "flagship product"); *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *13 (D. Ariz. May 25, 2023) ("that the U.S. government is Raytheon's biggest customer does not imply the Officers monitor every U.S. government contract."). Nor do Plaintiffs explain how the core operations inference helps them where they failed to allege with particularity that internal testing showed cannibalization.[12] (¶ 41.)

*Holistic Analysis.* Following the 2019 launch of Direct Buy to existing Fix clients, Stitch Fix observed that Fix clients bought more when given the opportunity to buy products through Direct Buy, consistent with Stitch Fix's belief that Direct Buy was "additive," "complimentary," and "incremental" to Fix. While the Company was optimistic about Direct Buy's future impact on client acquisition, it cautioned that it needed to do "some more continued testing" and that "for sure, not everything will work." (Ex. 10 at 18; Ex. 14 at 17.) To that end, Stitch Fix delayed the launch to prospective clients in March 2021 to "get it right." (¶ 49; Ex. 14 at 10.) Plaintiffs fail to explain why the Company would delay the launch to prospective clients if ultimately, its plan was to rush out a product it knew would fail. Unfortunately, Direct Buy did not perform as hoped, but "[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

## IV.    PLAINTIFFS' 20(A) CLAIM FAILS

Plaintiffs' 20(a) claim fails, not only because they have failed to allege a primary violation, but also because Plaintiffs' conclusion that the individuals are "control persons" is insufficient to state a Section 20(a) claim. *Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016).

## V.    CONCLUSION

For the reasons stated above, the Complaint should be dismissed with prejudice.

---

[12] Plaintiffs' cases illustrate this, as they involve detailed factual allegations of involvement for product lines comprising the vast majority of the business, which this Complaint lacks. *See Berson v. Applied Signal Tech. Inc.*, 527 F.3d 982, 987-88 (9th Cir. 2008) (stop work orders concerned 80% of the company's revenue); *Thomas v. Magnachip Semiconductor Corp.*, 167 F.Supp.3d 1029, 1045 (N.D. Cal 2016) (defendants were on committees tasked with vetting the very numbers alleged to be false); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1190 (C.D. Cal. 2008) (the accounting figures 90% of revenue).

Cooley LLP
Attorneys at Law
Palo Alto

15

Reply ISO Defendants'
Motion to Dismiss
5:22-cv-04893-PCP

Dated: February 6, 2024

COOLEY LLP

By: */s/ Patrick E. Gibbs*
    Patrick E. Gibbs

Attorneys for Defendants
STITCH FIX, INC., KATRINA LAKE, and
ELIZABETH SPAULDING

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16

REPLY ISO DEFENDANTS'
MOTION TO DISMISS
5:22-CV-04893-PCP