COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
BRETT H. DE JARNETTE (292919) (bdejarnette@cooley.com)
JANELLE M. FERNANDES (322217) (jfernandes@cooley.com)
AMIE L. SIMMONS (336356) (asimmons@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000
Facsimile:      (650) 849-7400

Attorneys for Defendants
STITCH FIX, INC., KATRINA LAKE, and
ELIZABETH SPAULDING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STITCH FIX, INC., et al., <br><br> Defendants. | Case No. 5:22-cv-04893-PCP <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> Date:        March 20, 2025 <br> Time:       10:00 a.m. <br> Dept:       Courtroom 8, 4th Floor <br> Judge:      Hon. P. Casey Pitts <br><br> Trial Date: Not Yet Set <br> Date Action Filed: August 26, 2022 |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     PLAINTIFFS FAIL TO PLEAD A FALSE OR MISLEADING STATEMENT ............. 2

        A.      Plaintiffs' Trending For You Allegations Fail ....................................... 2

        B.      Statements About Existing Clients Are Not False or Misleading ........... 4

        C.      The Newly Challenged Forward-Looking Statements are Not Actionable ........... 6

        D.      Corporate Optimism Statements are Not Actionable ............................... 8

        E.      Plaintiffs' Responses to Defendants' Additional Falsity Arguments Fail ............. 9

III.    THE SAC DOES NOT PLEAD SCIENTER ..................................................... 12

        A.      Alleging Knowledge of Negative Testing is Insufficient to Plead Scienter ......... 12

        B.      Plaintiffs' Other Scienter Theories Cannot Support Scienter. .............................. 14

IV.     CONCLUSION .............................................................................................. 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Comput. Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989) ............................................................................... 14

*Aramic LLC v. Revance Therapeutics, Inc.*,
2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) ........................................................... 13

*In re BioMarin Pharm. Inc. Sec. Litig.*,
2022 WL 164299 (N.D. Cal. Jan. 6, 2022) .............................................................. 14

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) ................................................................... 6, 8

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .................................................................................. 11

*City of Miami Gen. Empls' & Sanitation Empls' Ret. Tr. v. RH, Inc.*,
302 F. Supp. 3d 1028 (N.D. Cal. 2018) .................................................................. 11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F.Supp.2d 1045 (N.D. Cal. 2012) .................................................................... 14

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................................... 8

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
81 F.4th 918. (9th Cir. 2023) .................................................................................. 11

*In re Enovix Corp. Sec. Litig.*,
2024 WL 349269 (N.D. Cal. Jan. 30, 2024) ........................................................... 10

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ............................................................................. 11, 13

*In re Fibrogen, Inc.*,
2022 WL 2793032 (N.D. Cal. July 15, 2022) ......................................................... 14

*Hadian v. Fate Therapeutics, Inc.*,
2024 WL 4246083 (S.D. Cal. Sept. 19, 2024) ........................................................ 15

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019) ............................................................. 12

*Homyk v. ChemoCentryx, Inc.*,
2023 WL 3579440 (N.D. Cal. Feb. 23, 2023) ........................................................ 11

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) ....................................................................... 7

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

*Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
22 F.4th 1 (1st Cir. 2021) .................................................................................................... 11

*Khoja v. Orexigen Theraps, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............................................................................................... 10

*Lamontagne v. Tesla, Inc.*
2024 WL 4353010 (N.D. Cal. Sept. 30, 2024) ...................................................................... 7

*Macomb Cnty. Empls' Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) ............................................................................................... 8

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)............................................................................................. 13

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020)............................................................................................... 15

*Pirani v. Netflix, Inc.*,
2024 WL 4894291 (N.D. Cal. Nov. 26, 2024)................................................................. 6, 11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)............................................................................................... 9

*In re Qualcomm Inc. Sec. Litig.*,
2019 WL 1239301 (S.D. Cal. Mar. 18, 2019) ..................................................................... 14

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022) ................................................................................... 6

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)......................................................................................... 12, 13

*Rodriguez v. Gigamon Inc.*,
325 F. Supp. 3d 1041 (N.D. Cal. 2018) ................................................................................. 7

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)............................................................................................... 15

*In re S1 Corp. Sec. Litig.*,
173 F. Supp. 2d 1334 (N.D. Ga. 2001) .................................................................................. 8

*Schueneman v. Arena Pharm., Inc.*,
840 F.3d 698 (9th Cir. 2016)............................................................................................... 11

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
495 F. Supp. 3d 622 (N.D. Ill. 2020) ..................................................................................... 9

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (2022)................................................................................................... 8, 9, 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii

**DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
5:22-CV-04893-PCP**

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021)............................................................................................ 7, 10

*Wozniak v. Align Tech., Inc.*,
  850 F. Supp. 2d 1029 (N.D. Cal. 2012) .................................................................................. 12

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)................................................................................................... 12

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv

**DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
5:22-CV-04893-PCP**

## I.   INTRODUCTION

The Opposition confirms that the SAC fails to meet the stringent pleading standards of the PSLRA. As before, Plaintiffs' theory is that Stitch Fix misled investors in 2020 and 2021 by failing to disclose test results for a *yet-to-be launched* "*onboarding path*" for new visitors to stitchfix.com, which Plaintiffs refer to as "Direct Buy." (*See* Opp. 4-5 (testing concerned "onboarding path"; ¶146 (testing "onboarding process").[1]) But the Court dismissed Plaintiffs' prior pleading because the failure to disclose those internal test results did not make statements about Direct Buy's current performance with existing clients misleading. (Order at 5-7.) In a superficial attempt to address this deficiency, Plaintiffs now challenge statements about "new and prospective" clients in addition to previously challenged statements about "existing" clients. (Opp. 1.) But this effort fails because none of the statements can be fairly read as describing the performance of the Direct Buy onboarding process because, as Plaintiffs concede, this onboarding process had not been launched when the statements were made. (¶¶101, 123.)  To the limited extent that any of these referred to the Direct Buy onboarding process for new visitors, they were necessarily forward-looking and are protected under the PSLRA's safe harbor.

In an effort to undo the Court's prior ruling, Plaintiffs argue that a limited functionality called "Trending for You" was available to "new" clients in June 2020. (Opp. 1, 3, 11; ¶36.) But despite Plaintiffs' effort to equate "Trending for You" with "Direct Buy," Plaintiffs have no choice but to admit that in June of 2020, Trending for You was only made available to clients who had previously registered on Stitchfix.com but had not yet purchased a Fix. (¶36.) As such, it did not involve the Direct Buy onboarding process that Plaintiffs claim was the subject of internal tests, and that eventually led to "cannibalization" of the Company's Fix business after it was launched in August of 2021. In short, Trending for You has no bearing on whether Stitch Fix misled investors about the unlaunched onboarding process for new visitors.

Plaintiffs also fail to plead a strong and compelling inference of scienter. Rather than pleading facts showing each Defendants' state of mind, the Opposition doubles down on allegations

---

[1] Unless otherwise stated, terms remain as defined in the Motion ("Mot."), ECF 91; and the Opposition ("Opp."), ECF 94. All emphasis is added unless otherwise indicated.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
:22-CV-04893-PCP

about alleged testing from former employees who had no direct contact with any individual Defendant. (*See* Opp. 1-2.) And Plaintiffs ignore the Court's holding that alleged knowledge of test results "does not mean that defendants made unreasonable omissions in their public statements to shareholders." (Order at 9-10.) Nor do Plaintiffs acknowledge that the Court already rejected their other scienter theories. The most compelling inference is that Defendants genuinely believed that Stitch Fix's onboarding process for Direct Buy would benefit the business. This is not fraud.

## II.    PLAINTIFFS FAIL TO PLEAD A FALSE OR MISLEADING STATEMENT

### A.    Plaintiffs' Trending For You Allegations Fail

In its prior Order, this Court correctly concluded that Plaintiffs failed to allege falsity because the challenged statements concerned the effect of Direct Buy on existing clients, whereas the internal testing cited in the complaint (the allegedly undisclosed "truth") showed that the use of Direct Buy as a customer acquisition tool for prospective clients "cannibalized" the existing Fix business. (Order at 5.) In so doing, the Court observed that Direct Buy was not available to "prospective" customers until August of 2021, after most of the challenged statements were made. (*Id.*) As such, statements about the impact of Direct Buy before that date necessarily related to the effect of Direct Buy on existing customers. (*Id.*)

Plaintiffs purport to have solved this problem by alleging that "Direct Buy was launched to select new and prospective clients in June 2020." (Opp. 1, 11.) This argument fails. First, the SAC does not allege (nor could it) that "Direct Buy" as a whole was launched to "new and prospective clients in June 2020."  In fact, the SAC concedes that the Direct Buy feature at issue in this case— the use of a Direct Buy onboarding path for customers who had not yet signed up with Stitch Fix— did not launch until August 2021. (*E.g.*, ¶¶1, 6, 9, 47-50, 87, 101, 123.)

Plaintiffs' argument, instead, is just a semantic game. Plaintiffs allege that a different feature of the broader "Direct Buy" offering called "Trending for You" was made available to customers who had already registered a profile with Stitch Fix but had not ordered a Fix. (¶36.) By definition, this feature involves people who had already been onboarded. (*Id.*) Plaintiffs do not claim that any of the allegedly undisclosed test results about the future onboarding page for new visitors had anything to do with Trending for You. Even Plaintiffs did not have the impression that Trending

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
5:22-CV-04893-PCP

For You launched to new customers, as the AC alleged it was only "launched…to existing customers." (*See* Dkt. 52, ¶¶26, 32.) Nor do Plaintiffs claim that Trending for You played any role in the "cannibalization" of the Fix business that they claim revealed the "truth." To be sure, Plaintiffs define "cannibalization" as potential customers who "did not convert to Stitch Fix because they were onboarded into Direct Buy instead of Fix, or did convert through Direct Buy, but bought substantially less than they would have if they had been onboarded through Fix." (Opp. 2.) But again, unlike new visitors who had never been onboarded to stitchfix.com, Trending for You clients were previously onboarded and "registered" for Fix. (¶36.) As a result, there was no risk of "cannibalization" because these clients had already onboarded via the existing Fix landing page and independently chose not to purchase a Fix.

Plaintiffs argue that Trending for You was "included" in the "New Fix Customer Test," but fail to explain what that means. (Opp. 4.) They stop short of claiming that Trending for You was the same as the New Fix Customer Test and, tellingly, plead no facts about how Trending for You performed. At most, Plaintiffs plead that Trending for You was being evaluated concurrently with yet-to-be launched onboarding path, which does not support their claims. Simply put, Plaintiffs' allegations do not undermine the Court's conclusion that the previously challenged statements all spoke to the impact of Direct Buy on existing customers.

Plaintiffs also argue that in June 2020, Stitch Fix launched a collaboration with an influencer to offer "a curated assortment through Direct Buy from which both new and existing women's clients can shop," which would "serve as a testbed for us to expand the types of looks we show clients and has the potential to create marketing hooks to acquire new clients as we team up with brand partners." (¶¶35, 37; Ex. 7 at 7-8.)[2] In other words, Stitch Fix used an influencer to promote its products. That is different from changing the landing page on the Stitch Fix website to attract customers. Plaintiffs also do not allege that the internal testing related to the influencer

---

[2] Plaintiffs do not oppose Defendants' Request for Judicial Notice. Instead, they claim that Defendants' reliance on 12 documents is improper, ignoring that the Court already judicially noticed 9 of these documents (Exs. 1, 3, 4, 10, 12, 16, 18, 20, 21). (Order at 5 n.2.) The remaining 3 exhibits are SEC filings that are proper subjects of judicial notice (Exs. 8, 29, and 30). Plaintiffs concede that Exs. 29 and 30 form the basis of their scienter allegations and are incorporated by reference, and do not dispute the other 18 exhibits are incorporated by reference. (Opp. 24 n.2.).

Cooley LLP
Attorneys at Law
Palo Alto

3

Defendants' Reply ISO Motion to
Dismiss Second Amended Complaint
5:22-cv-04893-PCP

collaboration, or that the collaboration contributed to "cannibalization."

Ultimately, the Court's prior analysis holds true: the statements made before August 2021 related to Direct Buy's impact on existing customers.

### B.   Statements About Existing Clients Are Not False or Misleading

Plaintiffs argue that the six statements the Court already dismissed are actionable because they were made after Trending for You launched, so a "reasonable investor would have understood" them as relating to "new or prospective clients." (Opp. 11-12.) In doing so, Plaintiffs selectively quote and underline portions of the challenged statements they claim relate to "new and prospective clients." But this does not change the Court's Order or the statements. First, as discussed above, the Direct Buy landing page was not launched as an acquisition tool until August 2021, so the Court's prior analysis that the statements related to existing clients does not change. (Order at 5.) Second, the Court already reviewed these statements and noted that many referenced existing clients and overall, they discussed Direct Buy's effect on increasing revenue from existing clients. (*Id.* at 7.) As the Court concluded, these statements plainly do not relate to using Direct Buy as a customer acquisition tool.

Plaintiffs claim, for example, that an analyst exchange related to "new customers," but when "read fairly, in context," it plainly did not. This reference to "new customers" was part of a question about spending trends regarding more recent customers on the platform:

> "how would you characterize **what's going on in terms of spend per customer** and particularly to the extent that you're seeing segmentations within your customer base? Is there anything notable that you would say is happening…whether it's time your customers have been on the platform, new customers versus old customers…" (¶157; Ex. 11 at 14.)

Similarly, statements referring to the "incrementality" of Direct Buy could only be about existing customers because the onboarding functionality for prospective customers was not yet available. One of these statements even clarifies that Direct Buy was not available to the "newest Fix clients":

> March 8, 2021: "We've also found that clients **we've acquired through paid marketing channels in the past few quarters** are actively engaging with direct buy and are delivering higher early lifetime values than previous cohorts. Specifically, we've seen that these clients are generating more cumulative contribution profit in their first 3 and 6 months than clients 1 year ago who were largely Fixed clients only. This incrementality gives us more optimism to believe that as our direct buy

offering expands, client lifetime values will continue to grow.” (¶162.)[3]

June 7, 2021: “The success and incrementality ***that direct buy has demonstrated to date*** gives us high conviction that our personalized shopping experience will significantly broaden the appeal and reach of Stitch Fix. …***By the end of fiscal Q4, we plan to open up direct buy to newest Stitch Fix clients***…” (¶167; Ex. 17 at 7.)

*See also* ¶159 (discussed below). And to the extent portions of these statements reference newer clients, they are either about more recent cohorts, or optimistic statements about expanding the offering in the future (which, as discussed below, are forward-looking and inactionable).

Plaintiffs make the same argument for the three new challenged statements regarding existing clients, which also fails. (Opp. 12.) Plaintiffs do not dispute that the June 2020 and September 2021 statements do not reference prospective customers. (*Id.* at 12; Mot. 11-12.) Instead, Plaintiffs claim the June 2020 statement related to prospective clients because it used the phrases “full addressable market” and “blurring” the business lines “over time.” (Opp. 12.)  But this statement only made claims about current client spending and the different shopping experiences the products could offer:

And so, what gets us so excited about ***what we’re seeing with Direct Buy is we’re clearly meeting a very*** complementary ***set of needs*** relative to what our Fixes offer us to address. …while this distinction of share of wallet gain and sort of the mix of those two is something we talk about for the next few quarters. I would imagine that over time there’s just going to be a total blurring between services that are more engaged with filing support versus areas where consumers can shop and engage any time that they want to. I think what we’re most excited about is to just see that these two offerings are so highly complementary versus any sort of cannibalization between the two. (¶151)

Plaintiffs also argue that the September 2021 backward-looking statement about “revenue per active client” in Q4 2021 (ending July 31, 2021) related to new clients because “revenue per active client” was defined to “include clients onboarded through Direct Buy.” (*See* Opp. 13; Mot. 12; ¶173; *see also* ¶170.) But the definition says ***no such*** thing. Active clients merely included those who made a Direct Buy purchase (which is distinct from being onboarded through Direct Buy). (Ex. 6 at 6) (defining “active clients” as clients who “checked out a fix or w[ere] shipped an item using our direct-buy functionality in the preceding 52 weeks.”).) Moreover, Plaintiffs allege that

---

[3] The underlining reflects the underlining in the SAC. The bold and italicization is added by Defendants for emphasis.

Cooley LLP
Attorneys at Law
Palo Alto

5

Defendants’ Reply ISO Motion to
Dismiss Second Amended Complaint
5:22-cv-04893-PCP

the testing of the onboarding process had no impact on revenue, further undermining that these statements about "revenue per active client" were rendered misleading by the testing.[4] (*See* ¶57 (noting the testing involved "a small enough amount of traffic to avoid any effect on revenue").)

Because these challenged statements related to existing customers, as the Court held, the non-disclosure of Direct Buy's onboarding testing does not render them misleading. (Order at 5.) *See also Pirani v. Netflix, Inc.*, 2024 WL 4894291, at *7 (N.D. Cal. Nov. 26, 2024) (statements regarding market penetration not false or misleading because they "clearly referred to paid subscribers," and "reasonable investors… would not expect that they "would have accounted for anything but paid subscribers.""); *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) (company's statements that its "core business is enjoying terrific momentum" not false or misleading because "core business" did not refer to newly launched product).

### C.    The Newly Challenged Forward-Looking Statements are Not Actionable

Plaintiffs argue that the newly challenged statements about Direct Buy as a customer acquisition tool are not forward-looking because they contain a "concrete assertion concerning a specific current or past fact." (Opp. 13-14). Not so. The Opposition ignores the forward-looking language in these statements and cherry picks quotes to claim that Defendants' "present tense statements" containing "current beliefs" based on "present facts," are "concrete assertions." (Opp. at 14.) But these statements all talk about goals, future "plans," and what the Company believed would happen "over time." (*See, e.g.*, ¶145 ("*we plan* to make it accessible to new clients as an acquisition vehicle in the coming months."); ¶149 ("*we believe it can* fuel conversion…"); ¶153 (*going to be able to*…get people who might have been on the fence"); *see also* ¶¶147, 155, 162, 164, 170.) These are not concrete statements about Direct Buy's performance as a customer acquisition tool, but forward-looking statements about Defendants' beliefs that Direct Buy *could* be a successful customer acquisition tool *in the future*.[5]

---

[4] Plaintiffs also cherry pick portions of the March 2021 statement referencing the Company's "goal" of introducing Direct Buy to new clients, which are forward-looking and protected by the safe harbor. *See infra* II.C.

[5] This is unlike *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 736 (N.D. Cal. 2022), where the company "describe[d] the current state of QuantumScape's technology." (Opp. 13-14.)

Cooley LLP
Attorneys at Law
Palo Alto

6

**Defendants' Reply ISO Motion to
Dismiss Second Amended Complaint
5:22-cv-04893-PCP**

Plaintiffs argue that statements of present belief about future events are not forward-looking (Opp. at 15), but that argument is foreclosed by the Ninth Circuit's holding in *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021), that beliefs in future plans or objectives can be forward-looking. As the court noted in *Wasicek v. Sumo Logic, Inc.*, "[a]n expression of 'present belief in a forward looking statement' is not a 'present fact'; rather, such a contention would 'work an end-run around the PSLRA's safe harbor provision'" and "a plaintiff cannot defeat [the] safe harbor merely by alleging…that the company knew that the announced forward-looking objective was unlikely to be achieved." 2024 WL 3708033, at *12 (N.D. Cal. Aug. 5, 2024).

Finally, Plaintiffs' claim that "the safe harbor does not apply to omissions of present fact" also ignores *Wochos*. (Opp. 14.) This district rejected this argument a few months ago, explaining that plaintiffs "misunderstand the caselaw," and "[s]tatements of the 'assumptions underlying or relating to' the 'plans and objectives of management for future operations' are forward-looking statements.'" *Lamontagne v. Tesla, Inc.* 2024 WL 4353010, at *5 (N.D. Cal. Sept. 30, 2024) (citing *Wochos*, 985 F.3d at 1191-92.) Notably, Plaintiffs' cases predate *Wochos* or are out-of-circuit.

***Actual Knowledge.*** Plaintiffs do not meaningfully address the actual knowledge prong of the safe harbor, which is a higher standard than scienter. (Mot. 15; Opp. 16.) Plaintiffs have not pled that Defendants knew Direct Buy would never "drive greater engagement," expand "lifetime values," or "attract high quality clients." (*See* Mot. 15.) *See infra* at III.A. Nor do Plaintiffs address *Wochos v. Tesla*, where the Ninth Circuit rejected stronger allegations. 985 F. 3d at 1186 (no actual knowledge where plaintiffs "failed to plead any facts showing that Musk ever accepted [] employees' views that the goal was impossible.").

***Meaningful Cautionary Language.*** Although failure to meaningfully dispute actual knowledge is dispositive, Plaintiffs' argument that these statements "were not accompanied by meaningful cautionary language" also fails. (Opp. 16.) Plaintiffs argue that the risk warnings were "generic"[6] and the risk had already materialized, but do not allege these risk disclosures are

---

[6] Stitch Fix's disclosures are unlike Plaintiffs' cases, where the disclosures listed no risks or did not relate to the risk at issue. *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1033 (S.D. Cal. 2005)(warned study results may never become available without any other discussion); *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1053-54 (N.D. Cal. 2018) (did not list risk at issue).

Cooley LLP
Attorneys at Law
Palo Alto

7

Defendants' Reply ISO Motion to
Dismiss Second Amended Complaint
5:22-cv-04893-PCP

misleading, or explain how the risk materialized when the Direct Buy landing page had not yet launched.[7] Moreover, the alleged risk was the potential impact on Stitch Fix's revenue. Stitch Fix disclosed that new product offerings "may not have the same success, or gain traction as quickly, as our current offerings" and "if we are not able to attract new clients . . . our sales may fall short of expectations." (*E.g.*, Ex. 8 at 37; Ex. 16 at 33–35; Ex. 18 at 35–37.)  Thus, some internal negative testing does not mean the risk had materialized. Indeed, Plaintiffs allege that the internal testing was designed "to avoid any effect on revenue" (¶57), and Plaintiffs do not allege any revenue impact until *after* the onboarding process launched, when the Company disclosed lower net client additions and revenue starting in December 2021. (*See* ¶¶118, 124.)

### D.    Corporate Optimism Statements are Not Actionable

Plaintiffs argue that Defendants' statements that Direct Buy was "frictionless," "incremental" and "complementary" conveyed that "Direct Buy was not cannibalizing Fix," (Opp. 19-20), but when read in context, the statements only express optimism about Direct Buy. These statements use subjective phrases like "complementary set of needs" and "incremental market opportunity" to describe the client shopping experiences that Direct Buy could offer, and the potential for "broadening the appeal and reach of Stitch Fix." (*See, e.g.*, ¶147 ("We believe Direct Buy provides the lightweight entry point"); ¶157 ("you'd actually love to buy that through Stitch Fix in a more frictionless way"); ¶164 ("The momentum and client engagement we've seen increases our confidence…"); ¶167 ("significantly broaden the appeal and reach of Stitch Fix").) But Plaintiffs have not identified a statement that makes "concrete assertions" about Direct Buy's performance with customer onboarding "that could render it actually false or trigger a duty to disclose additional information." *Macomb Cnty. Empls' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1100 (9th Cir. 2022). Nor could they because these "statements are so imprecise and noncommittal that they are incapable of objective verification." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (2022); *Macomb*, 39 F.4th at 1099 ("great growth market" and "huge market opportunity" "not 'objectively verifiable'"); *Bodri*, 252 F. Supp. 3d at 924 ("the

---

[7] *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1178 n.62 (C.D. Cal. 2008) is inapposite. The court did not analyze the safe harbor, and the risk disclosures were challenged. *Id.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
5:22-CV-04893-PCP

momentum we are seeing …out of the gates" inactionable); *In re S1 Corp. Sec. Litig.*, 173 F. Supp. 2d 1334, 1355-56 (N.D. Ga. 2001) (statement that acquisitions were "complementary" was "too general and vague to be actionable."). That analysts may have quoted these statements does not "transform corporate optimism into a securities violation." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014).

While Plaintiffs mischaracterize Defendants' argument that these statements are nonactionable opinions, tellingly, the Opposition does not argue that there was no reasonable basis for Defendants' belief that Direct Buy was "additive" or "complementary."[8] (Mot. 19; Opp. 20.)

### E.    Plaintiffs' Responses to Defendants' Additional Falsity Arguments Fail

***June and December 2020 Statements.*** First, Plaintiffs argue that because they allege Trending for You launched in "early June," and the testing started "in June 2020," the Company must have had the ***results*** by early June, when the June statements were made. (Opp. 16.)  This is pure speculation. While Plaintiffs claim that Lake and Spaulding's statements indicated they had the test results in June 2020, one statement does not even mention testing, and the other states they were in the process of conducting testing "right now," but makes no reference to test results. (Opp. 16-17; ¶¶38-39, 145; Ex. 7 at 19) ("And then with the group of people where we have their style profiles, ***that's a lot of what we're testing right now*** with things like Trending for you."). This is not enough. *See Weston*, 29 F.4th at 621 ("it is simply not enough to assume or implausibly infer that the defendants must have known about [the software bug] in July based on later facts or developments" six days later). And while Plaintiffs argue "there were additional tests in 2020, which Defendants necessarily had in hand by December," (Opp. 17), Plaintiffs do not allege when Defendants received the test ***results***, or what they specifically showed. (¶66 (alleging "the first test was conducted in summer 2020, and then additional tests were conducted ***in 2020 and early 2021***").

Second, Plaintiffs argue that Defendants' statements that Direct Buy "represents a

---

[8] *See W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 650 (N.D. Ill. 2020), a*ff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, 2022 WL 1449184 (7th Cir. May 9, 2022) (descriptions of portfolios as "complementary" were opinions rather than "representations of verifiable fact"). *Cf. Glazer*, 63 F.4th at 770–71 (statements "went beyond mere optimism by 'provid[ing] a concrete description of the past and present state of the pipeline'").

frictionless entry point" referred to the onboarding process because Defendants were testing the onboarding process. (Opp. 17.) The mere fact that Defendants conducted testing does not mean these statements relate to the onboarding process, as these statements do not even reference testing. Plaintiffs also point to Spaulding's statement in March 2022—*two years later*—where "friction" was used to describe problems with the landing page after the public launch. (Opp. 17.)  But Plaintiffs cannot plead falsity by plucking similar-sounding words out of context and assuming they mean the same thing.[9]  Plaintiffs ignore *Wochos*, which explained that "[w]here, as here, a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support this crucial premise."[10] 985 F.3d at 1193. Plaintiffs do not plead facts supporting that these statements referred to onboarding, particularly when the new onboarding page had not launched, and the Company used similar language when discussing existing customers. (*See* ¶147.)

**February, March, and June 2021 Statements.** First, Plaintiffs claim the February-June 2021 statements "made affirmative representations about Direct Buy that were contradicted by their internal test results," but they omit important context. (Opp. 17.) For example, Plaintiffs focus on Lake's reference to "the data," but ignore that Lake does not reference testing or customer acquisition, and critically, that the Company said it needed to "improve' the "product experience":

> "<u>we can see in the data that it's working</u>, ***and at the same time, like there's still so much opportunity.*** Like every time I experience it, I'm like, okay, this is cool, but this would be amazing. ***And so from a product experience perspective, we still have a lot that we can do to improve that experience.***…And at the same time, ***it's absolutely not fully materialized yet.***" (Ex. 13 at 8; ¶159.)

The Company had no duty to report interim internal testing results because this type of "vaguely optimistic assessment" does not make "specific or unqualified guidance," and therefore is not false or misleading. *Weston*, 29 F.4th at 615 (no duty to disclose the impact of software bugs on product development because "Securities Laws…do not require real-time business updates or complete

---

[9] *See In re Enovix Corp. Sec. Litig.*, 2024 WL 349269, at *10 (N.D. Cal. Jan. 30, 2024) (plaintiffs failed to plead falsity where they claimed references to FAT and SAT had "the same exact meaning as general references to factory and site acceptance testing a year earlier.").

[10] None of the cases Plaintiffs cite hold that a court must always accept a plaintiff's interpretation. (*See* Opp. at 13, 17.)  *Khoja v. Orexigen Theraps, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) explains that defendants cannot incorporate by reference documents "only to resolve factual disputes," but incorporation by reference is not at issue, nor are Defendants disputing any well-pled fact.

Cooley LLP
Attorneys at Law
Palo Alto

10

Defendants' Reply ISO Motion to
Dismiss Second Amended Complaint
5:22-cv-04893-PCP

disclosure of all material information whenever a company speaks on a particular topic.").

This is unlike Plaintiffs' cases, where the defendants claimed a launched product was working when it was not. (*See* Opp. 10-11.)[11] Nor is this a case where a company affirmatively spoke about the issue at hand.[12] In contrast, Stitch Fix had not launched the onboarding functionality, and did not make promises about the performance of that new functionality. Rather, Stitch Fix disclosed it was "not there yet," and that it was delaying the launch to "get the product right." (¶178.) These disclosures are consistent with the alleged internal testing, and do not create "an impression of a state of affairs that differs in a material way from the one that actually exists."[13] *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Second, Plaintiffs argue that the new FE allegations provide additional details on the test results. But that misses the point that they still fail to plead what it means to "fail" the testing. (Opp. 18; Mot. 18.) While Plaintiffs allege the testing showed 30-40% cannibalization, they have not alleged how much cannibalization would be deemed a failure, or that management accepted the data scientists' views that Direct Buy was "not going to work.'" (¶¶66, 69, 73; Opp. 18; Mot. 15-18.)  But disagreement with management is not securities fraud. *Espy*, 99 F.4th at 533; *see Pirani*, 2024 WL 4894291, at *7 (no falsity where plaintiffs did not allege "[d]efendants concluded that account sharing would 'severely hinder' growth").

***September 2021 Statements.*** Plaintiffs claim they allege contemporaneous internal testing in September 2021 because FE 2 was aware of no positive tests, Spaulding was aware of the test results, and FE 4 said the version of Freestyle that launched was "fundamentally the same" as the

---

[11] *E.g., City of Miami Gen. Empls' & Sanitation Empls' Ret. Tr. v. RH, Inc.*, 302 F. Supp. 3d 1028, 1035-36 (N.D. Cal. 2018) (company stated it was "extremely encouraged by the early results," despite a "complete lack of inventory," customer complaints, and canceled orders).

[12] *See E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 934-36. (9th Cir. 2023) (company discussed impact of crypto mining on gaming segment revenue while allegedly failing to disclose internal information that painted a different picture); *see also Homyk v. ChemoCentryx, Inc.*, 2023 WL 3579440, at *11 (N.D. Cal. Feb. 23, 2023)(claimed drug was safe when FDA told company study design was inadequate to support that claim).

[13] *Cf. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 5, 7 (1st Cir. 2021) (company said product "improves performance" when it had not performed "one successful customer data backup"); *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 701-702, 707-09 (9th Cir. 2016) (company said "all the data in hand" was "favorable" when there was "no question" defendants knew of a rat study showing drug was causing cancer).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
5:22-CV-04893-PCP

"program that failed the testing." (Opp. 18; ¶201.) But these allegations are vague and conclusory, and none of them allege how Freestyle was performing just weeks after it launched.[14] Vague, conclusory allegations that all the testing was negative are not sufficient. (*See* ¶97.) Plaintiffs cannot assume what the initial data showed based on testing prior to launch, just because the product was unsuccessful. *See Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1037–38 (N.D. Cal. 2012) (no falsity where there were "no factual allegations" regarding new product's effect "after…the month in which [it] is alleged to have launched.")[15] And FE 4's statements about the product launch lack a basis in personal knowledge. (Opp. at 19; ¶201.) Plaintiffs claim FE 4 was a Data Scientist, but allege no facts about FE 4's job responsibilities to establish he "w[as] in a position to be personally knowledgeable of the information alleged," such as whether he worked on the product launch or with the product team. (¶62.) *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009).

## III.    THE SAC DOES NOT PLEAD SCIENTER

The SAC fails to plead that Defendants acted intentionally or with deliberate recklessness, constituting "an extreme departure from the standards of ordinary care" that "presents a danger of misleading … that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco*, 552 F.3d at 991.

### A.    Alleging Knowledge of Negative Testing is Insufficient to Plead Scienter

Plaintiffs' primary argument that Defendants knew of negative internal testing showing that Direct Buy was cannibalizing Fix fails to establish a strong inference of scienter. (Opp. 20-22.) As the Court explained, "the fact that the executives might have known of the new Fix Customer Test Results…does not mean that defendants made unreasonable omissions in their public statements to shareholders" because "the internal tests appear to have related to Direct Buy's impact on prospective clients, not existing clients." (Order at 9-10.) The same is true with the SAC.

---

[14] This is unlike *In re BofI Holding, Inc. Sec. Litig.*, where "CW 3 said his department was 'understaffed' with only 'three employees' throughout his time at BofI," which extended into the class period, so the plaintiff was entitled to the "reasonable inference that no changes had been made." 2017 WL 2257980, at *11 (S.D. Cal. May 23, 2017). (Opp. at 19.) Plaintiffs are not entitled to the same inference when they rely on several tests allegedly conducted months earlier.
[15] *Cf. Hall v. Johnson & Johnson*, 2019 WL 7207491, at *18 (D.N.J. Dec. 27, 2019) (lack of contemporaneous testing not dispositive when internal documents showed awareness of falsity).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
5:22-CV-04893-PCP

Even if Defendants were aware of the test results, Plaintiffs have not pled how Defendants interpreted the data, nor do they allege that any Defendant believed that the launch of the onboarding process would fail, or that they were misleading investors. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (no scienter because there were no allegations that defendants believed they were misleading investors); *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 537 (9th Cir. 2024) (knowledge of omitted information "alone would not indicate a strong inference of scienter"); *see also Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at *13-14 (N.D. Cal. Apr. 2, 2024) ("knowledge of manufacturing issues alone" was "insufficient to show intent to deceive" where plaintiffs had "not pointed to any evidence that Defendants believed that FDA approval was unlikely or would be delayed because of the deficiencies").

Plaintiffs also fail to plead "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008). For example, the SAC does not allege the Company had any "negative" test results showing Defendants knew any of the 2020 aspirational statements were misleading when made. *See supra* II.E. And Plaintiffs point to no contradicting data available in September 2021, instead relying on the generalized allegation that "testing [was conducted] throughout the class period that showed Direct Buy's cannibalizing effects." (Opp. 20-21.) But Plaintiffs fail to explain how internal ***pre-launch testing*** would inform Defendants that their statements ***immediately after*** the August 2021 launch were false or misleading. Plaintiffs argue that there were "routine meetings" where test results were shared with Spaulding. (Opp. 21.) But missing are ***when*** these meetings took place or what specific results were shared.[16]    Without these details, Plaintiffs cannot argue that any Defendant knew the statements were false or misleading ***at the time the statements were made***. This is particularly true when the FEs lacked direct access to the defendants. (Mot. 21-22.)

Simply put, "[n]one of the facts alleged in the [SAC] relate to the Defendants' state of mind." *Revance*, 2024 WL 1354503, at *14.

---

[16] The SAC does not allege that Lake was present for any of these meetings, nor does it allege Lake ever received any test results.

**B.      Plaintiffs' Other Scienter Theories Cannot Support Scienter.**

***Defendants' Statements.*** The Opposition asserts that "Defendants do not challenge that their own statements support scienter." (Opp. 23.) This is a strawman. Plaintiffs fail to allege particularized facts showing that the tests Defendants generally referenced are the same as those alleged in the SAC. (¶¶215-20, 164).[17]

***Spaulding's Departure.*** The Opposition does not dispute that the timing of Spaulding's resignation, without more, does not create an inference of scienter, or that Spaulding remaining an advisor at the Company and receiving a severance package "cuts against any inference of scienter."[18] (Mot. 23.) Without new allegations, this argument fails.[19]

***Core Operations.*** The core operations doctrine is irrelevant because Plaintiffs have not alleged the testing contradicted the challenged statements. Even if Defendants were aware of the testing, it does not suffice to plead scienter. Plaintiffs do not dispute that their core operations allegations remain "no more detailed than the already rejected arguments in the AC." (Mot. 24; Opp. 24.)  Nor do they allege any facts suggesting this is one of the "rare circumstances" where the core operations doctrine applies.  (Opp. 24.)

***Stock Sales.*** Plaintiffs concede that Lake's stock sales were all made pursuant to 10b5-1 plans, and do not dispute that she sold more stock in the 24-month period before the class period than during it.[20] (*See* Exs. 27, 28; JMF Decl. (Dkt. 92) ¶¶34–36.); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F.Supp.2d 1045, 1069 (N.D. Cal. 2012) ("[N]on-discretionary sales made pursuant to a Rule 10b5-1 trading plan" are an "innocent, alternative explanation" that "negates an inference of scienter."); *In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) (selling more shares before the class period rebuts an "inference of bad faith."). The Court

---

[17] This is unlike Plaintiffs' cases where Defendants specifically implied there was agreement with the FDA when there was not, or specifically denied anti-competitive practices that were being leveraged. (Opp. 23) *See In re Fibrogen, Inc.*, 2022 WL 2793032, at *24 (N.D. Cal. July 15, 2022); *In re Qualcomm Inc. Sec. Litig.*, 2019 WL 1239301, at *11 (S.D. Cal. Mar. 18, 2019).

[18] Plaintiffs' cases are inapposite as they all involved multiple resignations contemporaneous to the corrective disclosures. (Opp. 24.) Neither circumstance is present here.

[19] The allegation that Spaulding retaliated against "anyone who said that Direct Buy testing failed" should be disregarded because it is devoid of any particularized facts. (Opp. 23.)

[20] Plaintiffs' cases regarding 10b5-1 plans are distinguishable. *See In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *14 (N.D. Cal. Jan. 6, 2022) ("discretionary choices" to set the sale of stocks pursuant to 10b5-1 plans negated inference of good faith).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
5:22-CV-04893-PCP

already held that this consistent, non-discretionary trading activity negates an inference of scienter. (Order at 10.) Instead, Plaintiffs argue that the net proceeds from Lake's class period sales were greater than before the class period, ignoring that "the Ninth Circuit traditionally gives 'great weight to the percentage of stock sold[,]'" not the net sales." *Hadian v. Fate Therapeutics, Inc.*, 2024 WL 4246083, at *38 (S.D. Cal. Sept. 19, 2024) (rejecting argument that class period net proceeds "approximately 17 times greater" than pre-class period net proceeds created an inference of scienter). Nor do Plaintiffs dispute that Defendant Lake's sales of only 19% of her holdings are insufficient to support an inference of scienter.[21]  (*See* Mot. 24.)

***Holistic Analysis.*** Plaintiffs' theory that Defendant Spaulding launched Direct Buy for her personal success knowing that it would fail "does not make a whole lot of sense," particularly since Spaulding is not alleged to have profited from the alleged fraud. (Opp. 23.)  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020). The more compelling inference is one of good faith. (Mot. 25.) Although the Company was hopeful about the effect Direct Buy could have on customer acquisition, it made no promises. In fact, consistent with FE 1's allegations about negative testing in February and March 2021, the Company delayed the launch to "get it right." (*See* Ex. 11 at 18; Ex. 15 at 17.) Plaintiffs speculate that, six months after seeing the allegedly bad test results and publicly delaying the launch, the Company decided to launch Freestyle without making any changes and having seen any new or different information about the likelihood of success. That is not enough to raise even a plausible inference of scienter, let alone the strong inference required under the PSLRA. And while Freestyle was not as successful as hoped, Defendants' "[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

## IV.   CONCLUSION[22]

Defendants respectfully request that the Court dismiss the SAC with prejudice.

---

[21] Plaintiffs mischaracterize Defendants' argument regarding Lake's stock sales, and do not dispute that Lake's Class B voting power increased during the class period. (*See* Mot. 24 n.13-14; Opp. 24 n.2.) Far from disputing Plaintiffs' calculations, Defendants observed it was unclear which documents Plaintiffs relied on. (Mot. 24 n. 13-14.)

[22] Plaintiffs' Section 20(a) claim fails because neither the SAC nor Opposition adequately allege a predicate violation. (Mot. 25.)

Dated:    January 31, 2025

COOLEY LLP


By:    _____
           */s/ Patrick E. Gibbs*
              Patrick E. Gibbs

Attorneys for Defendants
STITCH FIX, INC., KATRINA LAKE, and
ELIZABETH SPAULDING

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16

**DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
5:22-CV-04893-PCP**