**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
REBECCA E. BOON (*pro hac vice*)
(rebecca.boon@blbglaw.com)
SCOTT FOGLIETTA (*pro hac vice*)
(scott.foglietta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiffs and the Settlement Class*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, et al.,

Plaintiffs,

v.

STITCH FIX, INC., et al.,

Defendants.

Case No. 5:22-cv-04893-PCP

CLASS ACTION

**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Courtroom: Courtroom 8 - 4th Floor
Judge: Hon. P. Casey Pitts
Date: September 24, 2026
Time: 10:00 a.m.

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..... ii

STATEMENT OF ISSUES TO BE DECIDED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

PRELIMINARY STATEMENT ..... 2

ARGUMENT ..... 4

I. The Proposed Settlement Warrants Final Approval ..... 4

A. Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class ..... 6

B. The Settlement Was Reached After Arm's-Length Negotiations Between Experienced Counsel, and with the Assistance of an Experienced Mediator ..... 7

C. The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation ..... 8

1. The Amount of the Proposed Settlement ..... 9

2. The Strengths and Weaknesses of the Case and the Significant Risks of Continued Litigation ..... 10

3. The Duration of Continued Litigation ..... 14

4. All Other Factors in Rule 23(e)(2)(C) Support Approval of the Settlement ..... 16

D. The Settlement Treats Settlement Class Members Equitably ..... 17

E. Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement ..... 18

II. The Plan of Allocation Is Fair and Reasonable ..... 19

III. The Court Should Certify the Settlement Class ..... 22

IV. Notice to the Settlement Class Satisfied the Requirements of Rule 23 and Due Process ..... 23

CONCLUSION ..... 24

# TABLE OF AUTHORITIES


**Page(s)**

**CASES**

*Abadilla v. Precigen, Inc.*,
2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) .......... 7

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
2025 WL 40785 (S.D.N.Y. Jan. 7, 2025) .......... 22

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......... 11, 14, 15, 18

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 7

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......... 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 7, 8

*In re Celera Corp. Sec. Litig.*,
2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) .......... 14

*Churchill Village L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .......... 5, 18, 24

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......... 5, 19

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......... 9, 15, 24

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......... 6

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) .......... 10

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......... 4

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 5, 6, 7, 8

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) .......... 15

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ....................24

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ....................17

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................14, 19

*IBEW Local 697 v. Int'l Game Tech.*,
2012 WL 5199742 (D. Nev. Oct. 19, 2012) ....................10

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................11

*Jaffe Pension Plan v. Household Int'l, Inc.*,
No. 1:02-cv-05893 (N.D. Ill. May 7, 2009)....................15

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988) ....................18

*Knapp v. Art. com, Inc.*,
283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). ....................10

*Lane v. Facebook, Inc.*,
696 F.3d 811, 819 (9th Cir. 2012) ....................5

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ....................6

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015)....................14

*Luna v. Marvell Tech. Grp.*,
2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ....................24

*In re Lyft Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ....................22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ....................9

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV*,
221 F.R.D. 523 (C.D. Cal. 2004)....................18

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ....................5, 9

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................4, 19

*In re Oracle Sec. Litig.*,
1994 WL 502054 (N.D. Cal. June 18, 1994) .......... 19

*In re Plantronics, Inc. Sec. Litig.*,
No. 4:19-cv-07481-JST (N.D. Cal. Mar. 10, 2026) .......... 22

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .......... 6

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......... 17

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) .......... 24

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .......... 4

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .......... 10, 14

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .......... 10

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
2018 WL 828199 (S.D. Cal. Feb. 9, 2018) .......... 15

*Vivendi Universal, S.A. Sec. Litig.*,
Civ. No. 1:02-cv-5571 (S.D.N.Y. Feb. 2, 2010) .......... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019) .......... 5

**STATUTES AND RULES**

Fed. R. Civ. P:

Rule 23 .......... 7, 19, 23, 24

Rule 23(a) .......... 22, 23

Rule 23(b)(3) .......... 22, 23

Rule 23(c)(2)(B) .......... 23

Rule 23(e) .......... 4

Rule 23(e)(1)(B) .......... 23

Rule 23(e)(2) .......... *passim*

Rule 23(e)(2)(A) ....................6
Rule 23(e)(2)(B)....................7
Rule 23(e)(2)(C)....................8, 16, 17
Rule 23(e)(2)(D) ....................17
Rule 23(e)(3)....................16, 17

**NOTICE OF MOTION FOR FINAL APPROVAL**
**OF SETTLEMENT AND PLAN OF ALLOCATION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure and the Court's Amended Order Granting Motion for Preliminary Approval of Settlement (Dkt. No. 134) (the "Preliminary Approval Order"), Lead Plaintiffs Retail Wholesale Department Store Union Local 338 Retirement Fund, Retail Wholesale Department Store Union Local 338 Health & Welfare Fund, Retail Wholesale Department Store Union Local 338 General Fund, and Retail Wholesale Department Store Union Local 338 Benefits Trust Fund ("Lead Plaintiffs") will and hereby do move the Court, before the Honorable P. Casey Pitts, on September 24, 2026, at 10:00 a.m. in Courtroom 8 of the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, or at such other location and time as set by the Court, for (1) entry of a judgment granting final approval of the proposed settlement of this Action (the "Settlement") and (2) entry of an order granting approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").

This Motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Rebecca E. Boon in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Boon Declaration" or "Boon Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and any additional information or argument that may be required by the Court. The proposed Judgment and a proposed Order approving the Plan of Allocation will be submitted with Lead Plaintiffs' reply submission, after the deadline for submission of any objections and requests for exclusion has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should approve the proposed Settlement of this securities class action as fair, reasonable, and adequate under Rule 23(e)(2); and

2. Whether the Court should approve the Plan of Allocation as fair and reasonable.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiffs, on behalf of themselves and the Settlement Class, respectfully submit this memorandum in support of their motion for final approval of the proposed Settlement and approval of the proposed Plan of Allocation.[1]

## PRELIMINARY STATEMENT

Lead Plaintiffs are pleased to present for the Court's final approval their agreement to settle this securities class action in exchange for a cash payment of $32,000,000 for the benefit of the Settlement Class. In May 2026, the Court preliminarily approved the Settlement in its Preliminary Approval Order, authorizing delivery of notice to members of the Settlement Class.

Lead Plaintiffs respectfully submit that the proposed Settlement is a very favorable result for the Settlement Class. As detailed in the accompanying Boon Declaration and summarized herein, the proposed Settlement provides a substantial, certain, and near-term recovery for the Settlement Class while avoiding the significant risks of continued litigation, including the risk that the Settlement Class could recover less than the Settlement amount—or nothing at all—after years of additional litigation, appeals, and delay.

The proposed Settlement is the result of Lead Plaintiffs' and Plaintiffs' Counsel's substantial litigation efforts. As a result of these efforts, Lead Plaintiffs and Lead Counsel possessed a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached. Lead Counsel conducted a detailed investigation of the claims at issue, which included an extensive review of public SEC filings, conference calls, analyst reports, and news articles; interviews with over 200 former Stitch Fix employees; and consultation with experts in loss causation and damages. ¶¶ 14-16. Based on this extensive investigation, Lead Plaintiffs prepared and filed the detailed Amended Class Action Complaint (the "Amended Complaint"),

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated February 6, 2026 (Dkt. No. 126-1) (the "Stipulation") or in the Boon Declaration. Citations to "¶ __" herein refer to paragraphs in the Boon Declaration and citations to "Ex. __" refer to exhibits to the Boon Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

and a Second Amended Class Action Complaint ("SAC" or "Complaint"). ¶¶ 17, 26. Lead Counsel prepared extensive briefing and engaged in oral argument in opposition to two rounds of motions to dismiss the complaints and—after the Complaint was sustained in part—began the fact discovery process.

The proposed Settlement resulted from extensive arm's-length negotiations, including a full-day mediation session before Michelle Yoshida of Phillips ADR Enterprises on November 13, 2025. ¶¶ 40-46. Prior to that mediation, the Parties conducted pre-mediation discovery, which included the production of thousands of pages of internal Stitch Fix documents, and exchanged detailed mediation statements, which addressed issues of both liability and damages. ¶¶ 42-43. At the mediation session, the Parties engaged in vigorous settlement negotiations with the assistance of Ms. Yoshida. ¶ 44. After a full day of negotiations between the Parties, Ms. Yoshida issued a mediator's recommendation that the Parties settle the Action for $32 million, which the Parties accepted. ¶ 45. The proposed Settlement has the support of Lead Plaintiffs—a group of institutional investors that took an active role in supervising the litigation. ¶ 5.

The proposed Settlement is a very favorable result for the Settlement Class given the significant risks that Lead Plaintiffs faced in proving their securities fraud claims. As discussed below and in the Boon Declaration, Lead Plaintiffs faced meaningful risks in establishing their claims. ¶¶ 49-64. Lead Plaintiffs would face real challenges in proving that Defendants' statements about Stitch Fix's new business line (called "Direct Buy") were false and made with scienter and in connecting the stock price declines at issue with the alleged misstatements. ¶¶ 53-60. For example, there was a risk that the Court or jury might find that certain of the alleged misstatements were vague or aspirational statements, or were unrelated to the introduction of Direct Buy to new customers, and were otherwise not actionable under the securities laws. ¶ 53. In addition, Lead Plaintiffs would also have confronted hurdles in proving that Defendants knowingly or recklessly deceived investors. ¶¶ 54-55. Lead Plaintiffs would also have faced challenges in establishing that the declines in Stitch Fix's share price following the alleged corrective disclosures were sufficiently connected to the alleged false statements to establish that the price declines were the result of the alleged fraud, and in establishing what portion of the price declines were caused by

the dissipation of the price inflation caused by the alleged misstatements—rather than unrelated factors. ¶¶ 56-59. Lead Plaintiffs would have faced real challenges at summary judgment, trial, and on appeal in prevailing on these issues.

In light of these considerations and the other factors discussed below, Lead Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate and warrants final approval by the Court.

Additionally, Lead Plaintiffs request that the Court approve the Plan of Allocation, which was set forth in the Notice approved by the Court for mailing to potential Settlement Class Members. The Plan of Allocation, which was developed by Lead Counsel in consultation with Lead Plaintiffs' damages expert, provides a reasonable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims based on losses they suffered on purchases of Stitch Fix common stock related to the alleged fraud.

## ARGUMENT

### I. The Proposed Settlement Warrants Final Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class-action claims. *See* Fed. R. Civ. P. 23(e). A class-action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Ninth Circuit[] policy favor[s] settlement, particularly in class action law suits"). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. The settlement of complex cases like this one also promotes efficient utilization of scarce judicial resources and the speedy resolution of claims. *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and allows "a prompt, certain, and substantial recovery" for the class).

In determining whether a proposed settlement is "fair, reasonable, and adequate," the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account, [among other things,] the costs, risks, and delay of trial and appeal […]; and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Ninth Circuit has held that district courts should consider the following factors in evaluating the fairness of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *accord Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors . . . and the factors identified in" Ninth Circuit case law).

The Ninth Circuit has explained that courts' review of class-action settlements should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and a court "need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### A. Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

The first Rule 23(e)(2) consideration is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, courts consider (1) if the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) if the named plaintiffs and their counsel have prosecuted or will prosecute the action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011); *Leventhal v. Chegg, Inc.*, 2025 WL 1481382, at *5 (N.D. Cal. May 21, 2025).

Here, Lead Plaintiffs' claims are typical of and coextensive with those of the Settlement Class, and they do not have any interests that are antagonistic to the interests of other members of the Settlement Class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020. Lead Plaintiffs—like all other Settlement Class Members—purchased shares during the Settlement Class Period at prices that are alleged to have been artificially inflated by Defendants' misstatements. Like all Settlement Class Members, Lead Plaintiffs have an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class in their vigorous prosecution of the Action for nearly four years, including in the negotiation and achievement of the proposed Settlement. Lead Plaintiffs played an active role in supervising and participating in the litigation and retained counsel who are highly experienced in securities litigation and have successfully prosecuted many complex class actions throughout the United States. *See* Ex. 7 (Lead Counsel's firm resume). Lead Plaintiffs and Lead Counsel vigorously prosecuted the Settlement Class's claims, which included: (i) conducting an extensive investigation into the alleged fraud; (ii) drafting the detailed Amended Complaint and SAC based on the investigation; (iii) opposing two rounds of Defendants' motions to dismiss through extensive briefing and oral argument; (iv) consulting with an expert on issues of loss causation,

damages, and market efficiency; and (v) participating in extended arm's length settlement negotiations, including pre-mediation discovery, detailed mediation statements, and a full-day mediation session with a professional mediator. ¶¶ 3, 11-46.

**B. The Settlement Was Reached After Arm's-Length Negotiations Between Experienced Counsel, and with the Assistance of an Experienced Mediator**

The next Rule 23 consideration is whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This includes consideration of related circumstances bearing on the procedural fairness of the settlement, including (i) counsel's understanding of the strengths and weaknesses of the case, *Hanlon*, 150 F.3d at 1026; (ii) the presence or absence of any indicia of collusion, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); and (iii) the involvement of a mediator.

Here, the proposed Settlement was reached only after a full-day mediation session before Michelle Yoshida of Phillips ADR Enterprises, an experienced mediator of class actions and other complex litigation. ¶¶ 40-45. In advance of the mediation, the Parties prepared and exchanged detailed mediation statements that detailed their views of the merits and risks of the case. ¶ 43. After a full day of mediation, Ms. Yoshida made a mediator's recommendation that the Action be settled for $32 million, which the Parties accepted. ¶¶ 44-45.

The fact that the Parties reached a settlement through arm's-length negotiations between experienced counsel strongly supports a finding that the Settlement was negotiated at arm's length and is procedurally fair. *See Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *9 (N.D. Cal. Nov. 6, 2023) (where settlement was reached by experienced counsel after a session with an independent mediator, those facts were "highly probative of an arms-length negotiation free of collusion"). The involvement of an experienced mediator in the settlement process, like Ms. Yoshida, further "confirms that the settlement is non-collusive." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018); *see also In re FibroGen, Inc., Sec. Litig.*, 2024 WL 6859589, at *3 (N.D. Cal. Feb. 13, 2024) (noting that "Ms. Yoshida is regularly recognized as an experienced mediator" and finding that her involvement supported a finding that "the settlement was arrived at through a good-faith, non-collusive process"); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417,

at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement where it was "the outcome of an arms-length negotiation conducted with the help of experienced mediator Michelle Yoshida").

In addition, as noted above, Lead Plaintiffs and Lead Counsel possessed a thorough understanding of the strengths and weaknesses of the case before reaching the proposed Settlement. As detailed in the Boon Declaration, Lead Counsel conducted a thorough, substantive investigation, drafted two detailed complaints, briefed and argued two motions to dismiss, reviewed internal Stitch Fix documents in pre-mediation discovery, and engaged in arm's-length settlement negotiations. ¶¶ 3, 11-46.

Moreover, the proposed Settlement has none of the indicia of possible collusion identified by the Ninth Circuit (*see Bluetooth*, 654 F.3d at 947), such as a "clear sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants. *See* Stipulation ¶ 18 ("Lead Counsel's application for attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiffs other than what is set forth in this Stipulation."); Stipulation ¶ 16 ("The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity . . . who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever . . . .").

### C. The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation

Next, Rule 23(e)(2) requires courts to consider whether a class-action settlement is "fair, reasonable, and adequate," including by "taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This analysis essentially encompasses four of the seven factors of the traditional *Hanlon* analysis: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in settlement. *See Hanlon*, 150 F.3d at 1026. Here, each of these factors supports approval.

**1. The Amount of the Proposed Settlement**

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). In assessing the recovery, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624.

Here, the proposed Settlement amount—$32 million in cash, plus interest—represents a favorable outcome for the Settlement Class in light of the risks of the claims and the potential maximum damages that could be recovered. As discussed in the Boon Declaration, the absolute maximum damages that could be established here was $1.32 billion. ¶ 62. This amount assumes that Lead Plaintiffs succeeded in prevailing over <u>all</u> liability and class certification challenges, that <u>the entire</u> Settlement Class Period was sustained, and Lead Plaintiffs were able to establish that 89.5% of the decline on March 9, 2021—the damages expert's best case scenario—and 100% of the declines on other days resulted from fraud-related disclosures—all of which was far from certain. *Id.*

If no recovery were permitted for alleged misstatements prior to September 21, 2021—assuming that Lead Plaintiffs prevailed on all liability issues from that date—maximum damages would fall to $342 million. ¶ 62. However, as discussed above, Lead Plaintiffs would face serious hurdles in proving each of these issues, and would face further loss causation challenges that might reduce any realistic recoveries at both summary judgment or trial substantially below those maximums. *Id.*

Therefore, the $32 million Settlement represents approximately 2.4% to 9% of the maximum damages that could be obtained for the Settlement Class at trial. ¶ 63. Courts have

routinely approved settlements with comparable or lower percentage recoveries than obtained here as fair and reasonable. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (recovery of 2.35% "weighs in favor of approval"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of maximum potential damages); *IBEW Loc. 697 v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years").

Moreover, these maximums assume that Lead Plaintiffs prevailed at trial and appeal on all issues of falsity and scienter. ¶ 62. Such success was not certain. As discussed further below and detailed in the Boon Declaration, Defendants advanced substantial arguments regarding all elements of liability that, if accepted, could have substantially lowered the maximum damages or eliminated them entirely.

### 2. The Strengths and Weaknesses of the Case and the Significant Risks of Continued Litigation

Courts evaluating proposed class action settlements consider the strength of the plaintiff's case and the risks of further litigation. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

In considering whether to agree to the proposed Settlement, Lead Plaintiffs, represented by counsel with considerable experience in securities litigation, weighed the risks inherent in establishing the elements of their claims, including risks at trial of proving to a jury the elements

of falsity, materiality, scienter, loss causation, and full damages. Each of these elements is addressed below.

***Falsity.*** While Lead Plaintiffs had prevailed on this issue at the motion to dismiss stage, Lead Plaintiffs and their counsel recognized that they may have been unable to establish the falsity of Defendants' challenged statements at trial. ¶ 53. For example, there was a risk that the Court or jury might ultimately find that certain of the alleged misstatements were immaterial, vague, or aspirational statements, were otherwise unrelated to the introduction of Direct Buy to new customers, were accurate statements about existing customers' use of Direct Buy, or were not actionable under the securities laws. *Id*. While Lead Plaintiffs believed that they had responses to these challenges, they presented significant risks at future stages of the litigation. *Id*.

***Scienter***. Assuming Lead Plaintiffs were able to prove to a jury that Defendants' statements were materially false or misleading, they would still need to prove that Defendants made the alleged false statements with the intent to mislead investors or with deliberate recklessness. As courts have recognized, a defendant's state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence." *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (scienter is a "complex and difficult [element] to establish at trial").

Lead Plaintiffs also faced risks that the Court or jury might find that Defendants lacked scienter on a complete record at summary judgment or trial. ¶ 54. In particular, Lead Plaintiffs anticipate that Defendants would argue that even if their challenged statements were in reference to Direct Buy's introduction to new customers, Defendants reasonably believed that ongoing testing and proposed improvements to the Direct Buy platform would suffice to correct any potential underperformance and customer cannibalization prior to the product's full launch. *Id*. There were also unique challenges here because two of the four sustained misstatements were made by Defendant Katrina Lake, the founder and Chairperson of Stitch Fix, but most of the scienter allegations in Lead Plaintiffs' Complaint concerned Defendant Elizabeth Spaulding, who

was alleged to have been most responsible for leading Stitch Fix's "transformation" and the decision to launch Direct Buy. *Id*.

Lead Plaintiffs anticipate that Defendants would also maintain that they had no financial motive to mislead investors. ¶ 55. In this regard, Defendants were expected to point to the fact that Defendants did not engage in any unusual stock sales during the Settlement Class Period and would argue that their interests were aligned with the Company's shareholders. *Id*.

***Loss Causation and Damages***. Even if Lead Plaintiffs overcame Defendants' falsity, materiality, and scienter arguments, they would have still confronted additional challenges in establishing loss causation and damages. ¶¶ 56-59.

Lead Plaintiffs anticipate that Defendants would argue at summary judgment and at trial that factors unrelated to the alleged misstatements caused the stock price decline following the alleged corrective disclosures. Specifically, Defendants were expected to argue, following *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 594 U.S. 113, 123 (2021), that the alleged misstatements were too "generic" and vague to have impacted the price of the stock, or that there was a substantial "mismatch" between the alleged misrepresentations and the subsequent disclosure that caused the price decline, so that the price impact of the alleged misrepresentations could not be established by the subsequent declines in Stitch Fix's stock following the disclosures. ¶ 57.

The statements that remain in this Action were potentially vulnerable to a *Goldman* argument, because they can be read as generic or aspirational ¶ 58. Further, Defendants argued, and would likely continue to argue, that the Direct Buy product that the Company was testing, as described by the former employees Lead Counsel interviewed during the investigation, was fundamentally different than the product that Stitch Fix ultimately fully launched to new customers in August 2021. As a result, Defendants will contend that their alleged misstatements were allegedly false because they conflicted with tests conducted on a different product than the product that Defendants were describing in the alleged corrective disclosures. This disconnect raised questions about whether Lead Plaintiffs could establish loss causation for those alleged misstatements. *Id*.

Lead Plaintiffs further anticipate that Defendants would argue that Lead Plaintiffs could not prove the existence, or amount, of damages. ¶ 59. Defendants would likely assert, with the support of their experts, that Lead Plaintiffs' purported damages were attributable—in whole or in large part—to causes other than alleged fraud. There was also a meaningful risk that the Court or a jury would find that significant portions of the stock price declines on the alleged corrective disclosure dates were due to factors unrelated to the alleged fraud. In this case, three of the four alleged corrective disclosures, including the largest stock price drop on March 8, 2021, coincided with Stitch Fix providing earnings information to investors. *Id*. For example, on March 8, 2021, in addition to disclosing a delay of Direct Buy's rollout, which the Lead Plaintiffs allege was corrective, Defendants also disclosed that Stitch Fix was reducing its earnings guidance because of issues that are not related to the alleged fraud. These issues included: delays in shipping; increased holiday shipping costs; adverse seasonality; an increase in inventory reserves; and customers holding on to product longer. *Id*.

Defendants would argue that Lead Plaintiffs could not credibly disaggregate those confounding variables from the damages (if any) that were caused by the alleged misstatements. ¶ 59. Even if Lead Plaintiffs could prove that some of the losses the Settlement Class suffered were caused by the removal of price inflation caused by the misstatements, other portions could be attributed to unrelated causes and subtracted from the amount of recoverable damages. *Id*. Accordingly, the need to "disaggregate" fraud-related damages from the overall stock price declines on the corrective disclosure dates was likely to materially lower the amounts of potential recovery in this case. *Id*.

Moreover, the resolution of these disputed issues regarding damages and loss causation would have boiled down to a "battle of experts," and Defendants would certainly have been able to present a well-credentialed expert to opine at trial that the class's damages were nonexistent or very limited. As Courts have long recognized, the uncertainty as to which side's expert's view might be credited by the jury presents a substantial litigation risk in securities actions. *See Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020) (the fact that "Plaintiffs' ability to prove loss causation and damages would 'come down to an unpredictable battle of the

experts,'" supported approval of the securities class action settlement); *Amgen*, 2016 WL 10571773, at *3 (finding that risks related to the "battle of experts" weighed in favor of settlement approval); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (same).

* * *

In light of all of these litigation risks, the proposed Settlement is fair, reasonable, and adequate.

**3. The Duration of Continued Litigation**

Courts consistently recognize that the likely duration of continued litigation is a key factor in evaluating the reasonableness of a settlement. *See, e.g.*, *Torrisi*, 8 F.3d at 1376 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Due to the "notorious complexity" of securities class actions in particular, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (finding that securities class actions have a well-deserved reputation for complexity).

Here, without the proposed Settlement, continued litigation would have required, among other things: (i) a motion for certification of the class; (ii) substantial further fact discovery, including formal document discovery and the depositions of the Individual Defendants and a number of other key members of Stitch Fix senior management; (iii) an expert discovery process that was expected to include, at a minimum, experts on loss causation and damages from both Lead Plaintiffs and Defendants, as well as possible industry experts; (iv) an expected motion for summary judgment; (v) extensive pre-trial motion practice, such as motions *in limine* and *Daubert* motions; (vi) a trial requiring a substantial amount of detailed factual and expert testimony; (vii) post-verdict challenges to individual class members' damages; and (viii) appeals. The

continued litigation and appeals would have substantially delayed any recovery for Settlement Class Members, possibly for years. *See Zynga*, 2016 WL 537946, at *10; *Amgen*, 2016 WL 10571773, at *3 ("A trial of a complex, fact-intensive case . . . [as here] . . . could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation.").

And, even if a favorable trial verdict was affirmed on appeal, the Settlement Class would have faced a potentially complex, lengthy, and contested claims-administration process. In other securities-fraud class actions that have gone to trial, the time from a verdict to a final judgment has been as long as seven years. *See* Verdict Form, *Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill. May 7, 2009), Dkt. No. 1611 & Final Judgment and Order of Dismissal with Prejudice (N.D. Ill. Nov. 10, 2016), Dkt. No. 2267; *see also* Jury Verdict Form, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 1:02-cv-05571 (S.D.N.Y. Feb. 2, 2010), Dkt. No. 998 (jury verdict issued on Jan. 29, 2010) & Final Judgment Approving Class Action Settlement of All Remaining Claims (S.D.N.Y. May 9, 2017), Dkt. No. 1317.

Absent the proposed Settlement, there is no question that the resolution of this case would take considerable time and require additional expenses for the Settlement Class, with the end result not remotely certain. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."), *aff'd*, 473 Fed. App'x 716 (9th Cir. 2012).

In sum, the risk, complexity, and likely duration of further litigation support approval of the proposed Settlement. The present value of a certain and substantial recovery now, as opposed to the mere chance of a possibly greater one several years later, supports approval of a settlement that eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive no recovery. *See Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018) (holding that courts "shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation").

### 4. All Other Factors in Rule 23(e)(2)(C) Support Approval of the Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors also supports approval of the proposed Settlement or is neutral and does not suggest any basis for a finding that the Settlement is inadequate.

***First***, the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods that have been widely used in securities class action litigation. The proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to the Court-approved Claims Administrator, A.B. Data, Ltd. ("A.B. Data"). A.B. Data, an independent company with extensive experience administering securities class actions, will review and process the claims under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court, and then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court. This type of claims processing is standard in securities class actions and has long been used and found to be effective. This claim procedure is necessary because neither Lead Plaintiffs nor Defendants possess data regarding investors' transactions in Stitch Fix common stock that would allow the Parties to create a claims-free process to distribute Settlement funds.

***Second***, the relief provided for the Settlement Class is also adequate when the terms and timing of the proposed award of attorneys' fees are taken into account. As discussed in the Fee Memorandum, the 25% fee requested is the same as the benchmark for percentage fee awards in the Ninth Circuit and is well within the range of percentage fees that courts within this Circuit award for similarly sized settlements. The fee percentage is also reasonable in light of Plaintiffs'

Counsel's efforts, the recovery obtained, and the risks in the litigation. Moreover, neither Lead Plaintiffs nor Lead Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶ 19. Consistent with the Court's practice, Lead Counsel will request that 90% of the fee be paid upon award, with 10% deferred until the completion of the distribution to Settlement Class Members.

***Lastly***, Rule 23(e)(2)(C) asks the Court to consider the proposed Settlement's fairness in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed, the only agreement the Parties entered into in addition to the Stipulation itself was a confidential Supplemental Agreement regarding requests for exclusion. *See* Stipulation ¶ 39. The Supplemental Agreement gives Stitch Fix the right to terminate the Settlement if the valid requests for exclusion received from persons and entities entitled to be members of the Settlement Class exceeds an amount agreed to by the Parties. *Id.* "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

**D. The Settlement Treats Settlement Class Members Equitably**

In determining whether a class action settlement is "fair, reasonable, and adequate," the Court must also consider whether the Settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Settlement does so. As discussed below in Part II, eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on damages they suffered that were attributable to the alleged fraud. No subset of the Settlement Class is receiving any special treatment and Lead Plaintiffs will receive the same level of *pro rata* recovery under the Plan of Allocation (based on their Recognized Claims as calculated under the Plan) as all other Settlement Class Members.

### E. Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement

Two additional factors considered by the Ninth Circuit in assessing a proposed settlement are "the experience and views of counsel" and "the reaction of the class members to the proposed settlement." *Churchill Vill.*, 361 F.3d at 575. Each of these factors also supports the Settlement.[2]

As courts in this Circuit have explained, "[t]he recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 450-51 (N.D. Cal. 1988); *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel . . . because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation'"). Here, Lead Counsel has extensive experience litigating similar cases and concluded—based on a thorough understanding of the strengths and weaknesses of the Action—that the proposed Settlement represents a very favorable outcome for Settlement Class Members given the risks of continued litigation and the range and probability of potential outcomes. Accordingly, this factor further supports approval of the Settlement. *See Chegg*, 2025 WL 1481382, at *7.

Likewise, the reaction of the class to the proposed Settlement to date is another factor that supports approval of the Settlement. *See Amgen*, 2016 WL 10571773, at *4. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, A.B. Data, has disseminated a total of 347,215 copies of the Court-approved Notice and Claim Form (collectively, the "Notice Packet") to potential Settlement Class Members and nominees as of July 23, 2026. *See* Walter Decl. (Ex. 4) at ¶ 5. In addition, the Court-approved Summary Notice was published in *The Wall Street Journal* and over the *PR Newswire* on June 23, 2026. *See id.* ¶ 11. The Notice set out the essential terms of the Settlement and informed potential Settlement Class Members of, among other things, their right to request exclusion from the Settlement Class or object to any aspect of

---

[2] The final Churchill factor—the presence of a governmental participant—is "neutral because there is no governmental participant in this case." *Chegg*, 2025 WL 1481382, at *7.

the proposed Settlement. While the August 27, 2026 deadline for Settlement Class Members to exclude themselves or object has not yet passed, to date, no objections to the Settlement or the Plan of Allocation have been received, *see* Boon Decl. ¶¶ 71, 83, and no requests for exclusion from the Settlement Class has been received. Walter Decl. ¶ 15. Lead Plaintiffs will discuss all requests for exclusion and any objections that may be received in their reply papers, to be filed by September 10, 2026.

In sum, all of the factors to be considered under Rule 23(e)(2) support a finding that the proposed Settlement is fair, reasonable, and adequate.

**II. The Plan of Allocation Is Fair and Reasonable**

In addition to seeking final approval of the Settlement, Lead Plaintiffs seek approval of the proposed Plan of Allocation for the Settlement proceeds. The Plan of Allocation is set forth at pages 11 to 14 of the Notice mailed to Settlement Class Members.

The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole: the plan must be "fair, reasonable, and adequate." *Class Plaintiffs*, 955 F.2d at 1284-85; *see also Omnivision*, 559 F. Supp. 2d at 1045. An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel, as here. *See Heritage Bond*, 2005 WL 1594403, at *11. Courts hold that "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

Lead Counsel developed the Plan of Allocation with the assistance of Lead Plaintiffs' damages expert. ¶ 73. The Plan provides for the distribution of the Net Settlement Fund to Settlement Class Members on a *pro rata* basis based on the extent of their injuries related to the alleged fraud. *Id.* In developing the Plan of Allocation, Lead Plaintiffs' expert calculated the estimated amount of artificial inflation in Stitch Fix common stock that was allegedly proximately caused by Defendants' alleged false and misleading statements and omissions during the Settlement Class Period. ¶ 75. To calculate the estimated artificial inflation, Lead Plaintiffs' damages expert considered the price changes in Stitch Fix common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged

misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces on those days, as well as to account for the risks related to disaggregating the amounts of certain declines that could be attributed to non-fraud related information. *Id.*[3]

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Stitch Fix common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. The calculation of Recognized Loss Amounts depends upon several factors, including when the claimant's stock was purchased and sold and the purchase or sale price. Claimants who purchased shares during the Settlement Class Period but did not hold those shares through the initial alleged collective disclosure (after the close of trading on March 8, 2021) will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. *See* Notice ¶¶ 79, 80.A, 81.A. For shares sold from March 9, 2021 through the end of the Settlement Class Period, Recognized Loss Amounts will be the lesser of: (i) the difference between the amount of artificial inflation on the date of purchase or acquisition and the amount of artificial inflation on the date of sale; or (ii) the difference between the purchase price and the sale price. *See id.* ¶ 81.B. For shares sold during the 90-day period after the Settlement Class Period, Recognized Loss Amounts will be the least of (i) the artificial inflation per share on the date of purchase; (ii) the purchase price *minus* the sales price; or (iii) the purchase price *minus* the average closing price of the stock from June 10, 2022 through the date of sale, consistent with the PSLRA. *See id.* ¶ 81.C. For shares held until the end of the 90-day period after the Settlement Class Period (or later), Recognized Loss Amounts will be the lesser of (i) the estimated artificial inflation on the date of purchase; or (ii) the purchase price *minus* $6.00, the average closing price for Stitch Fix common stock during the 90-day period. *Id.* ¶ 81.D.

---

[3] Specifically, for purposes of the Plan, the artificial inflation dissipated on March 9, 2021, following the initial alleged corrective disclosure on March 8, 2021, is assumed to be 65.8% of the total abnormal decline on that date, based on the mid-range of Lead Plaintiffs' damages expert's analysis of the portion of the decline on that date that would likely be found attributable to fraud-related information, which ranged from a low of 42.1% to a high of 89.5%. ¶ 75.

In addition, to reflect the fact that the Court had dismissed all claims based on alleged misstatements prior to December 8, 2020, the Recognized Loss Amount for shares purchased at the beginning of the Settlement Class Period (from June 9, 2020 through December 7, 2020) will be 10% of the amount that they would otherwise be. Notice ¶ 80. This significant discount reflects the fact that the claims for shares purchased during that period could only have been litigated if Lead Plaintiffs had brought an appeal after final judgment and obtained an appellate reversal of the Court's decision dismissing the alleged misstatements made in June 2020. Boon Decl. ¶ 78.

The sum of a Claimant's Recognized Loss Amounts for all his, her, or its Settlement Class Period purchases is the Claimant's "Recognized Claim." Notice ¶ 82. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in Stitch Fix common stock during the Settlement Class Period. A Claimant's Recognized Claim will be limited to the amount of his, her, or its market loss in Stitch Fix common stock transactions during the Settlement Class Period, and Claimants who have an overall market gain are not eligible for a recovery. *Id.* ¶¶ 89-90. The Net Settlement Fund will then be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.* ¶ 91.

One hundred percent of the Net Settlement Fund will be distributed to Settlement Class Members who submit eligible claims. If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent cost-effective distributions will also be conducted. Notice ¶ 94.

In the event that any residual funds remain after all cost-effective distributions of the Net Settlement Fund to eligible claimants have been completed, the Plan of Allocation identifies the Bluhm Legal Clinic Complex Civil Litigation and Investor Protection Center at the Northwestern Pritzker School of Law ("IPC") as the proposed *cy pres* recipient. *Id.* The IPC is a law school clinic that provides law students with the opportunity to represent clients with limited income in securities matters against stockbrokers, investment advisers, or securities firms. IPC also provides case-screening services to regulators, including FINRA, the SEC, and state regulators, as well as brokerage houses trying to identify legitimate claims. *See*

https://www.law.northwestern.edu/legalclinic/investorprotection/ (last visited July 10, 2026). Lead Plaintiffs believe the IPC is an appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue in this Action. *See, e.g.*, Order Approving Plan of Allocation at 4-5, *In re Plantronics, Inc. Sec. Litig.*, No. 4:19-cv-07481-JST (N.D. Cal. Mar. 10, 2026), Dkt. No. 263 (approving IPC as *cy pres* recipient in securities class action because the "organization has a sufficient nexus to the objectives of the securities laws . . . and the interests of class members because it (1) provides law students with opportunities to represent limited-income clients in securities matters; and (2) provides services to regulators, including the Securities and Exchange Commission"); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *7 (N.D. Cal. Aug. 7, 2023) (approving IPC as *cy pres* recipient in securities class action because IPC "does work that aligns with the objectives of the securities laws underlying this case and the class members' interest in protecting investors" and "there is a sufficient 'driving nexus' between the class and the *cy pres* recipient"); *see also In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 2025 WL 40785, at *2 (S.D.N.Y. Jan. 7, 2025) (approving IPC as *cy pres* recipient). Lead Plaintiffs and Plaintiffs' Counsel have no relationship with the IPC.

As noted, payment will be made to the IPC only if and when the residual amount left for re-distribution to eligible claimants is so small that a further re-distribution would not be cost effective—for example, in the event the administrative costs of conducting an additional distribution would largely subsume the funds available.

As of July 23, 2026, more than 347,000 copies of the Notice, which contains the Plan of Allocation and advises Settlement Class Members of their right to object to the Plan, have been mailed to potential Settlement Class Members. *See* Walter Decl. ¶ 9. To date, no objections to the Plan of Allocation have been received. *See* Boon Decl. ¶ 83.

In sum, Lead Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and reasonable and should be approved.

## III. The Court Should Certify the Settlement Class

As set forth in Lead Plaintiffs' motion for preliminary approval of the Settlement, the Settlement Class satisfies all of the requirements of Rules 23(a) and (b)(3). Dkt. No. 126, at 14-

17; Preliminary Approval Order at 4-6 (granting conditional class certification of the Settlement Class for settlement purposes). None of the facts supporting certification of the Settlement Class have changed since Lead Plaintiffs submitted their preliminary approval motion and the Court granted conditional class certification. Accordingly, Lead Plaintiffs respectfully request that the Court certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## IV. Notice to the Settlement Class Satisfied the Requirements of Rule 23 and Due Process

In accordance with the Court's Preliminary Approval Order, A.B. Data, the Court-approved Claims Administrator, began mailing copies of the Notice Packet to potential Settlement Class Members and nominees on June 9, 2026. *See* Walter Decl. ¶¶ 3-8. As of July 23, 2026, A.B. Data had disseminated a total of 347,215 copies of the Notice Packet by first-class mail or email to potential Settlement Class Members and nominees. *See id.* ¶ 9. In addition, A.B. Data arranged for the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire* on June 23, 2026. *See id.* ¶ 11. A.B. Data also established a dedicated settlement website, www.StitchFixSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access to downloadable copies of the Notice, Claim Form, and Stipulation, among other documents. *See id.* ¶ 14. Copies of the Notice and Claim Form were also made available on Lead Counsel's website, www.blbglaw.com. *See* Boon Decl. ¶ 70.

The Notice disseminated to the Settlement Class in accordance with the Court's Preliminary Approval Order satisfied all the requirements of due process, Rule 23, and the PSLRA. For a class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given notice of the class action and their right to request exclusion that is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Rule 23(e)(1)(B). The notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and

to come forward and be heard." *Churchill*, 361 F.3d at 575; *see also Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (same); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

The notice program's combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in widely circulated publications, transmission over a business newswire, and publication on internet websites, satisfied all requirements of Rule 23 and due process. *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *4 (N.D. Cal. Mar. 4, 2024) (approving similar notice program); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (same); *Zynga*, 2016 WL 537946, at *7-8 (finding individual notice mailed to class members combined with summary publication constituted "the best form of notice available under the circumstances").

## CONCLUSION

For these reasons, Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.

Dated: July 23, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Rebecca E. Boon*
REBECCA E. BOON (*pro hac vice*)
(rebecca.boon@blbglaw.com)
SCOTT FOGLIETTA (*pro hac vice*)
(scott.foglietta@blbglaw.com)
ALEC T. COQUIN (*pro hac vice*)
(alec.coquin@blbglaw.com)
JASON P. NAGEL (*pro hac vice*)
(jason.nagel@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067

Tel: (310) 819-3481

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Settlement Class*

**FRIEDMAN & ANSPACH**
Eugene S. Friedman
(efriedman@friedmananspach.com)
Anusha Rasalingam
(arasalingam@friedmananspach.com)
1500 Broadway, Suite 2300
New York, New York 10036
Tel: (212) 354-4500
Fax: (212) 719-9072

*Additional Counsel for Lead Plaintiffs*